Alan E. Engle (SBN 224779)
alan.engle@meenlegal.com
MEADOR & ENGLE
1115 Seal Way
Seal Beach, CA 90740
Telephone: (310) 428-6985
Facsimile: (714) 386-5368

Attorneys for Plaintiff VERIBI, LLC,

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs<br><br>COMPASS MINING, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 2:22-cv-04537<br><br>**COMPLAINT FOR BREACH OF CONTRACT; NEGLIGENCE; CONVERSION; AND FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Veribi, LLC, by and through its attorneys, files this Complaint against Defendant Compass Mining, Inc. ("Compass") and alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action asserted by Plaintiff involving claims in an amount exceeding $75,000, excluding interest and costs. The Plaintiff and Defendant are citizens of different states. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

2. This Court has personal jurisdiction over Defendant because it has transacted substantial business in this district, including with Plaintiff. Venue is proper under 28 U.S.C. § 1391(b)(2).

## THE PARTIES

3. Plaintiff Veribi, LLC is a Nevada limited liability company with its principal place of business in Los Vegas, NV. Veribi, LLC was previously known as Ofiplex NV, LLC, which changed its name in December 2021.

4. Defendant Compass Mining, Inc. is a Delaware corporation. On information and belief, Compass Mining's principal place of business is Delaware.

## BACKGROUND OF THE ACTION

5. Plaintiff Veribi, LLC is a corporation engaged in the business of bitcoin "mining". Bitcoin mining is the process of applying computing power to solving complex cryptographic problems to produce or "mint" new bitcoins, which are assigned to the solver. Veribi, LLC changed its name from Ofiplex NV, LLC in December 2021.

6. Computer systems for bitcoin mining are purpose-built to efficiently solve cryptographic problems. They are sometimes referred to as Application Specific Integrated Circuit (ASIC) miners, as they are designed for the specific application of bitcoin mining. A typical bitcoin mining system retails for around $6,000 to $10,000, depending on the specific architecture and components. A

photograph of a bitcoin mining system offered by defendant Compass is shown below.



Figure 1. Bitcoin ASIC Mining System

7. Defendant Compass is a corporation engaged in the sale and management of systems for bitcoin mining. On information and belief, Compass' primary business is the management of its customers' mining systems. That is, customers purchase mining systems from Compass, which then installs the miners and oversees their operation at various Compass-owned or third-party data centers throughout the world. According to its website, "Compass brings bitcoin hosting into the modern era by automating away unnecessary annoyances and provides you with an enjoyable hosting experience." compassmining.io/about.

8. Because bitcoin mining is energy intensive, mining systems are

typically located in places with low energy costs and high production capacity, such as regions with excess hydroelectric power. Whether bitcoin mining is profitable depends ultimately on various costs, particularly the price of energy.

9. Compass serves largely as a manager and custodian for customers involved in bitcoin mining. Compass bundles the mining systems it sells with "hosting plans," which include installation, management, and energy fees for the miners at a fixed monthly rate. Such plans allow for a level of certainty regarding the economic variables pertinent to bitcoin mining.

10. For example, in December 2021 Compass offered an "all-in" hosting plan for $0.053 per kilowatt-hour at a third-party facility in the Krasnoyarsk Krai region of Siberia. "Compass Mining launches a limited VIP hardware and hosting bundle," August 2, 2021, attached hereto as Exhibit A. The 12-month payment terms for the miner and plan worked out to $3,780 per month per miner after an initial deposit. If, after fixed costs, customers could produce more bitcoin than the $0.053/kwh cost of operation, the undertaking would be profitable.

11. On information and belief, Compass has been able to offer customers bitcoin mining at predictable rates by contracting with data centers to physically host the systems of Compass' customers. On information and belief, for every miner Compass signs up for hosting at a data center, Compass agrees to pay the data center a monthly hosting fee and to cover the energy cost at a contracted or market rate.

12. Compass' customers can view the status of their miners via an online portal and examine such metrics as uptime, energy usage, and efficiency. Customers can work with Compass to sell or transfer their miners to other parties or move them to a different location.

13. Compass would not typically enter into detailed contracts with its customers. Instead, Compass would advertise its products and services on its

4
COMPLAINT

website, Telegram channel,[1] or via email, and customers could accept by ordering through Compass' website or communicating with a customer representative to buy miners and associated service plans. Once payment was made, Compass would procure the miners on behalf of the customer, provide for their installation, and begin managing them.

14. For each service plan it sells, Compass is accepting an agency relationship with its customers with related obligations, including diligent and faithful services. Compass procures the miners, takes custody of them, installs them at a data center, and oversees their management and operation on behalf of the customer, who derives revenue from their operation. Compass sells customers thousands or hundreds of thousands of dollars worth of computer hardware and services based on representations that it has the ability to safely and competently manage the systems on behalf of its clients.

## FACTUAL ALLEGATIONS

15. On or around December 2020, Compass contracted with BitRiver, a major Russian hosting company incorporated in Switzerland, to provide hosting servers for Compass' North American clients at BitRiver's facilities in Siberia. According to a press release trumpeting Compass' role as BitRiver's exclusive North American representative, "This new partnership allows investors in North America to access BitRiver's enterprise-grade, low-cost and low-carbon cryptocurrency mining facilities in Russia by signing a contract with US-based Compass. Thereon, rest [sic] of the client onboarding process and the after-sale support will also be provided by Compass." Compass-BitRiver Press Release, Exhibit B.

16. Between May 2021 and January 2022, in reliance on Compass' representations concerning its safe and responsible custodianship, Veribi, through

---

[1] Telegram is an encrypted messaging application popular in Russia and Eastern Europe.

it principal John Vanhara, purchased 140 bitcoin mining servers and service plans from Compass for approximately $1.5 million dollars and engaged Compass to manage them at BitRiver's facility in Russia. See Exhibit C, Equipment Ownership Confirmation Certificate (details redacted).

17. These purchases were made based on Compass' representations, via its website, email communications, texts, Telegram messages, phone conversations, and other channels, that Compass would provide for the safe and reliable operation of purchased systems at a fixed monthly fee for a term of 1 to 3 years, depending on the order. A representative invoice for a May 2021 order by Veribi's John Vanhara for $274,352.40 with relevant terms is attached hereto as Exhibit D.

18. In November 2021, Satellite images showed an ongoing buildup of Russian forces near Ukraine with estimates surpassing 100,000 troops. In January 2022, NATO put forces on standby and reinforced Eastern Europe with additional ships and fighter jets, preparing for a Russian invasion of Ukraine. Then, on February 24, 2022, Russia's President Putin authorized an invasion of Ukraine and Russian forces begin missile and artillery attacks, striking major Ukrainian cities including Kiev.[2]

19. On February 24, 2022, Compass sent an email to its customers stating that:

> We do have two operational facilities in Russia and wanted to provide an update given the recent events.
> We have been in communication with our partner in Russia [BitRiver] and have been reassured that the geopolitical situation does not affect the internal and external processes of the company in any way. **The single hosting provider we contract with [BitRiver] will continue to provide services, maintain all agreements, and adhere to a positive long-term relationship for**

---

[2] Reuters, "Timeline: The events leading up to Russia's invasion of Ukraine," March 1, 2022, available at https://www.reuters.com/world/europe/events-leading-up-russias-invasion-ukraine-2022-02-28/.

**the development of our business in Russia**.
February 24, 2022 email from Compass, attached hereto as Exhibit E (emphasis added).

20. On February 26, 2022, Western allies announced new sanctions on Russia, including restrictions on Russia's central bank and expelling key banks from the SWIFT global payments system. The situation was clearly dire and would have been tracked closely by any business operating in Russia.

21. In response to customer concerns and the broader situation, on March 3, 2022, Whit Gibbs, Compass' CEO,[3] issued a statement that:

> At this time it is "business as usual", and there is no reason to be worried. I am monitoring closely how sanctions could impact mining but they don't seem to impact us whatsoever….**If the situation changes, Compass will take swift action to move all machines out of Russia immediately but at this time drastic action is not needed**."

March 3, 2022 statement from Whit Gibbs, attached hereto as Exhibit F (emphasis added).

22. On April 20, 2022, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) specifically designated BitRiver AG, Compass' Russian hosting partner, and 10 affiliated companies as subject to the broader Executive Order 14024, issued in April 2021, concerning sanctions on Russian entities and individuals.

23. Executive Order 14024 prohibits certain dealings with sanctioned entities or the transfer or export of sanctioned property *located within the US* to the sanctioned party. 31 CFR Appendix A to Part 587 - Executive Order 14024 of April 15, 2021, attached hereto as Exhibit G. However, the Order does not prohibit the recapture or demand for return of property under the temporary control of a sanctioned entity. In fact, abandoning millions of dollars of useable

---

[3] On June 28, 2022, Compass issued a press release that Mr. Gibbs had stepped down as CEO.

property in the custody of a sanctioned entity would contravene the purpose of the sanctions and constitute a windfall to the sanctioned entity.

24. Nevertheless, on April 21, 2022, Compass issued a notice that it has "terminated its contractual relationship and business dealings with BitRiver" due to the designation of BitRiver as subject to Executive Order 14024. April 21, 2022 email from Compass, attached hereto as Exhibit H.

25. Compass did not offer to return or repatriate the assets entrusted to it by its customers and hosted at BitRiver's facilities. Instead, Compass offered, subject to agreement to an "approval form" under duress, that it would attempt to "liquidate" miners entrusted to it by selling them to a non-sanctioned third parties using commercially reasonable efforts. Compass stated that it was "in the process of working to negotiate a refund and/or sale of all customer hardware that was located in the Russian hosting facility." *Id*. Compass further attempted to disclaim any liability and stated that, "If you choose not to participate in the negotiated sale of equipment that Compass is working to accomplish, your hardware will be left in Russia and you will have to undertake any further action on your own." *Id*. To date, it does not appear that Compass has had any success selling, transferring, or otherwise liquidating its customers' miners located at BitRiver's facility.

26. Concerned with the status of its $1.5 million worth of miners, John Vanhara of Veribi attempted to follow Compass' suggestion and work directly with BitRiver to either remove Veribi's miners or sell them to a non-sanctioned third party. Mr. Salimur Rahman of BitRiver responded to this request by stating that:

> **From legal and regulatory point of view all the equipment is owned by Compass**. Your relationship with this company is regulated within different legal framework. In this respect, be advised that you remain the customer of Compass. Thus, you have to address all the queries with regards to hosting and any other directly to them.

May 6, 2022 email from Salimur Rahman of BitRiver, attached hereto as Exhibit I

8
COMPLAINT

(emphasis added). So, at least according to BitRiver, Compass is the "owner" of its customers' miners currently in the possession and control of BitRiver, and only Compass can take action to secure the property from BitRiver.

27. Following BitRiver's guidance, on May 9, 2022, Mr. Vanhara advised Compass to instruct BitRiver to prepare Veribi's miners for shipment because, "I have to move the miners out of OFAC restricted facility and do not want to allow them to self mine using my hardware. [BitRiver] will not accept my instructions as all contractual relationship is with Compass only." May 9, 2022 Vanhara Email, attached hereto as Exhibit J. In response, Compass' representative wrote that, "Considering the U.S. government's prohibition on doing business with the Russian hosting facility, Compass Mining is unable to conduct, or even facilitate, any business dealings with the Russian hosting facility." *Id*.

28. It is false that the removal or transfer of Veribi's servers entrusted to Compass and currently in possession of BitRiver would constitute a "business dealing" in violation of Executive Order 14024. Compass has both the right and the obligation to effect transfer and shipment of its customers' miners, as it stated it would on March 4. It is noteworthy that BitRiver has refused to work directly with Compass' customers because "all the equipment is owned by Compass."

29. It strains credulity that Compass actually believes it is legally obligated to abandon its customers' valuable property in the hands of, and for the benefit of, a sanctioned entity instead of seeking its removal. In fact, it is far more plausible that Compass' relationship with BitRiver is other than the simple agent-provider relationship represented to Compass' customers. On information and belief, whether to avoid tax, import, or other duties or obligations, or because of the manner in which its deal with BitRiver is structured, Compass failed to properly account for its customers' miners at BitRiver's facilities.

30. While Veribi does not yet know the actual nature of the relationship

between Compass and BitRiver, it is possible that continuation of the relationship might actually violate Executive Order 14024, or would at least become unprofitable for Compass if it were to act aggressively to remove or transfer its customers' property. At the least, Compass' customers appear to be caught in the middle of the relationship between Compass and BitRiver.

31. In any event, Compass is its customers' agent with regard to their mining systems it has failed to protect their interests, likely as a result of subterfuge and misrepresentation regarding the actual nature of its relationship with BitRiver, including apparent misrepresentations to BitRiver regarding the actual ownership of its customers' miners.

32. Veribi therefore brings this action to compel Compass to arrange for the transfer or return of its property or to compensate Veribi for the apparent abandonment of its property under false and/or unjustified pretenses.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

33. Plaintiff Veribi, LLC hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

34. Veribi has duly performed all relevant conditions by paying Compass over 1.5 million dollars for the procurement, installation, oversight and management of bitcoin mining systems purchased from Compass.

35. Compass is Veribi's agent with respect to the operation and management of Veribi's bitcoin mining systems.

36. In breach of its representations to and agreements with Veribi, Compass has failed to undertake even reasonable efforts to ensure the safe, effective, and continuous operation of Veribi's bitcoin mining systems.

37. On information and belief, Compass has abandoned Veribi's bitcoin mining systems, leaving them in the custody of its Russian partner BitRiver, AG and its affiliated companies, without legal justification.

38. Despite its representations, Compass has failed to effect or cooperate in the sale, transfer, or repatriation of Veribi's bitcoin mining systems from BitRiver, AG or its affiliated companies notwithstanding the demands of John Vanhara, Veribi's principal.

39. Compass has failed to take even reasonable steps to mitigate the impact of sanctions on BitRiver or its affiliated companies with respect to its customers, including Veribi, despite representations that it would do so.

40. Compass has concealed and failed to disclose the actual nature of its business arrangement and/or relationship with BitRiver, such that Veribi was induced to contract with Compass for the management of its bitcoin mining systems under false pretenses and without disclosure of material information.

41. As a result of Compass' actions and omissions, Compass has breached its agreements to responsibly manage Veribi's bitcoin mining systems.

42. Through its breach, Compass has directly caused damage to Veribi in the amount of at least $1,523,500, plus deposits and other unearned fees, plus loss of income from the cessation of service of Plaintiff's miners in an amount to be determined.

## SECOND CAUSE OF ACTION
## (Negligence)

43. Plaintiff Veribi, LLC hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

44. In agreeing to manage Veribi's bitcoin mining systems in exchange for payment, Compass Mining agreed to act at Veribi's agent with respect to its bitcoin mining systems. Generally, an agent is a fiduciary, whose obligation of diligent and faithful service is the same as that of a trustee. An agent is required to disclose to the principal all information relevant to the subject matter of the agency.

45. As Veribi's agent, Compass accepted certain duties with respect to

Veribi's bitcoin mining systems, including duties of care, diligence, and skill in performance of its management function.

46. By failing to use even reasonable efforts to secure and promote the interests of Veribi with respect to the bitcoin mining systems within Compass' custody and control without adequate justification, and by failing to disclosure relevant information, such as the actual nature of its relationship with BitRiver and the actual legal ownership and import/export status of its customers' miners in Russia, Compass breached at least its duties of care, diligence, skill, and disclosure with respect to Veribi.

47. Through its actions and omissions, Compass has directly caused damage to Veribi in the amount of at least $1,523,500, plus deposits and other unearned fees, plus loss of income from the unnecessary and prolonged interruption of service of Plaintiff's miners in an amount to be determined.

## THIRD CAUSE OF ACTION
### (Conversion)

48. Plaintiff Veribi, LLC hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

49. Veribi entered into various Agreements for with Compass to purchase bitcoin mining systems and management services from Compass for over $1.5 million dollars.

50. Veribi agreed to have the servers it purchased from Compass hosted in Russia with Compass' partner, BitRiver.

51. On or about April 21, 2022, Compass ceased managing Veribi's bitcoin mining servers and, on information and belief, abandoned them with BitRiver in Russia.

52. Compass has failed to effect or even to take reasonable steps to effect the lawful removal or sale of the miners, as through a lawsuit in Russia or the U.S., or otherwise cooperate with Veribi to sell, transfer, or repatriate

1  Veribi's bitcoin mining servers hosted by BitRiver.

2  53. Compass' acts constitute conversion of Veribi's property in favor of BitRiver. On information and belief, such conversion was undertaken due to an undisclosed financial relationship between Compass and BitRiver, or because Compass was not able to pay BitRiver on behalf of its customers, or because Compass improperly held or registered the equipment under names other than those of its customers for tax, duty, or other reasons, or some other reason that would not justify Compass' failure to secure the property.

54. As a result of the conversion of its goods, Veribi's has been damaged in an amount not less than $1,523,500, reflecting the retail value of the converted goods.

55. Veribi's has also suffered consequential damages, including loss of expected profit from their operation, time and efforts of agents and employees to investigate and address the matter, interest, legal fees, and other damages.

## FOURTH CAUSE OF ACTION
### (Fraud)

56. Plaintiff Veribi, LLC hereby re-alleges and incorporates by reference herein the prior allegations contained in this Complaint.

57. Compass has engaged in fraudulent misrepresentations or concealment regarding (1) its alleged secure and competent management of its Customers' miners in conformity with governing laws and regulations; (2) the safety, security, and reliability of its operations in Russia; (3) the actual nature of its relationship with BitRiver AG and its affiliated companies; (4) its alleged inability to facilitate the removal of customer miners from BitRiver's facilities due to U.S. Sanctions; (5) its lack of significant efforts to sell, transfer, or repatriate customers' miners; (6) its unwillingness or inability to facilitate or permit the sale of customer miners in Russia to non-U.S. third-parties; (7) and its compliance with relevant regulations concerning the ownership, import, and/or

tax status of customer miners under its management and control, with the failure of such compliance being in part responsible for Compass' inability to transfer or repatriate Russian miners sold to its customers, including Veribi.

58. Specifically, on March 4, 2022, Whit Gibb, Compass' CEO, wrote falsely that, "At this time it is 'business as usual', and there is no reason to be worried….Again, at this time there is no cause for concern. I am in constant communication with our Russian hosting partner, who also sits on the Russian Government's Crypto Working committee. If the situation changes, Compass will take swift action to move all machines out of Russia immediately but at this time drastic action is not needed." The situation changed, and Compass did not take swift, much less drastic, action to facilitate the removal of its customers' miners from BitRiver's facility. Instead, it cancelled its contract with BitRiver and abandoned its customers.

59. Compass has repeatedly falsely represented to its customers that, pursuant to BitRiver's designation as a sanctioned entity on April 21, 2022, it is prohibited from engaging in "business dealings" with BitRiver and its affiliated companies, including the removal or transfer of its customers' miners, and therefore that Compass was legally obligated to terminate its relationship with BitRiver without securing custody of its customers' miners. This is a false representation of the scope and consequences of Executive Order 14024 made to customers who entrusted Compass as their agent with the custody and control of their miners.

60. Instead of abandoning its customers' property with BitRiver, Compass had and has an obligation to act in its customers' best interest to secure their property in any practicable manner consistent with Executive Order 14024. To date, Compass has not even filed suit in the U.S. or Russia or taken other significant steps to secure the release of its customers' miners from BitRiver's facilities.

61. Compass has held itself out as a partner contracting for secure and reliable hosting with BitRiver, including stating that, "'BitRiver has long been a trusted name in the bitcoin mining industry, we are pleased to call them our exclusive hosting partner in Russia,' said Whit Gibbs, CEO and Founder of HASHR8. 'We are excited to help more Compass users host their ASICs in BitRiver's world-class facilities.'" On information and belief, Compass' relationship with BitRiver was other than as a contracted provider of datacenter hosting services, such that the actual nature of the relationship involved financial entanglements or misrepresentations that rendered Compass' customers' vulnerable to potential sanctions on BitRiver, including that Compass might abandon their property if BitRiver were designated as a sanctioned entity.

62. By selling bitcoin mining systems and hosting services to its customers, Compass was warranting that its customers were the actual owners of the purchased systems and that sale, import, tax, and operation of the miners would conform with existing local laws and regulations governing miners in foreign facilities. On information and belief, Compass failed to adhere existing local laws and regulations covering the ownership, sale, import, tax, and operation of the miners hosted at BitRiver's facilities, and concealed this failure, rendering it incapable of facilitating the sale or transfer of its customers' miners from BitRiver's facilities after BitRiver was subjected to U.S. sanctions.

63. In reliance of Compass' false representations and omissions of material fact, as detailed above and in the body of this Complaint, John Vanhara of Veribi was induced to purchase and continue hosting over 1.5 million dollars worth of bitcoin mining systems with Compass, to appoint Compass as its agent, and to entrust Compass with the operation and management of the miners at BitRiver's facilities in Russia.

64. As a result of relying on Compass' false representations, omissions of material fact, and failure to act in customers' best interest, Veribi has been

damaged in an amount not less than $1,523,500, reflecting the retail value of its abandoned property.

65.  Veribi's has also suffered consequential damages, including loss of expected profit from the operation of its miners, time and efforts of agents and employees to investigate and address the matter, interest, legal fees, and other damages. Punitive damages and attorneys' fees are warranted because Compass' misrepresentations and calculated omissions were willful, wanton, and oppressive to those who entrusted it to protect their property and promote their interests.

## PRAYER FOR RELIEF

WHEREFORE, Veribi, LLC prays for the Court to enter judgment and provide relief as follows:

(a) award Veribi $1,523,500 in damages for Compass' breach of the Parties' contracts and additional direct and consequential damages in an amount to be proven at trail;

(b) award Veribi damages for Compass' negligence or willful breach of its duty as an agent to responsibly mange Veribi's property in an amount to be proven at trail;

(c) award Veribi compensation for Compass' knowing conversion of its property in favor of BitRiver in an amount to be proven at trail;;

(d) award Veribi compensation for Compass' fraud;

(e) award Veribi punitive damages in connection with the fraud and conversion detailed above;

(f) award Veribi its costs and attorneys' fees;

(g) such further and additional relief as the Court deems just and proper.

[CONTINUED ON NEXT PAGE]

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 1, 2022                    MEADOR & ENGLE

*/s/ Alan E. Engle*
Alan E. Engle
Attorneys for Plaintiff
Veribi, LLC