GUNDZIK GUNDZIK HEEGER LLP
Aaron C. Gundzik (State Bar No. 132137)
Aaron.gundzik@gghllp.com
14011 Ventura Blvd, Suite 206E
Sherman Oaks, CA 91423
Telephone: 818.290.7461
Facsimile: 818.918.2316

ARMSTRONG TEASDALE LLP
Alec P. Harris (*pro hac vice* forthcoming)
Kathleen Guilfoyle (*pro hac vice* forthcoming)
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:   720.200.0676
Facsimile:    720.200.0679
aharris@atllp.com
kguilfoyle@atllp.com

Attorneys for Defendant Compass Mining, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>COMPASS MINING, INC., a Delaware corporation,<br><br>        Defendant. | Case No.: 2:22-CV-04537<br><br>**DEFENDANT COMPASS MINING, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: September 13, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 590, Roybal Federal Building and United States Courthouse, 255 E. Temple St., Los Angeles CA, 90012 |

-i-

UNITED STATES DISTRICT COURT -
CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:22-CV-04537

DEFENDANT COMPASS MINING, INC'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

# <u>Table of Contents</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.      INTRODUCTION .......................................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS AND BACKGROUND ............................. 2

III.    ARGUMENT................................................................................................................. 4

         A.      Delaware Law Governs this Dispute. .................................................................. 4

                 1.      The Parties' Relationship Is Governed by the Compass Hosting Service Agreement. .................................................................. 5

                 2.      The Parties Agreed to a Delaware Choice of Law Provision. ...................................................................................... 6

                 3.      Delaware Governs All Claims in the Complaint. ............................... 8

         B.      Veribi Fails To State a Claim for Breach of Contract. .................................... 8

                 1. The OFAC Sanctions Were a Force Majeure Event................................... 8

                 2.      The Common Law Impossibility Doctrine Bars Veribi's Claim................................................................................................... 12

                 3.      Veribi Is Contractually Barred from the Relief It Seeks. ................. 13

         B.      Veribi's Tort Claims Are Barred by the Economic Loss Rule. ..................... 14

         C.      Veribi Fails to State a Claim for Conversion................................................. 15

         D.      Veribi Does Not Sufficiently Plead Fraud..................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

Table of Authorities

**Page(s)**

**Cases**

*1617 Westcliff LLC v. Wells Fargo Bank N.A.*,
 Case No. 8:14-cv-01941-JVS-DFM, 2015 WL 12681310 (C.D.
 Cal. May 12, 2015) ............................................................................................ 18

*389 Orange Street Partners v. Arnold*,
 179 F.3d 656 (9th Cir. 1999) .............................................................................. 7

*Abbott Labs. v. Owens*,
 C.A. No. 13C–09–186 JRJ, 2014 WL 8407613 (Del. Super. Ct.
 Sept. 15, 2014) .................................................................................................. 14

*AluminumSource, LLC v. LLFlex, LLC*,
 C.A. No.: N18C-07-231 EMD, 2021 WL 211142 (Del. Super. Ct.
 Jan. 21, 2021) .................................................................................................... 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................ 4

*Bavarian Nordic A/S v. Acambis Inc.*,
 486 F. Supp. 2d 354 (D. Del. 2007) .................................................................. 15

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................ 4

*Brasby v. Morris*,
 C.A. No. 05C-10-022-RFS., 2007 WL 949485 (Del. Super. Ct.
 Mar. 29, 2007) .................................................................................................. 14

*CB Lewes, LLC v. Brightfields, Inc.*,
 C.A. No. S20C-06-001 RFS, 2020 WL 6364521 (Del. Super. Ct.
 Oct. 29, 2020) ............................................................................................. 14, 15

*Figueroa v. Law Offices of Patenaude & Felix, A.P.C.*,
 No. EDCV 14-325, 2014 WL 12597118 (C.D. Cal. May 30, 2014) ................... 5

*GreenStar IH Rep, LLC v. Tutor Perini Corp.*,
 C.A. No. 12885–VCS, 2017 WL 5035567 (Del. Ch. Oct. 31, 2017) .......... 16, 17

*Jialu Wu v. iTalk Global Comms., Inc.*,
   No. CV 20-7150 PSG, 2020 WL 8461696 (C.D. Cal. Oct. 21,
   2020) (holding California had a fundamental policy to allow
   plaintiff to seek a public injunction under California's UCL) ............................ 8

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009) ................................................................... 15

*McKenna v. Terminex Intern. Co.*,
   C.A. No: 04C-02-022RBY, 2006 WL 1229674 (Del. Super. Ct.
   Mar. 13, 2006) ........................................................................................ 14

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
   733 F. Supp. 800 (D. Del. 1990) ............................................................. 12

*Nedlloyd Lines B.V. v. Superior Court*,
   834 P.2d 1148 (Cal. 1992) .................................................................. 7, 8

*Ninivaggi v. Univ. of Delaware*,
   555 F. Supp. 3d 44 (D. Del. 2021) .......................................................... 13

*Pacific Vegetable Oil Corp. v. C.S.T., Ltd.*,
   174 P.2d 441 (Cal. 1946) ........................................................................ 12

*Parker v. New Prime, Inc.*,
   No. LA CV 20-03298-DOC-AGR, 2020 WL 6143596 (C.D. Cal.
   June 9, 2020) ............................................................................................ 7

*Pineda v. Nissan North Am., Inc.*,
   No. CV 22-239-DMG, 2022 WL 2920416 (C.D. Cal. July 25,
   2022) ...................................................................................................... 16

**Other Authorities**

31 C.F.R. 587.701 .......................................................................................... 11

31 C.F.R. Pt. 587, App. A § 1(a)(i) ................................................................. 10

31 C.F.R. Pt. 587, App. A § 1. Section 2 ......................................................... 10

31 C.F.R. Pt. 587, App. A § 2. ........................................................................ 10

31 C.F.R. Pt. 587, App. A § 2(b) ................................................................ 11, 12

-iv-

31 C.F.R. § 587.201(a) .................................................................................. 10

31 C.F.R. § 587.311 ...................................................................................... 11

31 C.F.R. § 587.701 ...................................................................................... 11

86 Fed. Reg. 20249 ....................................................................................... 10

86 Fed. Reg. at 20249 ................................................................................... 10

86 Fed. Reg. at 20250–51 ............................................................................. 10

86 Fed. Reg. at 20251 ................................................................................... 11

Rule 9(b) ........................................................................................... 2, 16, 18

Rule 9(b)'s ..................................................................................................... 16

Rule 12(b)(6) ........................................................................................ 2, 4, 5

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should dismiss Plaintiff, Veribi, LLC's ("Veribi") lawsuit, which attempts to somehow hold Compass Mining Inc. ("Compass") liable for *refusing* to violate federal law.

Compass provides its customers with the tools to mine cryptocurrency. Through Compass, customers can purchase cryptocurrency mining equipment ("miners") and pay Compass to host those miners at hosting facilities, while customers collect the mining proceeds. Rather than own its own hosting facilities, Compass often contracts with third-party entities for use of their facilities. Prior to April 2022, one such entity was BitRiver AG ("BitRiver"), a Russian company with hosting facilities in Russia. Veribi is a Compass customer that purchased miners from Compass, chose to locate them at the BitRiver facilities in Russia, and paid Compass hosting fees for their operation there. However, on April 20, 2022, in response to Russia's invasion of Ukraine, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") listed BitRiver as a sanctioned entity, making it a federal crime for Compass to continue its contract with BitRiver, or to otherwise deal with BitRiver in any way. Compass immediately complied with the federal sanctions and terminated its relationship with BitRiver.

Now, through this action, Veribi ("Veribi") claims Compass should have violated federal sanctions and arranged for the transfer or return of Veribi's miners from BitRiver's Russian hosting facilities. Veribi asserts breach of contract, negligence, conversion, and fraud claims against Compass, asserting simultaneously that Compass breached various purported duties to Veribi by refusing to deal with BitRiver after the OFAC sanctions, and that Compass also violated these purported duties by maintaining an unspecified untoward (and apparently ongoing) relationship with BitRiver.

DEFENDANT COMPASS MINING, INC'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

All of Veribi's claims should be dismissed for failure to state a claim. At base, Veribi alleges that Compass has violated obligations it has to Veribi by "abandoning" miners to BitRiver. However, as a matter of law, it is crystal clear that the OFAC sanctions against BitRiver make it *impossible* for Compass to continue its relationship with BitRiver or engage BitRiver to facilitate return of the miners. In other words, the OFAC sanctions are a quintessential force majeure event, requiring dismissal of Veribi's breach of contract claim under both the agreement between the parties and the common law. Next, Veribi's tort claims all fail because they are duplicative of Veribi's contract claim and thus prohibited by the economic loss doctrine. Finally, Veribi has failed to adequately allege the elements of conversion and failed to allege its fraud claims with the specificity required by Rule 9(b). Because Veribi does not state a claim upon which relief can be granted, the Court should dismiss the action pursuant to Rule 12(b)(6).[1]

## II.   STATEMENT OF RELEVANT FACTS AND BACKGROUND

Compass provides its customers with the necessary means to mine cryptocurrency. *See* Compl. [ECF No. 1] ¶ 7. This includes, in some instances, Compass selling miners to customers. *Id.* This also includes, almost always, Compass providing "hosting services" for a customer's miners, where Compass provides access to a facility sufficient to support the operation of the miners. *Id.* When providing hosting services, Compass usually contracts with a hosting facility. *Id.* ¶ 11. For a fee, Compass manages its customers' miners while the customers reap the reward of the cryptocurrency mined. *Id.* ¶ 10. Thus, contractually speaking, Compass sits in the middle between its customers and the hosing facilities housing customers' miners. *Id.* ¶ 11.

---

[1] This Motion is made in the alternative, in the event the Court denies Compass's Motion to Compel arbitration.

In December 2020, Compass announced its plans to contract with BitRiver AG ("BitRiver") to provide its customers hosting services at BitRiver's Russian hosting facilities. *Id.* ¶ 15. At the time, BitRiver was the largest provider of colocation services for cryptocurrency mining in Russia and CIS countries and utilized only surplus hydroelectric power to operate its Russian hosting facility, allowing for cost-effective operations. Compl., Ex. B [ECF No. 1-1 at 4].

From spring 2021 to January 2022, John Vanhara ("Vanhara"), acting on behalf of Veribi, purchased approximately 140 cryptocurrency miners (the "BitRiver Miners") and related service plans from Compass and chose to have those miners hosted at BitRiver's Russian hosting facilities. *Id.* ¶ 16.

All of Veribi's purchases were governed by the Compass Hosting Service Agreement. For example, the Equipment Ownership Confirmation Certificate attached to the Complaint explains, "This ownership confirmation certificate identifies the ownership of specific cryptocurrency mining equipment (your 'Equipment') that is owned by you in connection with your Hosting Services Agreement entered into with Compass Mining, Inc. ('Compass')." Compl., Ex. C [ECF No. 1-1 at 8]; *see generally* Compl. ¶¶ 33–42 (alleging the existence of contracts between the Parties).

On February 24, 2022, Russia invaded Ukraine. *See* Compl. ¶ 18. That day, Compass took action to ensure the safe and continuous operation of its customers' miners, learning from BitRiver that the invasion did not at that time affect operations. *Id.* ¶ 19. On February 26, 2022, the federal government enacted sanctions targeting Russia's central bank. *Id.* ¶ 20. Compass closely monitored the situation. *Id.* ¶ 21. Approximately two months later, President Biden issued Executive Order 14024 on April 15, 2022, prohibiting certain dealings with sanctioned entities. *Id.* ¶ 23. On April 20, 2022, OFAC designated BitRiver as a sanctioned entity, bringing BitRiver within the scope of Executive Order 14024's prohibitions. *Id.* ¶¶ 22–23.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

The federal sanctions broadly prohibit contracting with, providing services to, or receiving services from a sanctioned entity. *See* Compl., Ex. G [ECF No. 1-1 at 20].

In the wake of these extremely powerful and broad federal sanctions, Compass was forced to immediately terminate its business dealings with BitRiver. Compass promptly notified its effected customers, vowing to do whatever it legally could to serve its customers, but alerting them that its options were undoubtedly limited. Compl., Ex. H [ECF No. 1-1 at 25].

Veribi filed this action on July 1, 2022, alleging breach of contract, negligence, conversion, and fraud claims, and asserting that Compass should have facilitated recovery of Veribi's miners from BitRiver in violation of the OFAC sanctions.

## III.  ARGUMENT

Veribi's Complaint should be dismissed for failure to state a claim. Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To overcome a challenge under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court is not required to "'accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). None of Veribi's claims satisfy this standard.

### A.  Delaware Law Governs this Dispute.

As a threshold matter, Delaware governs all claims in this dispute, because (1) the Parties' relationship is governed by the Compass Hosting Service Agreement,

-4-

(2) that Agreement contains a binding Delaware choice of law provision, and (3) the provision is sufficiently broad to cover all of Veribi's claims.

> 1.    *The Parties' Relationship Is Governed by the Compass Hosting Service Agreement.*

The Parties' relationship is governed by the Compass Hosting Service Agreement, and the Court may properly reference this Agreement on a Rule 12(b)(6) motion to dismiss because it is incorporated by reference into Veribi's Complaint.

*First,* the Compass Hosting Service Agreement clearly governs the relationship between the parties and the transactions at issue in the Complaint. The Agreement provides:

> This Compass Hosting Service Agreement (this "Agreement") contains the terms and conditions that govern your access to and use of the Hosting Service (as defined below) and is an agreement between Compass Mining Inc. ("Compass," "we," "us," or "our") and you or the entity you represent ("Customer," "you," or "your").

Heller Decl., Ex. F, at *1.[2] The Agreement defines "Hosting Service" as follows: "Compass['s] … provid[ing] for the hosting of Customer Hardware at the Hosting Facility selected by Customer." *Id.* § 1.1. Veribi's allegations all concern its purchases of hardware and hosting services from Compass, *see, e.g.*, Compl. ¶¶ 15, 16, 61, 63 (alleging purchase of bitcoin mining equipment and hosting services), so the terms set forth in the Agreement are incorporated into those transactions.

*Second*, the Agreement is incorporated by reference into the Complaint. Documents that are "integral" to a complaint are incorporated by reference without converting the motion to a summary judgment. *See Figueroa v. Law Offices of Patenaude & Felix, A.P.C.*, No. EDCV 14-325 JGB (DTBx), 2014 WL 12597118,

---

[2] For convenience, this Motion cites to the current version of the Agreement, which Veribi agreed to through its January 2022 purchases. It has attached all relevant versions from the time period at issue in the Complaint. *See* Heller Decl., ¶¶ 5–10, Exs. A-F. Unless otherwise noted, the versions do not vary materially across versions as to the provisions discussed herein.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

at *2 (C.D. Cal. May 30, 2014). Here, Veribi's Complaint relies on the Agreement between the Parties, despite its apparent attempts to avoid incorporating the Agreement. First, Veribi specifically brings a breach of contract claim, alleging Compass failed to meet its obligations to Veribi such as "undertak[ing] ... reasonable efforts to ensure the safe, effective, and continuous operation of Veribi's [miners]." Compl. ¶ 36. This obligation, which Compass maintains it has not breached, is specifically spelled out in the Agreement at Section 1.2. *See* Heller Decl., Ex. F, § 1.2 (obligating Compass to use commercially reasonable efforts to make the Hosting Service available to Veribi). Second, the Complaint's own Exhibit C specifically mentions the Agreement. It reads at the top of the page, "This ownership confirmation certificate identifies the ownership of specific cryptocurrency mining equipment (your "Equipment") that is owned by you *in connection with your Hosting Services Agreement entered into with Compass ....*" *See* Compl., Ex. C (emphasis added). In short, Veribi's claims rely on the existence of contractual duties flowing from Compass to Veribi. Those duties are defined by the Agreement. Thus, the Court may consider the Agreement in deciding this Motion.

### 2.    The Parties Agreed to a Delaware Choice of Law Provision.

The Compass Hosting Service Agreement governing the at-issue transactions contains a choice-of-law provision stating that "[t]his Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware." *See* Heller Decl., Ex. F, § 15.4.[3]

---

[3] As discussed in Compass's Motion to Compel Arbitration, the Parties also agreed to arbitrate all disputes. The operative arbitration provision, implemented June 30, 2021, also calls for the application of Delaware substantive law. *See* Heller Decl., Ex. F, § 13 ("The Parties agree that the arbitrator will apply the substantive law of the State of Delaware to all state law claims and federal law to any federal law

The Court should apply Delaware law in accordance with the agreement of the Parties.

To the extent the Court elects to engage in a detailed choice-of-law analysis, that analysis leads to the same result. "When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). In California, where parties have agreed in advance regarding applicable law, courts engage in a three-step inquiry to determine whether it should apply the choice-of-law provision. *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (Cal. 1992). The court must first determine: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id.* Second, "[i]f ... either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in the original). And third, "[i]f ... there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Id.*

Here, the Parties agreed that Delaware law would govern, and the *Nedlloyd* test supports enforcing this provision. First, Delaware has a substantial relationship to the parties: Compass is a Delaware corporation with its principal place of business there. *See* Compl. ¶ 4; *Parker v. New Prime, Inc.*, No. LA CV 20-03298-DOC-AGR, 2020 WL 6143596, at *3 (C.D. Cal. June 9, 2020) (concluding chosen state law was substantially related to the parties and there was a reasonable basis for its law to govern where defendant was headquartered in chosen state). Second, Delaware's law, as applied to Veribi's claims, is not contrary to a fundamental policy of California. Veribi brings common law claims against Compass. While California has

claims….").

strong policies at play when it comes to certain statutory schemes, its common law on the claims brought by Veribi is similar to Delaware's common law. *Cf. Jialu Wu v. iTalk Global Comms., Inc.*, No. CV 20-7150 PSG (PJWx), 2020 WL 8461696, at *5–6 (C.D. Cal. Oct. 21, 2020) (holding California had a fundamental policy to allow plaintiff to seek a public injunction under California's UCL). Finally, because there is no fundamental conflict, the Court need not consider the third step of the *Nedlloyd* test.

### 3.    *Delaware Governs All Claims in the Complaint.*

This choice of law provision applies Delaware to all claims in the Complaint. In California, the scope of choice-of-law provisions is interpreted broadly, and it is generally presumed that "[w]hen a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship." *Nedlloyd*, 834 P.2d at 1154. All of Veribi's claims in the Complaint arise out of the transactions governed by the Compass Hosting Service Agreement. *See, e.g.*, Compl. ¶ 16. Thus, all claims are governed by Delaware law.

### B.    **Veribi Fails To State a Claim for Breach of Contract.**

Veribi fails to state a claim for breach of contract because the OFAC sanctions at the heart of this dispute were a force majeure event and the Agreement expressly bars the relief Veribi seeks.

### 1. *The OFAC Sanctions Were a Force Majeure Event.*

The OFAC sanctions and related acts of war giving rise to this dispute were a force majeure event relieving Compass of the contractual obligations at issue. The Agreement contains strong force majeure provisions. Section 15.3 reads, "Neither party will be responsible nor in any way liable for any delays or failures in performance, except for payment of the Hosting Service Fee under this Agreement,

-8-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

arising out of or relating to a Force Majeure Event." Heller Decl., Ex. F, § 15.3. And the Agreement further excuses non-performance related to inability to maintain service level or commence operations because of a Force Majeure Event. *Id.* §§ 1.2, 2.3

The Agreement defines "Force Majeure Event" as follows:

"Force Majeure Event" means a failure by the other party to perform any of its obligations under this Agreement, if such failure is caused by events or circumstances beyond its reasonable control, including, without limitation, acts of God, war, labor strike, mechanical breakdown (including technological or information systems), plant shutdown, unavailability of or interference with necessary transportation, any raw material or power shortage, terrorist act, accident, fire, flood, earthquake, landslide, hurricane, typhoon, tsunami, volcanic eruption, inclement weather, health pandemic or epidemic, national, local or regional emergency, any law, order, regulation, seizure or other action of any governing authority or agency. Notwithstanding the foregoing, in the event of such an occurrence, each party agrees to make a good faith effort to perform its obligations hereunder.

Heller Decl., Ex. F § 14.5.[4]

The events at issue in this litigation are clearly force majeure events. The Complaint itself demonstrates that any alleged failure by Compass was due to events or circumstances well beyond its control: Due to war and consequent acts of governing authorities, it became *impossible* for Compass to transact with BitRiver. *See, e.g.*, Compl. ¶ 18 (summarizing Russian aggression in late 2021 and early 2022 toward Ukraine that eventually led to a full-scale invasion of Ukraine), ¶ 22 (noting OFAC's April 2022 updated designations of sanctioned individuals and entities to include for the first time BitRiver), ¶ 23 (noting that Executive Order 14024 "prohibits certain dealings with sanctioned entities"). The allegations themselves

---

[4] This provision expanded somewhat across the versions of the Agreement. However, all versions reference war and any law, order, regulation, seizure or other action of any governing authority or agency.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

demonstrate that these unfortunate events fall squarely within any definition of force majeure, precluding Compass's liability.

Veribi's allegations concerning the legal import of the OFAC sanctions are wrong as a matter of law. This dispute centers on Compass's inability to deal with BitRiver because such dealings became legally prohibited when OFAC listed BitRiver on its Specially Designated Nationals ("SDN") List for operating in the technology sector of the Russian Federation economy in April 2022. *See* Compl., Ex. G; 86 Fed. Reg. 20249; 31 C.F.R. Pt. 587, App. A § 1(a)(i) (providing text of Executive Order No. 14024). Veribi maintains that it would *not* be a violation of federal law for Compass to engage with BitRiver, including "the removal or transfer of its customers' miners," and that Compass was *not* "legally obligated to terminate its relationship with BitRiver without securing custody of its customers' miners." *See* Compl. ¶ 59. The plain language of federal sanctions law, however, clearly prevents Compass from engaging with BitRiver in the way Veribi seeks.

On April 15, 2022, President Biden issued Executive Order 14024, Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation. Section 1 of that Order states, "All property and interests in property ... that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be ... dealt in." 86 Fed. Reg. at 20249; 31 C.F.R. Pt. 587, App. A § 1. Section 2 makes clear, "The prohibitions in section 1 of this order include: (a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and (b) the receipt of any contribution or provision of funds, goods, or services from any such person." 86 Fed. Reg. at 20250–51; 31 C.F.R. Pt. 587, App. A § 2. Indeed, the Executive Order is very broad in its prohibitions.

The Code of Federal Regulations, title 31, part 587, implements and gives more detail to Executive Order 14024. *See* 31 C.F.R. § 587.201(a) ("All transactions

prohibited pursuant to Executive Order (E.O.) 14024 of April 15, 2021, are prohibited pursuant to this part."). Section 587.311 especially helps clarify the issue here, by defining "property and property interest" to include services and contracts:

> money, checks, drafts, bullion, bank deposits, savings accounts, debts, indebtedness, obligations, notes, guarantees, debentures, stocks, bonds, coupons, any other financial instruments, bankers acceptances, mortgages, pledges, liens or other rights in the nature of security, warehouse receipts, bills of lading, trust receipts, bills of sale, any other evidences of title, ownership, or indebtedness, letters of credit and any documents relating to any rights or obligations thereunder, powers of attorney, goods, wares, merchandise, chattels, stocks on hand, ships, goods on ships, real estate mortgages, deeds of trust, vendors' sales agreements, land contracts, leaseholds, ground rents, real estate and any other interest therein, options, negotiable instruments, trade acceptances, royalties, book accounts, accounts payable, judgments, patents, trademarks or copyrights, insurance policies, safe deposit boxes and their contents, annuities, pooling agreements, **services of any nature whatsoever**, **contracts of any nature whatsoever**, and any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future, or contingent.

31 C.F.R. § 587.311 (emphasis added). It is a federal felony to violate these provisions. *See* 31 C.F.R. § 587.701.

It is undisputed that BitRiver was placed on OFAC's SDN list on April 20, 2022, and thus became a targeted person under Executive Order 14024. *See* Compl. ¶ 22. Prior to the implementation of sanctions, Compass, a United States person, had control over BitRiver's "property" or "property interest": the contract for services between BitRiver and Compass. *See* Compl. ¶ 15 ("On or around December 2020, Compass contracted with BitRiver ... to provide hosting servers for Compass' North American clients at BitRiver's facilities in Siberia."). Thus, on April 20, 2022, upon the implementation of sanctions, it became a federal crime, *see* 31 C.F.R. 587.701, for Compass to continue its contract with BitRiver. *See* 86 Fed. Reg. at 20251; 31 C.F.R. Pt. 587, App. A § 2(b) (prohibiting the "receipt of any ... services from any such person"). Compass's termination of the contract that Veribi complains of was not only proper, it was legally required. Further, given the broad scope of the federal sanctions at play, Compass is without any legal options when it comes to working with BitRiver or facilitating any dealings with BitRiver to retrieve miners or

-11-

continue the miners' operation. Such transactions would almost certainly involve Compass "making ... [a] contribution or provision of funds, goods, or services by, to, or for the benefit of [BitRiver]; [or] the receipt of [a] contribution or provision of funds, goods, or services from [BitRiver]." *Id.* For example, even a demand letter to BitRiver demanding the return of the miners invites a service and/or a transaction that is prohibited by federal law. Compass similarly cannot request BitRiver to allow Compass entry to the facilities to retrieve the miners, as such entry and necessary facilitation of miner retrieval would also involve a service from BitRiver.

In short, the Russian war in Ukraine and resulting sanctions constituted a force majeure event under the Agreement, so "Neither party will be responsible nor in any way liable for any delays or failures in performance" at issue in the Complaint. Heller Decl., Ex. F, § 15.3.

Even if the Agreement did not govern (and it does), common law requires the same result. Under both Delaware and California law, acts of war and government sanctions are force majeure events excusing contractual performance. *Pacific Vegetable Oil Corp. v. C.S.T., Ltd.*, 174 P.2d 441, 447–48 (Cal. 1946) (finding war conditions causing delays in promised shipment was a "an insuperable interference occurring without the party's intervention as could not have been prevented by the exercise of prudence diligence and care" and thus met the force majeure test); *Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 820 n.35 (D. Del. 1990) (noting that the U.S. Government is capable of indicating to a company that the company "must abandon its international contractual obligations for the good of our country" and citing the Libyan Sanctions Regulations as such direction from the government).

2.      *The Common Law Impossibility Doctrine Bars Veribi's Claim.*

Similarly, the common law impossibility doctrine bars Veribi's contract claim. Where it becomes impossible to keep a promise, the promisor may be excused. *AluminumSource, LLC v. LLFlex, LLC*, C.A. No.: N18C-07-231 EMD CCLD, 2021 WL 211142, at *9 (Del. Super. Ct. Jan. 21, 2021) (holding that where

-12-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

a change in law made it impossible for the defendant to perform, because such performance would be illegal, the defendant was excused from performing); *see also Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 53 (D. Del. 2021) (noting "[i]f keeping a promise becomes impossible, the promisor may be excused" when evaluating the COVID-19 pandemic's effect on the University of Delaware's alleged promise to hold in-person classes).

Once BitRiver was placed on OFAC's sanctioned entities list in April 2022, any contact Compass had with BitRiver seeking BitRiver's services would have constituted a federal crime. Compass's performance was excused, and Veribi's claim for breach of contract cannot survive. Accordingly, the Court should dismiss this claim.

### 3. *Veribi Is Contractually Barred from the Relief It Seeks.*

Finally, the Agreement contains a limitation of liability barring Veribi's ability to recover from the harm alleged in the Complaint:

> 9.4 LIMITATION OF LIABILITY. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR (I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES; (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF CUSTOMER HARDWARE; (V) ANY CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT TO THE EXTENT THAT ANY SUCH LOSS OR DAMAGES ARISES OUT OF SUCH PARTY'S GROSS NEGLIGENCE, BAD FAITH OR WILLFUL MISCONDUCT. THE LIMITATIONS SET FORTH HEREUNDER WILL APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

Heller Decl., Ex. F, § 9.4. The Complaint seeks "at least $1,523,500" for the approximate amount Veribi spent on BitRiver miners, "loss of income from the cessation of service of Plaintiff's miners," "loss of expected profit from [miners] operation," and other consequential and punitive damages. *See* Compl. ¶¶ 42, 47, 54–55, 65, Prayer for Relief. But all of these types of recovery are barred by the

-13-

1 Agreement. Taking the facts alleged in the Complaint as true, Compass is simply not
2 liable for, and Veribi cannot recover on, the breach of contract claim. The Court
3 should therefore dismiss.

4        **B.**       **Veribi's Tort Claims Are Barred by the Economic Loss Rule.**

5        The remainder of Veribi's claims sound in tort and are barred by the economic
6 loss doctrine. Under the economic loss doctrine, "in order for contract and tort claims
7 to co-exist in an action, the plaintiff must allege that the defendant breached a duty
8 that is independent of the duties imposed by the contract." *Abbott Labs. v. Owens*,
9 C.A. No. 13C–09–186 JRJ CCLD, 2014 WL 8407613, at *7 (Del. Super. Ct. Sept.
10 15, 2014) (quoting *Brasby v. Morris*, C.A. No. 05C-10-022-RFS., 2007 WL 949485,
11 at *7 (Del. Super. Ct. Mar. 29, 2007)). Otherwise, the overlapping tort claims are
12 barred and must be dismissed. *See CB Lewes, LLC v. Brightfields, Inc.*, C.A. No.
13 S20C-06-001 RFS, 2020 WL 6364521, at *3 (Del. Super. Ct. Oct. 29, 2020). The
14 economic loss doctrine is rooted in the idea that "[t]here exists no reason to extend
15 tort law into areas that can be adequately governed by contract law." *Brasby*, 2007
16 WL 949485, at *7. For Veribi to assert both tort claims and a contract claim, Veribi
17 must allege Defendant breached a duty independent of the contract. *See Abbott*
18 *Labs.*, 2014 WL 8407613, at *7; *see also McKenna v. Terminex Intern. Co.*, C.A.
19 No: 04C-02-022RBY, 2006 WL 1229674, at *2 (Del. Super. Ct. Mar. 13, 2006).

20        None of Veribi's tort claims are based on a duty independent of the contract.
21 The allegations in support of Veribi's claims are similar to the allegations at issue in
22 *CB Lewes, LLC*. There, plaintiffs alleged, in support of their breach of contract
23 claim, that the defendant breached its duties under the agreement by failing to
24 provide the services it owed plaintiffs. 2020 WL 6364521, at *3. In support of their
25 tort claims, plaintiffs alleged defendant agreed to provide services, that such services
26 were paid for, and that defendant failed to act with the requisite professional care in
27 providing its services. *Id.* The court found that the plaintiffs made essentially

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1   identical allegations in support of the breach of contract and tort claims and

2   dismissed the plaintiffs' tort claims. *Id.*

3       Here, the entirety of Veribi's Complaint—all of its claims—arise from the

4   Parties' contractual relationship and the duties Compass owed Veribi under that

5   relationship. *See* Compl. ¶¶ 36–42 (alleging breach of contract claim due to

6   Compass's alleged failure to ensure "safe, effective, and continuous operation of

7   Veribi's [miners]"), ¶ 44 (noting, in its negligence claim section, Compass's

8   agreement to "manage" Veribi's miners "in exchange for payment"), ¶¶ 49, 52

9   (admitting, in its conversion claim section, that "Veribi entered into various

10  Agreements ... with Compass to purchase bitcoin mining systems and management

11  services from Compass" and again complaining solely of Compass's "failure" to

12  "take reasonable steps" to remove the miners from Russia), ¶¶ 56–65 (alleging fraud,

13  complaining solely of events affecting Veribi's miners purchased from and managed

14  by Compass). Simply because Veribi uses agency and fiduciary language in support

15  of its negligence claim does not change the substances of the allegations. *See CB*

16  *Lewes, LLC*, 2020 WL 6364521, at *3. Just as in support for its breach of contract

17  claim, Veribi complains of Compass's failure to secure its miners in every tort claim

18  it brings. These tort claims are barred and must be dismissed. *See Kuroda v. SPJS*

19  *Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (dismissing tort claims after

20  finding plaintiff's claim arose "solely from a breach of contract").

21      **C.    Veribi Fails to State a Claim for Conversion.**

22      The Court should dismiss Veribi's conversion claim for the additional reason

23  that Veribi does not sufficiently allege all elements of this claim. Conversion is "any

24  distinct act of dominion wrongfully exerted over the property of another, in denial

25  of [the plaintiff's] right, or inconsistent with it." *Id.* (quoting *Drug, Inc. v. Hunt*, 168

26  A. 87, 93 (Del. 1933)). "[C]onversion cannot lie in the absence of the physical

27  possession of the actual good or chattel owned by the plaintiff." *Bavarian Nordic*

28  *A/S v. Acambis Inc.*, 486 F. Supp. 2d 354, 363 (D. Del. 2007).

Here, the Complaint plainly alleges that the miners are in Russia, and that Compass is *refusing* to assert "dominion" over them by repossessing them from BitRiver. *See* Compl. ¶¶ 16, 24, 25–27, 32, 37, 51–52. The conversion claim cannot lie.

### D.    Veribi Does Not Sufficiently Plead Fraud.

The Court should also dismiss Veribi's fraud claim for the additional reason that Veribi does not sufficiently plead this claim with particularity. To survive a motion to dismiss, a plaintiff asserting a fraud-based claim must sufficiently plead:

> (1) that defendant made a false representation, usually one of fact; (2) with the knowledge or belief that the representation was false, or with reckless indifference to the truth; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) that plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of her reliance on the representation.

*GreenStar IH Rep, LLC v. Tutor Perini Corp.*, C.A. No. 12885–VCS, 2017 WL 5035567, at *10 (Del. Ch. Oct. 31, 2017) (quoting *Fortis Advisors LLC v. Dialog Semiconductor PLC*, C.A. No. 9522–CB, 2015 WL 401371, at *6 (Del. Ch. Jan. 30, 2015)). Allegations of fraud must be pleaded with particularity, including the "who," "what," "when," and "where" of the purportedly fraudulent conduct. Fed. R. Civ. P. 9(b); *see also Pineda v. Nissan North Am., Inc.*, No. CV 22-239-DMG (JCx), 2022 WL 2920416, at *2 (C.D. Cal. July 25, 2022) ("Under Rule 9(b)'s heightened pleading standard, 'a party must state the particularity of the circumstances constituting fraud,' meaning that the 'pleading must identify the who, what, when, where, and how of the misconduct charged.'" (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011))). There are only three specific statements by Compass alleged in the Complaint underlying Veribi's fraud claim. All of these purported statements either lack the requisite specificity under Rule 9(b) or cannot satisfy the elements of fraud.

*First*, the Complaint alleges that on March 4, 2022, Whit Gibbs, former CEO of Compass, spoke "falsely" to Veribi when, in a statement to Compass customers,

1  Mr. Gibbs stated that Compass would take "swift action" if the "situation [in Russia]

2  changes." Compl. ¶¶ 21, 58. But Veribi fails to allege, other than in conclusory

3  fashion, that Gibbs' statements were "false" or that he knew they were false at the

4  time. Indeed, Veribi does not and cannot credibly allege that Compass or Mr. Gibbs

5  could have known, nearly two months in advance, that the U.S. Government would

6  choose to list BitRiver on the SDN list. In addition, Veribi fails to allege reliance on

7  this statement. The alleged March 4, 2022 statement by Mr. Gibbs cannot support

8  Veribi's fraud claim. *See GreenStar IH Rep, LLC*, 2017 WL 5035567, at *11

9  (dismissing fraud counterclaim noting that "if the alleged fraud 'has at its core the

10  charge that the defendant knew something, there must, at least, be sufficient well-

11  pled facts from which it can be reasonably inferred that this "something" was

12  knowable and that the defendant was in a position to know'" (quoting *Trenwick Am.

13  Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208 (Del. Ch. 2006))).

14      *Second*, the Complaint alleges that Compass's 2020 press release, in which

15  Compass stated, "BitRiver has long been a trusted name in the bitcoin mining

16  industry, we are pleased to call them our exclusive hosting partner in Russia,"

17  somehow constituted fraud. Compl. ¶ 61. However, once again, Veribi fails to allege

18  that these statements were "false" or Compass's knowledge that they were false. *See

19  GreenStar IH Rep, LLC*, 2017 WL 5035567, at *11.

20      *Third*, contrary to Veribi's allegations, Compass's statements concerning the

21  impact of Executive Order 14024, *see* Compl. ¶ 59, cannot support a fraud claim for

22  many reasons, including that (1) the statements are not false, (2) Veribi does not

23  credibly allege that Compass made the statements with intent to induce Veribi to act

24  (or not act), and (3) Veribi does not credibly allege that it did act (or refrained from

25  action) in reliance on Compass's statement. *See GreenStar*, 2017 WL 5035567, at

26  *10. For example, Veribi appears to allege it generally relied on Compass's

27  statements in deciding to "purchase and continue hosting" its miners at BitRiver. *See

28  Compl. ¶ 63. However, the Complaint makes clear that all Veribi's purchases pre-

dated Compass's statements concerning the impact of federal sanctions. *See id.* ¶¶ 16, 24, 59. Moreover, Exhibit H to the Complaint—containing the very statements that supposedly induced Veribi to continue hosting at BitRiver—makes clear that Compass terminated the hosting agreement, i.e., ceased hosting Veribi's miners and/or charging Veribi for hosting services. *See* Compl. Ex. H [ECF No. 1-1 at 25].

*Finally*, while the Complaint contains a vague laundry list of purported misrepresentations by Compass, *see* Compl. ¶ 57, it fails to allege any of these statements with the specificity required by Rule 9(b), omitting the "who," the "when," and the "where." *See 1617 Westcliff LLC v. Wells Fargo Bank N.A.*, Case No. 8:14-cv-01941-JVS-DFM, 2015 WL 12681310, at *4 (C.D. Cal. May 12, 2015) (dismissing fraud claim because plaintiff "has not alleged, inter alia, what specifically was said, who said it and to whom it was said, on which Defendant's behalf the statements were made, or where they were made"). These vague and conclusory allegations cannot support Veribi's fraud claim. *Id.* This claim should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated:  August 10, 2022                    GUNDZIK GUNDZIK HEEGER LLP


                                           By:    /s/ *Aaron C. Gundzik*

                                           Attorneys for Defendant Compass Mining, Inc.

-18-