# EXHIBIT B

**Compass Customer Agreement**

Last Updated: June 30, 2021

This Compass Customer Agreement (this "Agreement") contains the terms and conditions that govern your access to and use of the Services (as defined below) and is an agreement between the applicable Compass Mining Inc. ("Compass," "we," "us," or "our") and you or the entity you represent ("Customer," "you," or "your"). This Agreement takes effect when you click an "I Accept" button or check box presented with these terms or, if earlier, when you use any of the Services (the "Effective Date"). Customer represents to Compass that Customer is lawfully able to enter into contracts (e.g., Customer is not a minor). If Customer is entering into this Agreement for an entity, such as the company you work for, Customer represents to Compass that Customer has legal authority to bind that entity. Please see Section 13 for definitions of certain capitalized terms used in this Agreement.

1. **1 SERVICES**
    1. 1.1 <u>Hardware Arrangement</u> .   Compass shall provide for hosting of Customer Hardware at the Hosting Facility selected by Customer.  Compass reserves the right to switch the Hosting Facility to a like facility in the same region and at a cost that is equal to or less than the Service Fee.
    2. 1.2 <u>Service Level</u> .   Compass shall use commercially reasonable efforts to make the Services available to Customer ninety five percent (95%) of the time each month, except in the event of Maintenance, Customer Hardware failure, or Force Majeure Events. Compass does not guarantee that the Service will not be interrupted by outages or shortages of power which are planned or unplanned and outside of Customer's control, and Compass will not be liable for the foregoing. Compass cannot guarantee the supply of electricity during the winter and peak hours of the day and that there is a possibility of voluntary or involuntary downtime, curtailment by Compass or the energy provider, or outages or shortages of power of no more than 600 hours in a calendar year.
    3. 1.3 <u>Service Order</u> .   . The Services will be ordered through the Compass Site, available at https://compassmining.io/ , through the issuance of service orders which have been duly executed by the authorized representative of each Party (each, a "Service Order"). Each Service Order will detail the Services to be provided, timelines, location(s), the fees to be paid therefor, and such other relevant terms as the Parties may agree. Service Orders may be changed only upon the written agreement of both Parties. In the event of a conflict between the terms of this Agreement and the terms contained in any agreed Service Order, the terms contained in the Service Order shall prevail only in respect of that order. Upon execution by both Parties, a Service Order shall be deemed to be a valid and binding part of this Agreement.
2. **2 CUSTOMER HARDWARE AND DELIVERY**
    1. 2.1 <u>Delivery to Hosting Facility</u> .   Customer shall promptly upon the Effective Date, deliver the Customer Hardware to the Hosting Facility or address designated in the Service Order.

2. 2.2 <u>Inspection and Installation</u> .   Compass shall inspect the Customer Equipment and has full discretion to accept or reject any Customer Hardware. Upon receipt, inspection and confirmation that Customer Hardware is fully functioning, Compass shall provide for the installation of Customer Hardware at the Hosting Facility.
3. 2.3 <u>Operation and Start Date</u> .   Compass shall make commercially reasonable efforts to commence operation of Customer Hardware on the scheduled service commencement date reflected in the Service Order; provided however, that Compass shall not be responsible for any delay in operation of Customer Hardware for any reason, including delay in receipt of Customer Hardware, Force Majeure Events, lack of available rackspace, or electrical or network connectivity problems.

3. **3  HOSTING FACILITY MAINTENANCE AND CUSTOMER HARDWARE REPAIRS**
    1. 3.1 <u>Facility Maintenance</u> .   Compass and operators of the Hosting Facility shall be entitled to perform maintenance and any actions as deemed necessary or desirable with respect to the Hosting Facility and to maintain the network. Customer acknowledges and agrees that performance of such maintenance may cause the network to be temporarily inaccessible and the Customer Hardware may experience temporarily down-time or unavailable. Compass and its Hosting Partners shall use commercially reasonable efforts to conduct such Maintenance in a manner so as to avoid or minimize the unavailability of the Services. If a scheduled Maintenance is expected to interrupt the availability of Services, Compass may give Customer notice by email prior to conducting such Maintenance, identifying the time and anticipated duration.
    2. 3.2 <u>Hardware Maintenance and Repair</u> .   Compass and operators of the Hosting Facility shall be entitled to perform maintenance and any actions as deemed necessary or desirable with respect to Customer Hardware.  To the extent that Compass cannot perform simple repairs without passing costs for parts and labor onto the Customer, the Customer will be notified of an estimated cost and timeline for Hardware repairs to be completed.  Compass will make every effort to repair Hardware on-site, but may require customer Hardware to be shipped to the manufacturer for critical repairs. Hardware sent to the manufacturer for repair may be fully covered under a standard manufacturer warranty, but shipping costs will be paid at the Customer's expense.  If the Customer does not agree with repair options or costs, the Customer has the right to cancel the Agreement and have their Hardware shipped to them at their expense.  If Customer does not respond to options for repair provided by Compass within (15) days, Compass reserves the right to cancel the Agreement.
4. **4 SERVICES FEES AND CUSTOMER RESPONSIBILITY**
    1. 4.1 <u>Delivery, Installation and Removal of Customer Hardware</u> .   Customer is solely responsible for costs for the installation, mounting, and unmounting of Customer Hardware and all tariffs, taxes, shipping costs or other expenses associated with shipping, importing, exporting, transporting and returning Customer Hardware to and from the Hosting Facility. Upon termination of the Service, Compass shall provide Customer with a notice of the date when Customer Hardware is ready to be removed from the Hosting Facility.

2. 4.2 <u>Selection of Mining Pool</u> . Customer shall timely provide Compass the mining pool it seeks to join. Customer is at all time responsible for the selection of the mining pool and for monitoring pool performance and instructing Compass to make any changes to the mining pool Customer seeks to use.
3. 4.3 <u>Private Key and Wallet Security</u> . Customer shall at all times be responsible for maintaining software and all other telecommunications, Internet access and related equipment required to receive Customer's mining rewards. Customer is solely responsible for the security of Customer's private keys. Customer shall hold Compass harmless from, user or access security with respect to any of Customer Hardware or the Hosting Facility. Compass does not provide any service to detect or identify any security breach of Customer Hardware or the Hosting Facility. Compass does not provide any tests employing tools and techniques intended to gain unauthorized access to Customer Hardware or Customer's personal property.
4. 4.4 <u>Compass Account Security</u> .   Customer shall maintain the security of passwords for Compass account. Customer shall notify Compass if Customer suspects its Compass account has been hacked, stolen, accessed without authorization, or otherwise compromised. If Compass suspects any security violations have occurred related to Customer's Compass account, Compass may suspend access to Customer's account and Customer Hardware pending resolution.
5. 4.5 <u>Maintenance</u> . Customer may be required to purchase from Compass other equipment, accessories, software, or hardware, such as power cords, to ensure compliance with the technical and fire safety norms at the Hosting Facility.
6. 4.6 <u>Return of Hardware</u> . Customer is responsible for cost of courier, shipping insurance and any labors costs for unmounting and packing. Compass may use a courier of choice for any such return of Customer Hardware.

5. **5 PAYMENT TERMS AND TAXES**
   1. 5.1 <u>Service Fee</u> . Compass calculates and bills fees and charges monthly in advance. The Service Fee is calculated based on the actual power consumption of Customer Hardware and the location of the Hosting Facility that Customer elects.  Projected Service Fee in advance and in no case later than the 24th date of the then current month. If Customer's actual power consumption for the upcoming month is higher than the Projected Service Fees, an invoice will be issued and Customer agrees and undertakes to promptly pay the differences within five (5) business days of receiving such invoice. If the actual power consumption is lower than the Projected Service Fees, the balance shall be credited to the Projected Service Fee within (60) days of the close of the given month.  Fees not disputed within forty-five (45) days of payment or due date are conclusively deemed accurate.
   2. 5.2 <u>Payment Terms</u> . . Acceptable forms of payment include credit card, debit card, bank wire and cryptocurrency as Compass designates from time to time.  For credit card and debit card payments, Compass keeps your account information on file and sets up recurring billings for Service Fees, unless Customer expressly opts out of the recurring billings. Payments of Projected

Service Fees for the upcoming month will be automatically deducted from Customer's account on or before the 24th of each month. If Customer elects to pay with cryptocurrency, Compass will invoice Customer for the Projected Service Fees no later than the 15 th date of each month for the upcoming month. Customer shall deliver the designated cryptocurrency in the amount equal to the invoice due amount into the Compass's digital wallet by 5:00 p.m. (Central Standard Time) on the 24 th date of the same month. The exchange rate shall be the last traded price for such cryptocurrency to USD exchange transaction at the time of payment.

3. 5.3 Deposit . . Customer shall deliver to Compass, or Compass will deduct from Customer account if Customer does not opt out of the automatic bill payment, a deposit for Projected Service Fees (" **Deposit** "). Such Deposit shall be included in the initial checkout along with payment for any hardware that Customer purchases from Compass. If Customer fails to pay any Service Fees, Compass may use, apply or retain all or any portion of the Deposit for the payment of any amount due or to reimburse or compensate Compass for any liability, expenses, loss or damages which Compass may suffer or incur by reason thereof. If Compass uses or applies all or any portion of the Deposit, Customer shall within ten (10) days after written request thereof deposit money with Compass sufficient to restore the Deposit to the full amount required by this Agreement. Within thirty (30) days after the expiration or termination of this Agreement, unless Compass elects to apply Deposit to unpaid Service Fees, Compass will return the portion of the Deposit not used or applied. No part of the Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any Service Fees to be paid by Customer under this Agreement.

4. 5.4 Payment Due Date . Time is of the essence in the payment of each and every invoice. For any overdue invoices, Compass may (i) terminate the Service, (ii) seize and dispose of or sell the Customer Hardware and use the proceeds to satisfy any amounts due; or (iii) turn off Customer Hardware, and/or disable Customer's access to accounts until all fees due to Compass are paid in full. Without limiting the foregoing, Compass reserves the right to charge a daily penalty at one percent (1%) of the overdue amount until the payment is settled and take possession of the Customer Hardware and redirect mining proceeds to Compass's wallet.

5. 5.5 Fee Adjustment .    Compass reserves the right to modify its rates upon a material increase in any of Compass's operating costs, including without limitation, power rates, leasing rates, tax rates or increased regulatory compliance costs.

6. **6 TERM, TERMINATION, MODIFICATION AND SUSPENSION**

    1. 6.1 Term . . Unless terminated sooner as provided in this Agreement, the initial term of this Agreement shall begin on the Effective Date and expire one (1) year thereafter (the " **Initial Term** ").  Upon expiration of the Initial term, this Agreement will renew automatically for an additional year (the " **Renewal Term** ", together with the Initial Term, " **Term** ") unless either party provides written notice to the other party of its desire to avoid the Renewal Term at least sixty (60) days in advance of the conclusion of the Initial Term.

2. 6.2 <u>For Convenience</u> .  Customer may terminate the Agreement for convenience by providing Compass with 60-day written notice. Compass may terminate the Agreement or convenience by providing Customer with 7-day written notice.
3. 6.3 <u>For Cause</u> .  Compass may terminate this Agreement for cause immediately following written notice if You: (i) fail to make any payments due pursuant to this Agreement; (ii) violate, or fail to perform or fulfill any covenant or provision of this Agreement, and such breach is not cured within thirty (30) days after notification from Us; or (iii) enter into bankruptcy, financial failure or insolvency, sales or merger with another person, corporation or entity, unless approval in advance by Compass. Without limiting the foregoing, either party may terminate or suspend all or a portion of the Agreement if necessary to be in compliance with applicable law, rules, regulations, administrative or judicial orders or decree. The terminating party will use commercially reasonable efforts to notify the other party, which may be via email or telephone, of such suspension. The parties agree that they will have no liability whatsoever to the other for any damage, loss, expense or cost as a result of such termination or suspension.
4. 6.4 <u>Effects of Termination</u> .  Upon termination or expiration of this Agreement, in the event of Customer's default, Customer agrees to immediately pay to Compass all amounts then owed. If Customer fail to make such payments, Compass shall have the right to (i) sell or retain possession of; (ii) reconfigure for Compass's use, or (iii) remove and store at Customer's expense, all or any portion of Customer Hardware without any costs, obligation or liability by Compass.
5. 6.5 <u>Return of Customer Hardware</u> .  Customer may request upon the expiration or termination of this Agreement, Compass will return any and all Customer Hardware, unless Customer is in default of payment. Fees, handling costs and risk of loss during shipping shall be borne by You.  If Customer does not provide return directions within fifteen (15) days of termination or expiration of this Agreement, Compass shall be entitled to dispose of Customer Hardware. Compass will not be responsible for any damage or operation deficiency of Customer Hardware and Compass will not repair or reimburse Customer in any form. Upon the termination of the Agreement for any reason, Compass will permanently delete Customer's personal information from any and all storage devices.

7. **7 SECURITY INTEREST**
   1. 7.1 <u>Security Interest</u> .  CUSTOMER HEREBY GRANT COMPASS A SECURITY INTEREST IN ALL CUSTOMER HARDWARE IN COMPASS'S POSSESSION, NOW OR AT ANY TIME HEREAFTER, IN ORDER TO SECURE THE TIMELY PERFORMANCE OF THIS AGREEMENT BY CUSTOMER AND SECURE THE PAYMENT OF ALL INVOICES, CHARGES AND COSTS. FURTHERMORE, CUSTOMER GRANT COMPASS A SECURITY INTEREST IN ALL CUSTOMER HARDWARE FOR THE PAYMENT OF ENGINEERING WORK, LABOR OR OTHER CHARGES THAT ARE DUE AND UNPAID BY YOU.
8. **8 REPRESENTATIONS AND WARRANTIES**

1. 8.1 <u>Authority and Capacity</u> . Each party represents, warrants, and covenants that (i) it has full legal capacity, right, power and authority to execute and perform its obligations under this Agreement; and (ii) its performance of obligations hereunder will not violate any applicable laws or require the consent of any third party.
2. 8.2 <u>Title to Customer Hardware and Receipt of Mining Rewards</u> . Customer represent, warrant and covenant that (i) Customer has clear title, free and clear of all security interests or liens, to Customer Hardware, including the legal right to use, operate and locate the Customer Hardware; and (ii) its receipt of Mining Rewards will not violate any applicable laws or require the consent of any third party.
3. 8.3 <u>Accuracy of Customer Information</u> . Customer represents and warrants that: (i) the information Customer have provided for the purpose of establishing an account with Compass is true, accurate, current and complete; and (ii) Customer will maintain and promptly amend all information and material to keep it true, accurate, current and complete.
4. 8.4 <u>Compliance with Laws</u> . Customer represents and warrants that: (i) Customer will not use the Service for the development, design, manufacture, production, stockpiling, or use of nuclear, chemical or biological weapons, weapons of mass destruction, or missiles, in a country listed in Country Groups D: 4 and D:3, as set forth in Supplement No. 1 to Part 740 of the United States Export Administration Regulations, (ii) Customer shall not provide administrative access to the Service to any person (including any natural person or government or private entity) that is located in or is a national of any embargoed or highly restricted country under United States export regulations, which include Cuba, Iran, and Sudan, and (iii) Customer are not on the United States Department of Treasury, Office of Foreign Asset Controls list of Specially Designated Nationals and Blocked Persons;

9. **9 RISK FACTORS AND LIMITATIONS OF LIABILITY**
    1. 9.1 <u>Protocol Risk</u> . Compass does not own or control any Digital Assets and does not own or control the underlying software cryptographic protocols of networks which govern the operation of any cryptocurrency. Compass is not responsible for the operation of the underlying protocols, and make no guarantees regarding their security, functionality, or availability.
    2. 9.2 <u>Network and Information Security Risk</u> . Customer acknowledges and agrees that the use of telecommunications and data communications networks and the Internet may not be secure and that connection to and transmission of data and information over the Internet and such facilities provide the opportunity for unauthorized access to wallets, computer systems, networks and all data stored herein. Information and data transmitted through the Internet or stored on any equipment through which Internet information is transmitted may not remain confidential and Compass does not make any representation or warranty regarding privacy, security, authenticity, and non-corruption or destruction of any such information. Compass does not warrant that the Services or Customer's use will be uninterrupted, error-free, or secure. Compass shall not be responsible for any adverse consequence or loss whatsoever to Customer's use of the Services or the Internet. Use of any information transmitted or obtained by Customer from Compass is at

Customer's own risk. Compass is not responsible for the accuracy or quality of information obtained through its network, including as a result of failure of performance, error, omission, interruption, corruption, deletion, detect, delay in operation or transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites. Compass do not control the transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites.

3. 9.3 <u>As Is and No Warranty</u> .  COMPASS MAKE NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF SERVICE OR THE OPERATING TEMPERATURE OF THE DATA CENTER. THE SERVICE AND THE DATA CENTER PROVIDED BY COMPASS IS PROVIDED "AS IS". COMPASS DO NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE DATA CENTER IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY, ETC. COMPASS MAKE NO WARRANTY WHATSOEVER, INCLUDING ANY (I) WARRANTY OF MERCHANTABILITY; (II) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (III) WARRANTY AGAINST INTERFERENCE; OR (IV) PRICE OR LIQUIDITY OF ANY DIGITAL ASSET. COMPASS DO NOT WARRANT THAT (I) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM MINOR INTERRUPTIONS; (II) THE SERVICE SHALL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS SET OUT IN WRITTEN AGREEMENT BETWEEN THE PARTIES; (C) THE SERVICE SHALL PROVIDE ANY FUNCTION NOT DESIGNATED IN WRITTEN AGREEMENT BETWEEN THE PARTIES.

4. 9.4 <u>LIMITATION OF LIABILITY</u> .   NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR (I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES; (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF CUSTOMER HARDWARE; (V) ANY CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT TO THE EXTENT THAT ANY SUCH LOSS OR DAMAGES ARISES OUT OF SUCH PARTY'S GROSS NEGLIGENCE, BAD FAITH OR WILLFUL MISCONDUCT. THE LIMITATIONS SET FORTH HEREUNDER WILL APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

5. 9.5 <u>Indemnification</u> .   Customer agrees to indemnity, defend and hold harmless Compass and its officers, managers, partners, members, agents, employees, affiliates, attorneys, heirs, successors and assigns from any and all claims, demands, actions, suits, proceedings and Losses arising from or in connection with (i) any legal, regulatory or governmental action against or including Customer; (ii) the maintenance or operation of Customer Hardware; (iii) any Loss by any of Customer, Customer's officers, managers, partners,

    members; and (iv) any breach or nonperformance by Customer of any provision or covenants hereunder.

10. **10 CONFIDENTIALITY**
    1. 10.1 <u>General</u> .  Each party acknowledges that it and its employees or agents may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is Confidential Information of the other party. Neither party may use nor copy any Confidential Information except to the limited extent necessary to perform its obligations under this Agreement and will not disclose any Confidential Information to any person or entity other than to its employees who have a need to know the Confidential Information or as otherwise expressly permitted by this Agreement. Each party shall use the same measures that it uses to protect its own most confidential and proprietary information to protect the Confidential Information, but in no event less than commercially reasonable measures.
    2. 10.2 <u>Return of Confidential Information</u> .  Upon termination or expiration of this Agreement, or at any other time at the request of the other party, each party shall return to the other party, or destroy and delete, as applicable, all Confidential Information and any copies thereof in its possession or control.
    3. 10.3 <u>Privacy</u> .  Compass warrants and represents that, Compass shall comply with, all applicable privacy laws throughout the Term, and will take all reasonable steps within Compass's power to ensure that Compass's employees, contractors and other customers comply with all applicable privacy laws.
    4. 10.4 <u>Compass Proprietary Information</u> . .  Except for the rights expressly granted herein, all rights, titles, and interests to any and all customer relationships, proprietary rights and intellectual property rights in Compass's data will remain with and be the exclusive property of Compass.
    5. 10.5 <u>Government Enquiries and Investigations</u> .  Compass may cooperate with any government or legal investigation regarding any aspect of the Services, which may include producing identifying information of Customer.
11. **11 INTELLECTUAL PROPERTY**
    1. 11.1 <u>Use of Trademarks</u> .  Neither party may use the other party's trademarks, service marks, trade names, copyrights, other intellectual property rights or other designations in any promotion, publication or press release without the prior written consent of the other party in each case, which consent shall not be unreasonably withheld.
12. **12 INSURANCE**
    1. 12.1 <u>General</u> .  The Parties agree that Compass is not an insurer and Customer Hardware is not covered by any insurance policy held by Compass. Customer will be solely responsible to insure their equipment and property against all forms of damage. If Customer does not insure the Customer Hardware or obtain any offered Premium Services from Compass, Customer will do so at Customer's sole risk.
13. **13 DISPUTES**

To the fullest extent permitted by law, the parties hereto (the "Parties") agree to waive their rights to seek remedies in court, including but not limited to rights to a trial by jury. The Parties agree that any dispute between or among them or their subsidiaries, affiliates or

related entities arising out of, relating to or in connection with this Agreement, will be resolved in accordance with a confidential two-step dispute resolution procedure involving: (1) non-binding mediation, and (2) binding arbitration under the Federal Arbitration Act, 9 U.S.C. 1, et. seq., or state law, whichever is applicable. Any such mediation or arbitration hereunder will be under the auspices of the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules and Mediation Procedures (the "AAA Commercial Rules"). No arbitration will be initiated or take place with respect to a given dispute if the Parties have successfully achieved a mutually agreed to resolution of the dispute as a result of the step-one mediation. The arbitration (if the dispute is not resolved by mediation) will be conducted by a single AAA arbitrator, mutually selected by the Parties, as provided for by the AAA Commercial Rules. The Parties agree that the arbitrator will apply the substantive law of the State of Florida to all state law claims and federal law to any federal law claims, that discovery will be conducted in accordance with the AAA Commercial Rules or as otherwise permitted by law as determined by the arbitrator. In accordance with the AAA Commercial Rules (a copy of which is available through AAA's website, www.adr.org), the arbitrator's award will consist of a written statement as to the disposition of each claim and the relief, if any, awarded on each claim. The Parties understand that the right to appeal or to seek modification of any ruling or award by the arbitrator is limited under state and federal law. Any award rendered by the arbitrator will be final and binding, and judgment may be entered on it in any court of competent jurisdiction. Nothing contained herein will restrict either party from seeking temporary injunctive relief in a court of law. In the unlikely event the AAA refuses to accept jurisdiction over a dispute, the Parties agree to submit to Judicial-Arbitration-Mediation Services ("JAMS") mediation and arbitration applying the JAMS equivalent of the AAA Commercial Rules. If AAA and JAMS refuse to accept jurisdiction, the Parties may litigate in a court of competent jurisdiction .

14. **14 DEFINITIONS**
    1. 14.1 "Confidential Information" refers to confidential or proprietary information of a party including, without limitation, business plans, strategies, forecasts and projections and information about business structures, operations, systems, finances, assets, investments, investment strategies, software and other technology systems, and personnel, customers and suppliers. Confidential Information does not include if it (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently developed by the receiving party.
    2. 14.2 "Customer Hardware" refers to the cryptocurrency mining hardware belonging to the Customer and specified in the Service Order.
    3. 14.3 "Force Majeure Event" means a failure by the other party to perform any of its obligations under this Agreement, if such failure is caused by events or circumstances beyond its reasonable control, including, wi t hout limitation,

    acts of God, war, labor strike, terrorist act, fire, flood, earthquake, landslide, hurricane, typhoon, tsunami, volcanic eruption, inclement weather, health epidemic or any law, order, regulation, seizure or other action of any governing authority or agency. Notwithstanding the foregoing, in the event of such an occurrence, each party agrees to make a good faith effort to perform its obligations hereunder
4. 14.4 "Hosting Facility" or "Hosting Partner" means a data center owned, leased, operated or reserved by Compass or Compass partners through the Site.
5. 14.5 "Losses" means all damages, judgments, liabilities, losses and expenses, including without limitation, attorney's fees.
6. 14.6 "Mining Rewards" means the digital asset, cryptocurrency, virtual currency, digital currency, or digital commodity (e.g., Bitcoin and Ethereum) produced by the proof-of-work cryptographic protocol of a computer network and generated by Customer's use of Customer Hardware.
7. 14.7 "Projected Service Fees" means the total projected monthly fees for the upcoming month for use of the Service.

15. **15 GENERAL PROVISIONS**
    1. 15.1 <u>No Assignment</u> .  Customer will not assign or otherwise transfer this Agreement or any of the Customer's rights and obligations under this Agreement, without the prior written consent of Compass, which may be unreasonably withheld. Any assignment or transfer in violation of this Section will be void. Compass may assign this Agreement without the Customer's consent (i) in connection with a merger, acquisition or sale of all or substantially all of our assets, or (ii) to any affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee is deemed substituted for Compass as a party to this Agreement and Compass is fully released from all of its obligations and duties to perform under this Agreement. Subject to the foregoing, this Agreement will be binding upon, and inure to the benefit of the parties and their respective permitted successors and assigns. The Customer may not merge this Agreement with any other agreements with Compass it may be party to.
    2. 15.2 <u>Notice</u> .   Except where expressly provided in this Agreement, all notices, consents, or approvals required by this Agreement will only be in writing and sent by overnight courier, certified or registered mail, overnight delivery requiring a signature upon receipt, email, or delivery by hand to the parties at the respective addresses set forth on the first page of this Agreement.  Notice is effective when received.
    3. 15.3 <u>Entire Agreement</u> .   This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement, and supersedes and replaces all prior or contemporaneous discussions, negotiations, proposals, understandings, and agreements, written or oral, as well as any industry custom. Each party acknowledges that, in entering into this Agreement, it has not relied on, and shall have no right or remedy in respect of, any statement, representation, assurance or warranty other than as expressly set out in this Agreement.  Compass may at any time revise the terms of this Agreement by updating these terms and by providing notice to Customer of that change.
    4. 15.4 <u>Survival</u> .   Any provision of this Agreement, which, by its nature, would survive termination or expiration of this Agreement, will survive any such termination or

expiration, including, without limitation, those provisions concerning confidentiality, indemnification, and limitation of liability. In the event of Compass's insolvency, cessation of operations, or filing for bankruptcy, Compass shall make good faith efforts, as directed by Customer, to either secure transition of Customer's Services to the Hosting Facility or return the Customer Hardware to the Customer at Customer's sole expense.

5. 15.5 <u>Subcontracting and Assignment</u> .   Neither party may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without prior written consent of the other party.  Any assignment or transfer in violation of this Agreement is void.  Notwithstanding the foregoing, Compass may assign or transfer its rights and obligations hereunder to any contractual service provider or data center who is in the business of cryptocurrency mining hosting services and capable of provision of the Service hereunder. Further, either party may assign or transfer its rights or obligations hereunder if such transfer occurs by operation of law under a bona fide merger, divestiture, consolidation, or reorganization, or to any purchaser of all or substantially all of the assets of the business of the assigning party, provided the assignee is bound by this Agreement, is financially able to complete its obligations, and is not a direct competitor of the non-assigning party.  This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.

6. 15.6 <u>Injunctive Relief</u> .  The parties acknowledge that the Confidentiality provision of this Agreement is reasonable in scope and duration and are not unduly restrictive. Customer further acknowledge that a breach of any of confidentiality obligation of this Agreement will render irreparable harm to Compass, and that a remedy at law for breach of the Agreement is inadequate, and that Compass shall therefore be entitled to seek any and all equitable relief, including, but not limited to, temporary and permanent injunctive relief, without the necessity of posting a bond, and to any other remedy that may be available under any applicable law or agreement between the parties. Customer acknowledges and agrees that an award of damages to Compass does not preclude a court from ordering injunctive relief. Both damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies.

7. 15.7 <u>Relationship of the Parties</u> .  The parties are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the parties.  Neither party has the power or authority as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever without the other's prior written consent.

8. 15.8 <u>Force Majeure</u> .  Neither party will be responsible nor in any way liable for any delays or failures in performance, except for payment of Service Fees under this Agreement, arising out of or relating to a Force Majeure Event.

9. 15.9 <u>Governing Law</u> .   This Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware. The jurisdiction is exclusively to the courts within the State of Delaware.

10. 15.10 <u>General</u> .   The rights and remedies provided for herein are cumulative and not exclusive of any rights or remedies that a party would otherwise have. There are

no third-party beneficiaries to this Agreement.  No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving party.