1  GUNDZIK GUNDZIK HEEGER LLP
   Aaron C. Gundzik (State Bar No. 132137)
2  Aaron.gundzik@gghllp.com
   14011 Ventura Blvd, Suite 206E
3  Sherman Oaks, CA 91423
   Telephone: 818.290.7461
4  Facsimile: 818.918.2316

5  ARMSTRONG TEASDALE LLP
   Alec P. Harris (*pro hac vice* forthcoming)
6  Kathleen Guilfoyle (*pro hac vice* forthcoming)
   4643 South Ulster Street, Suite 800
7  Denver, Colorado 80237
   Telephone:  720.200.0676
8  Facsimile:   720.200.0679
   aharris@atllp.com
9  kguilfoyle@atllp.com

10 Attorneys for Defendant Compass Mining, Inc.

11

12                 **UNITED STATES DISTRICT COURT**
                   **CENTRAL DISTRICT OF CALIFORNIA**
13

14

15 VERIBI, LLC, a Nevada limited          Case No.: 2:22-CV-04537
   liability company,
16
            Plaintiff,                    **DEFENDANT COMPASS MINING
17                                        INC.'S MEMORANDUM OF
       v.                                 POINTS AND AUTHORITIES IN
18                                        SUPPORT OF MOTION TO
   COMPASS MINING, INC., a Delaware       COMPEL ARBITRATION**
19 corporation,
                                          Date: September 13, 2022
20          Defendant.                    Time: 10:00 a.m.
                                          Place: Courtroom 590, Roybal Federal
21                                        Building and United States Courthouse,
                                          255 E. Temple St., Los Angeles CA,
22                                        90012

23

24

25

26

27

28

-i-

UNITED STATES DISTRICT COURT -
CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:22-CV-04537

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

# **Table of Contents**

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF RELEVANT FACTS AND BACKGROUND ....................................... 1

III. ARGUMENT ........................................................................................................... 3

      A.     The Parties Have A Valid Agreement to Arbitrate. ......................................... 5

      B.     The Arbitration Agreement Covers the Dispute at Issue. ............................... 8

      C.     The Court Should Dismiss the Action. ............................................................ 9

IV. CONCLUSION ...................................................................................................... 10

Case No. 2:22-CV-04537

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

1

## <u>Table of Authorities</u>

2

Page(s)

3

**Cases**

4

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ................................................................................3

5

6

*Baird v. Charter Comms., Inc.*,
   CV 19-10621 ..............................................................................................7

7

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) .....................................................................6

8

9

*Binder v. Aetna Life Ins. Co.*,
   89 Cal. Rptr. 2d 540 (Cal. Ct. App. 1999) ..............................................5

10

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ...................................................7

11

12

*Cedars Sinai Med. Ctr. v. Mid–West Nat'l Life Ins. Co.*,
   118 F. Supp. 2d 1002 (C.D. Cal. 2000) ...................................................5

13

14

*Fuentes v. Dish Network L.L.C.*,
   Case No. 16-cv-02001-JSW, 2016 WL 11752207 (N.D. Cal. Oct. 13, 2016) ........................5

15

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ..................................................................................8

16

17

*Hart v. Charter Comms., Inc.*,
   814 F. App'x 211 (9th Cir. 2020)  ............................................................6

18

19

*Heston v. GB Cap. Holdings, LLC*,
   CASE No. 16cv912-WQH-RBB, 2016 WL 4468254 (S.D. Cal. Aug. 23, 2016) ...............................................................................9

20

*Lei v. Amway Corp.*,
   CV 14-04022-RGK, 2014 WL 12596787 (C.D. Cal. July 23, 2014) .......................................9

21

22

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
   107 Cal. Rptr. 2d 645 (Cal. Ct. App. 2001) .............................................5

23

24

*Marrone v. Imperial Holdings Inc.*,
   NO.: CV 13-06368 SJO (Ex), 2013 WL 12433803 (C.D. Cal. Dec. 18, 2013) ....................3, 4

25

*Moore v. Microsoft Corp.*,
   293 A.D.2d 587 (N.Y. 2002) ....................................................................6

26

27

28

-iii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..............................................................................................4

*Neurosigma, Inc. v. De Salles*,
  No. CV 13-07973 DMG, 2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) .............4, 8

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) ...........................................................................5

*Schoenduve Corp. v. Lucent Techs., Inc.*,
  442 F.3d 727 (9th Cir. 2006) ...........................................................................8

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ...........................................................................8

*Sparling v. Hoffman Const. Co., Inc.*,
  864 F.2d 635 (9th Cir. 1988) ...........................................................................9

*Zeif v. Cintas Corp. No. 2*,
  Case No. SACV 13-00413 JVS, 2013 WL 12147757 (C.D. Cal. Apr. 15,
  2013) ...............................................................................................................4

**Statutes**

9 U.S.C. §§ 3, 4...................................................................................................9

Case No. 2:22-CV-04537

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

# I.     INTRODUCTION

From May 2021 to January 2022 Veribi, LLC ("Veribi" or "Plaintiff"), purchased the cryptocurrency miners and hosting services at issue in this litigation from Compass Mining Inc. ("Compass" or "Defendant"). *See* Complaint [ECF No. 1] ¶ 16. At all times, the Parties' contractual relationship was governed by the Compass Hosting Service Agreement (the "Agreement"). Beginning in July 2021, the Agreement included an arbitration provision. The arbitration provision requires that all disputes be addressed through mediation, followed by arbitration. It applies "to the fullest extent permitted by law." Heller Decl., Ex. H, § 13. Veribi's assent to this arbitration provision and the rest of the Agreement is confirmed by invoices paid by Veribi, which state, "By paying for this invoice and paying the security deposit, you are agreeing to the Compass Mining Hosting Terms and Conditions." See Heller Decl. ¶¶ 24, 26, Ex. A. Acting through its agent, John Vanhara, Veribi also expressly agreed to the Agreement when Vanhara purchased miners through the Compass website. *Id.* ¶ 27. Indeed, in order to complete online purchases, Mr. Vanhara was required to scroll through the Agreement in its entirety and twice confirm his understanding and agreement.

The Parties have a valid and enforceable agreement to arbitrate that covers this dispute. Accordingly, this Court should enter an order compelling Veribi to arbitrate its claims and dismissing this action.

# II.     STATEMENT OF RELEVANT FACTS AND BACKGROUND

Compass provides its customers with the necessary means to mine cryptocurrency. Heller Decl. ¶ 5. This includes selling the computers required to mine cryptocurrency ("miners") to customers and providing hosting services for a customer's miners. *Id.* Hosting services include providing access to facilities sufficient to support the operation of the miners, as well as electricity to run the miners and technical support. *Id.* Compass typically contracts with third-party

UNITED STATES DISTRICT COURT -
CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:22-CV-04537

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

hosting facilities to support its customers.

Many customers purchase Compass goods and services directly through its website. Some customers, particularly those placing a larger volume of orders, are directly invoiced. In all cases, customers agree to the same set of terms and conditions found in the Agreement. *Id.* ¶ 6.

Veribi LLC ("Veribi") is a relatively large customer of Compass and has purchased many miners from Compass in the last several years, through its agent, John Vanhara.[1] *Id.* ¶¶ 7–9. Veribi has chosen to host its miners at Compass hosting facilities throughout the world, including at the Compass hosting facilities in Russia operated by BitRiver at issue in this dispute. *Id.* ¶¶ 10–11. (This Memorandum will refer to Veribi's miners at BitRiver facilities as the "BitRiver Miners"). In its dealings with Compass, Veribi repeatedly agreed to the arbitration provision in the Agreement.

First, Veribi agreed to the Compass Hosting Service Agreement when making purchases through direct invoices. *Id.* ¶ 21. The terms and conditions set forth in the Compass Hosting Service Agreement apply to all hosting services provided by Compass, including those ordered through direct invoicing. *Id.* ¶¶ 6, 22. Documentation from direct invoicing reaffirms this fact. *Id.* ¶ 23. For example, the invoices for the BitRiver Miners issued to Veribi on June 9, 2021, August 5, 2021, January 14, 2022, and January 26, 2022 each state: "By paying for this invoice and paying the security deposit, you are agreeing to the Compass Mining Hosting Terms and Conditions. The Terms and Conditions are available on request." *Id.*, Ex. A. The Compass Mining Hosting Terms and Conditions were set forth in the Compass Hosting Service Agreement. *Id.* ¶ 25.

---

[1] At the time many of these purchases were made, Veribi was called Ofiplex NV, LLC.

-2-

1    Second, Veribi made at least two purchases online through the Compass

2    website, once on March 31, 2021, and again on July 30, 2021. *Id.* ¶¶ 28–30. Through

3    its online purchases from the Compass website, Veribi (acting through Mr. Vanhara)

4    expressly agreed to the terms set forth in Compass's Hosting Service Agreement. *Id.*

5    ¶ 31. Specifically, in order to complete its online purchases from Compass, Veribi

6    (acting through Mr. Vanhara) was required to scroll through the Compass Hosting

7    Service Agreement, click: "ok, I agree," and then check a box affirming: "I have

8    read and agree to the Compass Hosting Service Agreement." *Id.* ¶¶ 32–34.

9    Since July 2021, the Agreement has contained a strong agreement to arbitrate.

10   Section 13 of the Agreement provides:

11   > To the fullest extent permitted by law, the parties hereto (the "Parties")
     > agree to waive their rights to seek remedies in court, including but not
12   > limited to rights to a trial by jury. The Parties agree that any dispute
     > between or among them or their subsidiaries, affiliates or related
13   > entities arising out of, relating to or in connection with this Agreement,
     > will be resolved in accordance with a confidential two-step dispute
14   > resolution procedure involving: (1) non-binding mediation, and (2)
     > binding arbitration under the Federal Arbitration Act, 9 U.S.C. 1, et.
15   > seq., or state law, whichever is applicable.

16   *See* Heller Decl., Ex. H, § 13.[2]

17   ## III.   ARGUMENT

18   The Federal Arbitration Act ("FAA") provides that written provisions to

19   arbitrate disputes are "valid, irrevocable, and enforceable, save upon such grounds

20   as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC*

21   *v. Concepcion*, 131 S. Ct. 1740, 1744, (2011). "Federal courts are required to

22   'rigorously enforce agreements to arbitrate.'" *Marrone v. Imperial Holdings Inc.*,

23   NO.: CV 13-06368 SJO (Ex), 2013 WL 12433803, at *2–3 (C.D. Cal. Dec. 18, 2013)

24   (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA

25

26   _____

27   [2] For convenience, this Memorandum cites to the current version of the Agreement,
     which Veribi agreed to in January 2022.

28

-3-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

"is a congressional declaration of a liberal federal policy favoring arbitration agreements" designed to "create a body of federal substantive law of arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Therefore, on a motion to compel arbitration, "courts are limited to determining two 'threshold' or 'gateway' questions of arbitrability: '(1) [whether] a valid agreement to arbitrate exists; and (2) [whether] that agreement encompasses the dispute at issue.'" *Marrone*, 2013 WL 12433803, at *3  (quoting *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002)). Courts resolve these threshold questions by applying "state-law principles that govern the formation of contracts." *See Neurosigma, Inc. v. De Salles*, No. CV 13-07973 DMG (PJWx), 2014 WL 12803168, at *2 (C.D. Cal. Jan. 31, 2014). When deciding if an agreement to arbitrate encompasses the dispute at issue, the Complaint's "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* at *4 (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)).

"'Upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under ... an agreement,' the court 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ....'" *Id.* at *2 (quoting 9 U.S.C. § 3). Courts also "have the authority to dismiss an action where '[t]he language contained in the arbitration provision is sufficiently broad to bar all of plaintiff's claims.'" *Marrone*, 2013 WL 12433803, at *3 (quoting *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)); *see also Zeif v. Cintas Corp. No. 2*, Case No. SACV 13-00413 JVS (JPRx), 2013 WL 12147757, at *4 (C.D. Cal. Apr. 15, 2013) ("The FAA provides for a stay of proceedings pending arbitration, but the Ninth Circuit has held district courts may compel arbitration and dismiss the action, rather than stay it, where all claims asserted are subject to arbitration.").

-4-

Here, the Parties have in place an agreement to arbitrate that encompasses the dispute at issue. The Court, pursuant to the FAA, should compel Veribi to arbitrate its claims and dismiss this action.

## A. The Parties Have A Valid Agreement to Arbitrate.

Applying California state-law principles,[3] the Parties have a valid agreement to arbitrate. Generally, "[u]nder California law, the essential elements for a contract are (1) '[p]arties capable of contracting;' (2) '[t]heir consent;' (3) '[a] lawful object;' and (4) '[s]ufficient cause or consideration.'" *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (alterations in original) (quoting Cal. Civ. Code § 1550). A party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 651 (Cal. Ct. App. 2001). Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract formation. *See Binder v. Aetna Life Ins. Co.*, 89 Cal. Rptr. 2d 540, 551 (Cal. Ct. App. 1999). "In California, a party's intent to contract is judged objectively, by the party's outward manifestation of consent." *Cedars Sinai Med. Ctr. v. Mid–West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000).

---

[3] The Agreement provides a general choice of law provision and a choice of law provision in the arbitration provision, both identifying Delaware law as the applicable substantive law. *See* Heller Decl., Ex. H, §§ 13, 15.4. Without waiving the applicability or validity of those provisions, Compass applies California law concerning contract formation to foreclose any argument that those choice of law provisions do not apply because no contract was formed. However, the the outcome is the same under Delaware law. *See Fuentes v. Dish Network L.L.C.*, Case No. 16-cv-02001-JSW, 2016 WL 11752207, at *5 (N.D. Cal. Oct. 13, 2016) ("The Court concludes it need not resolve the choice of law dispute on questions of formation, because under either California law or Colorado law, the outcome is the same.").

Veribi itself alleges in the Complaint that there are valid contracts between the parties for the purchase of miners and accompanying hosting services. *See* Compl. [ECF No. 1] ¶¶ 33–42. Incorporated into those contracts are the terms set forth in the Compass Hosting Service Agreement, which clearly provides that it "contain[s] the terms and conditions that govern *your access to and use of the Hosting Service*." Heller Decl., Ex. H (emphasis added). By agreeing to those terms, Veribi agreed to arbitrate all disputes.

And there can be no dispute that Veribi agreed to the terms set forth in the Compass Hosting Service Agreement specifically. As discussed above, Veribi agreed to the Agreement when it paid its June 9, 2021, August 5, 2021, January 14, 2022, and January 26, 2022 invoices for the BitRiver Miners. *See Hart v. Charter Comms., Inc.*, 814 F. App'x 211, 213–14 (9th Cir. 2020) (holding that the "district court did not err by determining that [plaintiff] had inquiry notice of [defendant's] 2014 subscriber agreement as a result of the notice she received in two billing statements" and therefore "continued acceptance of [defendant's] services constituted assent to the agreement"). In addition. Veribi reviewed, twice acknowledged, and expressly agreed to those terms as a requirement of completing its online transaction on July 30, 2021. *See Moore v. Microsoft Corp.*, 293 A.D.2d 587, 587 (N.Y. 2002) (software user was bound by license agreement where terms were prominently displayed on computer screen before software could be installed and where user was required to indicate assent by clicking "I agree").[4]

When Vanhara made the above purchases, he was agreeing that the terms

---

[4] Because Veribi had to view, scroll through, and twice acknowledge and agree to the Agreement for its online purchases, it is clearly a valid and enforceable "clickwrap" agreement. *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (noting that "clickwrap" agreements, which conspicuously notify customers of their terms and require unambiguous consent, are enforceable).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

currently in effect would apply to all prior and subsequent purchases. In *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103–05 (C.D. Cal. 2002), this Court confronted a similar factual scenario. There, Plaintiffs argued there was no valid agreement to arbitrate because DirecTV only provided the arbitration provision after the parties had entered into their agreement for satellite programming, after plaintiff had purchased the DirecTV equipment, and after DirecTV had activated the service. The Court found the length of time between receipt of goods/services and receipt of the terms and conditions containing an arbitration agreement irrelevant where the agreement "contains the terms of [an] *ongoing* contractual relationship" *for services*. *Id.* at 1104 (emphasis added). In the instant case, like the facts in *Bischoff*, the Parties' relationship is an ongoing contractual relationship for the hosting services provided by Compass. All versions of the Agreement make plain that the Agreement "govern[s Veribi's] access to and use of the Hosting Service," and define Hosting Service as providing "the hosting of Customer Hardware at the Hosting Facility selected by Customer." *See, e.g.*, Heller Decl., Ex. H. Thus, the operative Agreement is the most recent version. *Id.*

Here, the Agreement[5] contains a clear and conspicuous agreement to arbitrate:

> To the fullest extent permitted by law, the parties hereto (the "Parties") agree to waive their rights to seek remedies in court, including but not limited to rights to a trial by jury. The Parties agree that any dispute between or among them or their subsidiaries, affiliates or related entities arising out of, relating to or in connection with this Agreement, will be resolved in accordance with a confidential two-step dispute resolution procedure involving: (1) non-binding mediation, and (2) binding arbitration under the Federal Arbitration Act, 9 U.S.C. 1, et. seq., or state law, whichever is applicable.

*Id.*, Ex. H, § 13 (DISPUTES). Thus, the first threshold inquiry is satisfied: the parties have a valid agreement to arbitrate. *See Baird v. Charter Comms., Inc.*, CV 19-10621

---

[5] Even looking to earlier versions, the Agreement has contained an arbitration agreement since July 2021. *See* Heller Decl., Ex. D.

-7-

1  DSF (KSx), 2020 WL 11626081, at *4 (C.D. Cal. June 1, 2020) ("Under California
2  law, '[a] party who is bound by a contract is bound by all its terms.'" (citation
3  omitted)).

4      **B.    The Arbitration Agreement Covers the Dispute at Issue.**

5      To determine whether an agreement to arbitrate encompasses the dispute at
6  issue, courts turn first to the language of the arbitration agreement. The Ninth Circuit
7  has established that "an arbitration clause containing the phrase 'any and all disputes
8  arising under the arrangements contemplated hereunder' must be interpreted
9  liberally." *Simula, Inc.*, 175 F.3d at 720 (quoting *Republic of Nicaragua v. Standard
10 Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991)). Also, an agreement that requires the
11 parties to arbitrate "any dispute arising out of or relating to" an agreement is intended
12 "to reach all aspects of their relationship." *Schoenduve Corp. v. Lucent Techs.*, *Inc.*,
13 442 F.3d 727, 732 (9th Cir. 2006); *see also Granite Rock Co. v. Int'l Bhd. of
14 Teamsters*, 561 U.S. 287, 298 (2010) ("[W]here, as here, parties concede that they
15 have agreed to arbitrate some matters pursuant to an arbitration clause ... any doubts
16 concerning the scope of arbitral issues should be resolved in favor of arbitration."
17 (internal quotation marks and citations omitted)).

18     Here, the arbitration agreement specifically applies to "any dispute between
19 or among [the Parties] or their subsidiaries, affiliates or related entities arising out
20 of, relating to or in connection with this Agreement." Heller Decl., Ex. H, § 13. It is
21 intended "to reach all aspects of their relationship." *Schoenduve Corp.*, 442 F.3d at
22 732.

23     Arbitration is required if the Complaint's factual allegations merely "'touch
24 matters' covered by the contract containing the arbitration clause and all doubts are
25 to be resolved in favor of arbitrability." *Neurosigma, Inc.*, 2014 WL 12803168, at
26 *2 (quoting *Simula, Inc.*, 175 F.3d at 721). The Complaint centers on Compass's
27 obligations to Veribi concerning the miners for which Compass provides Veribi
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

Hosting Services. *See* Compl. ¶¶ 36–42 (alleging breach of contract claim due to Compass's alleged failure to ensure "safe, effective, and continuous operation of Veribi's [miners]"), ¶ 44 (noting Compass's agreement to "manage" Veribi's miners), ¶ 49 (admitting, in its conversion claim section, that "Veribi entered into various Agreements ... with Compass to purchase bitcoin mining systems and management services from Compass"), ¶¶ 56–65 (alleging fraud claim, complaining solely of events affecting Veribi's miners purchased from and managed by Compass). In the Agreement, the Parties agreed that it would "govern [Veribi's] access to and use of the Hosting Service." *See* Heller Decl., Ex. H. Clearly, the Complaint "touch[es] matters" covered by the contract containing the arbitration clause.

Thus, the second threshold inquiry is satisfied: the Parties' agreement to arbitrate encompasses the dispute at issue.

### C.    The Court Should Dismiss the Action.

At this juncture in the analysis, with the threshold inquiries satisfied, the Court must compel arbitration and stay the action pending arbitration. *See* 9 U.S.C. §§ 3, 4. The Court may also exercise its authority to dismiss the action. *See Sparling*, 864 F.2d at 638 (affirming district court's dismissal where "the arbitration clause was broad enough to bar all of the plaintiff's claims"). The arbitration clause here is broad enough to bar all Veribi's claims. Thus, Compass respectfully requests the Court dismiss the Complaint in its entirety.[6]

---

[6] The Agreement's mandatory mediation provision does not change this result. *See, e.g., Lei v. Amway Corp.*, CV 14-04022-RGK (AGRx), 2014 WL 12596787, at *6 (C.D. Cal. July 23, 2014) (holding that FAA applied to require enforcement of multi-step arbitration agreement, including the first step of non-binding mediation). Even if the Court concludes that it cannot enforce the mediation provision of the Agreement under the FAA, it may still compel arbitration. *See Heston v. GB Cap. Holdings, LLC*, CASE No. 16cv912-WQH-RBB, 2016 WL 4468254, at *2–3 (S.D. Cal. Aug. 23, 2016) (finding no legal authority to issue an order compelling non-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION

1  **IV.    CONCLUSION**

2          For all of the above reasons, Compass respectfully requests that the Court

3  enter an order compelling arbitration of this dispute and dismiss this litigation.

4
    Dated:  August 10, 2022                    GUNDZIK GUNDZIK HEEGER LLP
5

6

7                                        By:    /s/ *Aaron C. Gundzik*

8                                               Attorneys for Defendant Compass
9                                               Mining, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 ————————————————

27  binding mediation, but still dismissing the action and compelling arbitration after
    finding a valid arbitration agreement existed and encompassed the dispute at issue).
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO COMPEL
ARBITRATION