# EXHIBIT G

**Compass Hosting Service Agreement**

Last Updated: August 2, 2021

This Compass Hosting Service Agreement (this "Agreement") contains the terms and conditions that govern your access to and use of the Hosting Service (as defined below) and is an agreement between Compass Mining Inc. ("Compass," "we," "us," or "our") and you or the entity you represent ("Customer," "you," or "your"). This Agreement takes effect when you click an "I Accept" button or checkbox presented or otherwise execute this Agreement (the "Effective Date"). Customer represents to Compass that Customer is lawfully able to enter into contracts (e.g., Customer is not a minor). If Customer is entering into this Agreement for an entity, Customer represents to Compass that Customer has legal authority to bind that entity. Please see Section 14 for definitions of certain capitalized terms used in this Agreement.

## 1 HOSTING SERVICE

1.1 <u>Hosting Arrangement</u> .   Compass shall provide for the hosting of Customer Hardware at the Hosting Facility selected by Customer ("Hosting Service"). As part of the Hosting Service, Compass shall provide for or arrange shelf space, sufficient electrical capacity at the required voltage, and monitoring of Customer Hardware for irregularities (i.e., standard fixes or resets to achieve the Service Level). Compass reserves the right to switch the Hosting Facility to a like facility in the same region as the original facility selected by the Customer and at a cost that is equal to or less than the Hosting Service Fee. Compass reserves the right to provide the Hosting Service directly or through agents, vendors and qualified third parties.

1.2 <u>Service Level</u> .   Compass shall use commercially reasonable efforts to make the Hosting Service available to Customer ninety five percent (95%) of the time each month (the "Service Level"), except in the event of maintenance of the Hosting Facility and its associated infrastructure, Customer Hardware failure, or Force Majeure Events. Compass does not guarantee that the Hosting Service will not be interrupted by outages or shortages of power which are planned or unplanned and outside of Compass's control, and Compass will not be liable for the foregoing. Compass does not guarantee the supply of electricity during the winter and peak hours of the day and that there is a possibility of voluntary or involuntary downtime, curtailment by Compass or the energy provider, or outages or shortages of power of no more than 600 hours in a calendar year.

1.3 <u>Service Order</u> .   The Customer acknowledges and agrees that certain terms of the Hosting Service, including the Hosting Facility, the hosting price per kWh, as well as the estimated online date (i.e., commencement of mining operations) are as specified in the Order Summary Page if purchased on the Compass Site  ( https://compassmining.io/ ) , or contained in the Service Order hereto. The Order Summary Page shall be deemed to be agreed by the Customer through the checkout process or through the duly executed copy of this Agreement and an accompanying Order Summary Page by the authorized representative of each party.

## 2 CUSTOMER HARDWARE AND DELIVERY

2.1 <u>Delivery to Hosting Facility</u> .   Customer Hardware may require shipping and delivery to the Hosting Facility from the hardware manufacturer or a third-party distributor or reseller. In such cases, Compass shall provide for the delivery of the Customer Hardware to the Hosting Facility (i.e., facility) designated in the Order Summary Page if purchased on the Compass Site  ( https://compassmining.io/ ) , or contained in the Service Order hereto, and shall make reasonable efforts to ensure operation by the estimated On-Line date.

2.2 <u>Inspection and Installation</u> .   Compass shall inspect the Customer Equipment for suitability of hosting and has full discretion to accept or reject any Customer Hardware. Upon receipt, inspection and confirmation that Customer Hardware is fully functioning, Compass shall rovide for the installation of Customer Hardware at the Hosting Facility.

2.3 <u>Operation and Start Date</u> .   Compass shall make commercially reasonable efforts to commence operation of Customer Hardware on the scheduled Hosting Service commencement date reflected in the Order Summary Page if purchased online, or contained in the Service Order below; provided however, that Compass shall not be responsible for any delay in operation of Customer Hardware for any reason, including delay in receipt of Customer Hardware, Force Majeure Events, lack of available rackspace, or electrical or network connectivity problems.

## 3  HOSTING FACILITY MAINTENANCE AND CUSTOMER HARDWARE REPAIRS

3.1 <u>Facility Maintenance</u> .   Compass and operators of the Hosting Facility shall be entitled to perform maintenance and any actions as deemed necessary or desirable by Compass or its agents with respect to the Hosting Facility and to maintain the network. Customer acknowledges and agrees that performance of such maintenance may cause the network to be temporarily inaccessible and the Customer Hardware may experience temporarily down-time or unavailable. Compass and its Hosting Partners shall use commercially reasonable efforts to conduct such Maintenance in a manner so as to avoid or minimize the unavailability of the Hosting Service. If a scheduled Maintenance is expected to interrupt the availability of Hosting Service, Compass may give Customer notice by email prior to conducting such Maintenance, identifying the time and anticipated duration.

3.2 <u>Hardware Maintenance and Repair</u> .   Compass and the operators of the Hosting Facility shall be entitled to perform maintenance and any actions as deemed necessary or desirable with respect to Customer Hardware. To the extent that Compass cannot perform simple repairs without passing costs for parts and labor onto the Customer, the Customer will be notified of an estimated cost and timeline for Hardware repairs to be completed. Compass will make every effort to repair Hardware on-site, but may require customer Hardware to be shipped to the manufacturer for critical repairs. Hardware sent to the manufacturer for repair may be fully covered under a standard manufacturer warranty, but shipping costs will be paid at the Customer's expense. If the Customer does not agree with repair options or costs, the Customer has the right to cancel this Agreement and have their Hardware

shipped to them at their expense. If Customer does not respond to options for repair provided by Compass within (15) days, Compass reserves the right to cancel the Agreement.

**4 HOSTING SERVICE FEE AND CUSTOMER RESPONSIBILITY**

4.1 <u>Delivery, Installation and Removal of Customer Hardware</u> .  Any costs for the installation, mounting, and unmounting of Customer Hardware and all tariffs, taxes, shipping costs or other expenses associated with shipping, importing, exporting, and transporting Customer Hardware to the Hosting Facility shall be reflected in the Order Summary Page if purchased on the Compass Site ( https://compassmining.io/ ), or contained in the Hosting Services Supplement below, if relevant.

4.2 <u>Selection of Mining Pool</u> .  Customer shall timely provide Compass the mining pool it seeks to join. Customer is at all time responsible for the selection of the mining pool and for monitoring pool performance and instructing Compass to make any changes to the mining pool Customer seeks to use.

4.3 <u>Private Key and Wallet Security</u> .  Customer shall at all times be responsible for maintaining software and all other telecommunications, Internet access and related equipment required to receive Customer's mining rewards. Customer is solely responsible for the security of Customer's private keys. Customer shall hold Compass harmless from, user or access security with respect to any of Customer Hardware or the Hosting Facility. Compass does not provide any service to detect or identify any security breach of Customer Hardware or the Hosting Facility. Compass does not provide any tests employing tools and techniques intended to gain unauthorized access to Customer Hardware or Customer's personal property.

4.4 <u>Compass Account Security</u> .  Customer shall maintain the security of passwords for Compass account. Customer shall notify Compass if Customer suspects its Compass account has been hacked, stolen, accessed without authorization, or otherwise compromised. If Compass suspects any security violations have occurred related to Customer's Compass account, Compass may suspend access to Customer's account and Customer Hardware pending resolution.

4.5 <u>Maintenance</u> .  Customer may be required to purchase from Compass other equipment, accessories, software, or hardware, such as power cords, to ensure compliance with the technical and fire safety norms at the Hosting Facility.

4.6 <u>Return of Customer Hardware</u> .  Customer may request upon the expiration or termination of this Agreement, for Compass to return any and all Customer Hardware, unless Customer is in default of payment. All fees, taxes and handling costs and risk of loss during shipping shall be borne by Customer. If Customer does not provide return directions within fifteen (15) days of termination or expiration of this Agreement, Compass shall be entitled to dispose of Customer Hardware. Compass will not be responsible for any damage or operation deficiency of Customer Hardware and Compass will not repair or reimburse Customer in any form.

**5 PAYMENT TERMS AND TAXES**

5.1 <u>Hosting Service Fee</u> .  Compass calculates and bills fees and charges monthly in advance. The Hosting Service Fee is calculated based on the actual power consumption of Customer Hardware and the location of the Hosting Facility that Customer elects. Projected Hosting Service Fee in advance and in no case later than the 24th date of the then current month. If Customer's actual power consumption for the upcoming month is higher than the Projected Hosting Service Fee, an invoice will be issued and Customer agrees and undertakes to promptly pay the differences within five (5) business days of receiving such invoice. If the actual power consumption is lower than the Projected Hosting Service Fee, the balance shall be credited to the Projected Hosting Service Fee within (60) days of the close of the given month. Fees not disputed within forty-five (45) days of payment or due date are conclusively deemed accurate.

5.2 <u>Payment Terms</u> .  Acceptable forms of payment include credit card, debit card, bank wire and cryptocurrency as Compass designates from time to time. For credit card and debit card payments, Compass keeps your account information on file and sets up recurring billings for Hosting Service Fee, unless Customer expressly opts out of the recurring billings. Payments of Projected Hosting Service Fee for the upcoming month will be automatically deducted from Customer's account on or before the 24th of each month. If Customer elects to pay with cryptocurrency, Compass will invoice Customer for the Projected Hosting Service Fee no later than the 15th date of each month for the upcoming month. Customer shall deliver the designated cryptocurrency in the amount equal to the invoice due amount into the Compass's digital wallet by 5:00 p.m. (Central Standard Time) on the 24th date of the same month. The exchange rate shall be the last traded price for such cryptocurrency to USD exchange transaction at the time of payment.

5.3 <u>Deposit</u> .  Customer shall deliver to Compass, or Compass will deduct from Customer account if Customer does not opt out of the automatic bill payment, a deposit for Projected Hosting Service Fee ("Deposit"). Such Deposit shall be included in the initial checkout along with payment for any hardware that Customer purchases from Compass. If Customer fails to pay any Hosting Service Fee, Compass may use, apply or retain all or any portion of the Deposit for the payment of any amount due or to reimburse or compensate Compass for any liability, expenses, loss or damages which Compass may suffer or incur by reason thereof. If Compass uses or applies all or any portion of the Deposit, Customer shall within ten (10) days after written request thereof deposit money with Compass sufficient to restore the Deposit to the full amount required by this Agreement. Within thirty (30) days after the expiration or termination of this Agreement, unless Compass elects to apply Deposit to unpaid Hosting Service Fee, Compass will return the portion of the Deposit not used or applied. No part of the Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any Hosting Service Fee to be paid by Customer under this Agreement.

5.4 <u>Payment Due Date</u> .  Time is of the essence in the payment of each and every invoice. For any overdue invoices, Compass may (i) terminate the Hosting Service, (ii) seize and dispose of or sell the Customer Hardware and use the proceeds to satisfy any amounts due; or (iii) turn off Customer

Hardware, and/or disable Customer's access to accounts until all fees due to Compass are paid in full. Without limiting the foregoing, Compass reserves the right to charge a daily penalty at one percent (1%) of the overdue amount until the payment is settled and take possession of the Customer Hardware and redirect mining proceeds to Compass's wallet until the overdue invoice and interest are paid in full.

5.5 Fee Adjustment .  Compass reserves the right to provide written notice to modify its rates upon a material increase in any of Compass's operating costs, including without limitation, power rates, leasing rates, tax rates and/or increased regulatory compliance costs. Upon receipt of a notice of rate increase, Customer may within fifteen (15) days thereafter elect to terminate the Service by providing Compass with a notice of termination that will occur no later than thirty days (30) thereafter.

**6 TERM, TERMINATION, MODIFICATION AND SUSPENSION**

6.1 Term .  Unless terminated sooner as provided in this Agreement or otherwise stated in the Service Order, the initial term of the Services provided under this Agreement shall begin on the Commencement Date and expire one (1) year thereafter (the "Initial Term"). Upon expiration of the Initial term, this Agreement will renew automatically for an additional year (the "Renewal Term", together with the Initial Term, "Term") unless either party provides written notice to the other party of its desire to avoid the Renewal Term at least sixty (60) days in advance of the conclusion of the Initial Term.

6.2 For Convenience .  Customer may terminate the Agreement for convenience by providing Compass with 60-day written notice. Compass may terminate the Agreement or convenience by providing Customer with a 30-day written notice.

6.3 For Cause .  Compass may terminate this Agreement for cause immediately following written notice if You: (i) fail to make any payments, after notice an opportunity to cure, due pursuant to this Agreement; (ii) violate, or fail to perform or fulfill any covenant or provision of this Agreement, and such breach is not cured within thirty (30) days after notification from Us; or (iii) enter into bankruptcy, financial failure or insolvency, sales or merger with another person, corporation or entity, unless approval in advance by Compass. Without limiting the foregoing, either party may terminate or suspend all or a portion of the Agreement if necessary to be in compliance with applicable law, rules, regulations, administrative or judicial orders or decree. The terminating party will use commercially reasonable efforts to notify the other party, which may be via email or telephone, of such suspension. The parties agree that they will have no liability whatsoever to the other for any damage, loss, expense or cost as a result of such termination or suspension.

6.4 Effects of Termination .  Upon termination or expiration of this Agreement, in the event of Customer's default, Customer agrees to immediately pay to Compass all amounts then owed. Compass will provide written notice of any funds owed. If Customer fails to make such payments within five (5) days, Compass shall have the right to (i) sell or retain possession of; (ii) reconfigure for Compass's use, or (iii) remove and store at Customer's expense, all or any portion of Customer Hardware without any costs, obligation or liability by

Compass. Any of the measures above can be used to recover Customer funds owed plus reasonable costs to facilitate the recovery of funds owed. Compass will provide detailed reporting of any measures taken to recover funds owed. If Compass recovers the Customer balance as a result of a Hardware sale, Compass will return any additional funds above what is owed by the Customer within 30 days. Upon the termination of the Agreement for any reason, Compass will permanently delete Customer's personal information from any and all storage devices.

{/*

6.5 <u>Return of Customer Hardware</u> .  Customer may request upon the expiration or termination of this Agreement, Compass will return any and all Customer Hardware, unless Customer is in default of payment. All fees, taxes and handling costs and risk of loss during shipping shall be borne by Customer. If Customer does not provide return directions within fifteen (15) days of termination or expiration of this Agreement, Compass shall be entitled to dispose of Customer Hardware. Compass will not be responsible for any damage or operation deficiency of Customer Hardware and Compass will not repair or reimburse Customer in any form. Upon the termination of the Agreement for any reason, Compass will permanently delete Customer's personal information from any and all storage devices.

*/}**7 SECURITY INTEREST**

7.1 <u>Security Interest</u> .  CUSTOMER HEREBY GRANT COMPASS A SECURITY INTEREST IN ALL CUSTOMER HARDWARE IN COMPASS'S POSSESSION, NOW OR AT ANY TIME HEREAFTER, IN ORDER TO SECURE THE TIMELY PERFORMANCE OF THIS AGREEMENT BY CUSTOMER AND SECURE THE PAYMENT OF ALL INVOICES, CHARGES AND COSTS. FURTHERMORE, CUSTOMER GRANT COMPASS A SECURITY INTEREST IN ALL CUSTOMER HARDWARE FOR THE PAYMENT OF ENGINEERING WORK, LABOR OR OTHER CHARGES THAT ARE DUE AND UNPAID BY YOU.

**8 REPRESENTATIONS AND WARRANTIES**

8.1 <u>Authority and Capacity</u> .  Each party represents, warrants, and covenants that (i) it has full legal capacity, right, power and authority to execute and perform its obligations under this Agreement; and (ii) its performance of obligations hereunder will not violate any applicable laws or require the consent of any third party

8.2 <u>Title to Customer Hardware and Receipt of Mining Rewards</u> .  Customer represent, warrant and covenant that (i) Customer has clear title, free and clear of all security interests or liens, to Customer Hardware, including the legal right to use, operate and locate the Customer Hardware; and (ii) its receipt of Mining Rewards will not violate any applicable laws or require the consent of any third party

8.3 <u>Accuracy of Customer Information</u> .  Customer represents and warrants that: (i) the information Customer has provided for the purpose of establishing an account with Compass is true, accurate, current and complete; and (ii) Customer will maintain and promptly amend all information and material to keep it true, accurate, current and complete.

8.4 <u>FCPA; Anti-Bribery</u> .  In carrying out its responsibilities hereunder, each Party represents that it shall comply with all applicable anti- bribery laws including, but not limited to, the U.S. Foreign Corrupt Practices Act, as revised ("FCPA"), and the Organization for Economic Cooperation and Development Anti-Bribery Convention, as implemented in the territory. Each Party represents that it understands that the FCPA generally prohibits the promise, payment or giving of anything of value either directly or indirectly to any government official for the purpose of obtaining or retaining business or any improper advantage. For purposes of this section, "government official" means any official, officer, representative, or employee of any non-U.S. government department, agency or instrumentality (including any government-owned or controlled commercial enterprise), or any official of a public international organization or political party or candidate for political office. Each Party represents and warrants unto itself that, in the performance of this Agreement, (i) neither it nor any of its representatives are governmental employees or officials or candidates for political office and it will advise the other Party of any change in such representation; (ii) it and its representatives have not and will not make, offer, or agree to offer anything of value to any government official, political party, or candidate for office; (iii) it will comply with all provisions of the FCPA and the regulations thereunder as amended from time to time; and (iv) it agrees to indemnify, defend, and hold the other Party harmless for damages and expenses resulting from a violation of the foregoing by itself or its representatives.

8.5 <u>OFAC</u> .  Pursuant to United States Presidential Executive Order 13224 ("Executive Order"), each Party may be required to ensure that it does not transact business with persons or entities determined to have committed, or to pose a risk of committing or supporting, terrorist acts and those identified on the list of Specially Designated Nationals and Blocked Persons ("List") generated by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury. The names or aliases of these persons or entities ("Blocked Persons") are updated from time to time. Each Party certifies, represents and warrants that: (a) it is not acting, directly or indirectly, for or on behalf of any person, group, entity or nation named by any Executive Order of the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person" or any other banned or blocked person, entity, nation or transaction pursuant to any Law that is enforced or administered by the OFAC; and (b) it is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation. Each Party hereby agrees to defend, indemnify and hold the other Party harmless from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification.

8.6 <u>Compliance with Laws</u> .  Customer represents and warrants that: (i) Customer will not use the Hosting Service for the development, design, manufacture, production, stockpiling, or use of nuclear, chemical or biological weapons, weapons of mass destruction, or missiles, in a country listed in Country Groups D: 4 and D:3, as set forth in Supplement No. 1 to Part 740 of

the United States Export Administration Regulations, (ii) Customer shall not provide administrative access to the Hosting Service to any person (including any natural person or government or private entity) that is located in or is a national of any embargoed or highly restricted country under United States export regulations, which include Cuba, Iran, and Sudan, and (iii) Customer are not on the United States Department of Treasury, Office of Foreign Asset Controls list of Specially Designated Nationals and Blocked Persons.

**9 RISK FACTORS AND LIMITATIONS OF LIABILITY**

9.1 <u>Protocol Risk</u> .  Compass does not own or control any Digital Assets and does not own or control the underlying software cryptographic protocols of networks which govern the operation of any cryptocurrency. Compass is not responsible for the operation of the underlying protocols, and make no guarantees regarding their security, functionality, or availability.

9.2 <u>Network and Information Security Risk</u> .  Customer acknowledges and agrees that the use of telecommunications and data communications networks and the Internet may not be secure and that connection to and transmission of data and information over the Internet and such facilities provide the opportunity for unauthorized access to wallets, computer systems, networks and all data stored herein. Information and data transmitted through the Internet or stored on any equipment through which Internet information is transmitted may not remain confidential and Compass does not make any representation or warranty regarding privacy, security, authenticity, and non-corruption or destruction of any such information. Compass does not warrant that the Hosting Service or Customer's use will be uninterrupted, error-free, or secure. Compass shall not be responsible for any adverse consequence or loss whatsoever to Customer's use of the Hosting Service or the Internet. Use of any information transmitted or obtained by Customer from Compass is at Customer's own risk. Compass is not responsible for the accuracy or quality of information obtained through its network, including as a result of failure of performance, error, omission, interruption, corruption, deletion, detect, delay in operation or transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites. Compass do not control the transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites.

9.3 <u>As Is and No Warranty</u> .  COMPASS MAKES NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABILITY OF HOSTING SERVICE OR THE OPERATING TEMPERATURE OF THE DATA CENTER. THE HOSTING SERVICE AND THE DATA CENTER PROVIDED BY COMPASS IS PROVIDED "AS IS". COMPASS DO NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE DATA CENTER IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY, ETC. COMPASS MAKES NO WARRANTY WHATSOEVER, INCLUDING ANY (I) WARRANTY OF MERCHANTABILITY; (II) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (III) WARRANTY AGAINST INTERFERENCE; OR (IV) PRICE OR LIQUIDITY OF ANY DIGITAL ASSET. COMPASS DO NOT WARRANT THAT (I) THE HOSTING SERVICE SHALL BE AVAILABLE 24/7

OR FREE FROM MINOR INTERRUPTIONS; (II) THE HOSTING SERVICE SHALL MEET CUSTOMER'S REQUIREMENTS OTHER THAN AS SET OUT IN WRITTEN AGREEMENT BETWEEN THE PARTIES; (C) THE HOSTING SERVICE SHALL PROVIDE ANY FUNCTION NOT DESIGNATED IN WRITTEN AGREEMENT BETWEEN THE PARTIES.

9.4 LIMITATION OF LIABILITY .  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR (I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES; (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF CUSTOMER HARDWARE; (V) ANY CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT TO THE EXTENT THAT ANY SUCH LOSS OR DAMAGES ARISES OUT OF SUCH PARTY'S GROSS NEGLIGENCE, BAD FAITH OR WILLFUL MISCONDUCT. THE LIMITATIONS SET FORTH HEREUNDER WILL APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

9.5 Indemnification .  Customer agrees to indemnity, defend and hold harmless Compass and its officers, managers, partners, members, agents, employees, affiliates, attorneys, heirs, successors and assigns from any and all claims, demands, actions, suits, proceedings and Losses arising from or in connection with (i) any legal, regulatory or governmental action against or including Customer; (ii) the maintenance or operation of Customer Hardware; (iii) any Loss by any of Customer, Customer's officers, managers, partners, members; and (iv) any breach or nonperformance by Customer of any provision or covenants hereunder.

**10 CONFIDENTIALITY**

10.1 General .  Each party acknowledges that it and its employees or agents may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is Confidential Information of the other party. Neither party may use nor copy any Confidential Information except to the limited extent necessary to perform its obligations under this Agreement and will not disclose any Confidential Information to any person or entity other than to its employees who have a need to know the Confidential Information or as otherwise expressly permitted by this Agreement. Each party shall use the same measures that it uses to protect its own most confidential and proprietary information to protect the Confidential Information, but in no event less than commercially reasonable measures.

10.2 Return of Confidential Information .  Upon termination or expiration of this Agreement, or at any other time at the request of the other party, each party shall return to the other party, or destroy and delete, as applicable, all Confidential Information and any copies thereof in its possession or control.

10.3 Privacy .  Compass warrants and represents that, Compass shall comply with all applicable privacy laws throughout the Term, and will take all reasonable steps within Compass's power to ensure that Compass's

employees, contractors and other customers comply with all applicable privacy laws.

10.4 <u>Compass Proprietary Information</u> .  Except for the rights expressly granted herein, all rights, titles, and interests to any and all customer relationships, proprietary rights and intellectual property rights in Compass's data will remain with and be the exclusive property of Compass.

10.5 <u>Government Enquiries and Investigations</u> .  Compass may cooperate with any government or legal investigation regarding any aspect of the Hosting Service, which may include producing identifying information of Customer.

## 11 INTELLECTUAL PROPERTY

11.1 <u>Use of Trademarks</u> .  Neither party may use the other party's trademarks, service marks, trade names, copyrights, other intellectual property rights or other designations in any promotion, publication or press release without the prior written consent of the other party in each case, which consent shall not be unreasonably withheld.

## 12 INSURANCE

12.1 <u>General</u> .  The Parties agree that Compass is not an insurer and Customer Hardware is not covered by any insurance policy held by Compass. Customer will be solely responsible to insure their equipment and property against all forms of damage. If Customer does not insure the Customer Hardware or obtain any offered Premium Service from Compass, Customer will do so at Customer's sole risk.

## 13 DISPUTES

To the fullest extent permitted by law, the parties hereto (the "Parties") agree to waive their rights to seek remedies in court, including but not limited to rights to a trial by jury. The Parties agree that any dispute between or among them or their subsidiaries, affiliates or related entities arising out of, relating to or in connection with this Agreement, will be resolved in accordance with a confidential two-step dispute resolution procedure involving: (1) non-binding mediation, and (2) binding arbitration under the Federal Arbitration Act, 9 U.S.C. 1, et. seq., or state law, whichever is applicable. Any such mediation or arbitration hereunder will be under the auspices of the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules and Mediation Procedures (the "AAA Commercial Rules"). No arbitration will be initiated or take place with respect to a given dispute if the Parties have successfully achieved a mutually agreed to resolution of the dispute as a result of the step-one mediation. The arbitration (if the dispute is not resolved by mediation) will be conducted by a single AAA arbitrator, mutually selected by the Parties, as provided for by the AAA Commercial Rules. The Parties agree that the arbitrator will apply the substantive law of the State of Delaware to all state law claims and federal law to any federal law claims, that discovery will be conducted in accordance with the AAA Commercial Rules or as otherwise permitted by law as determined by the arbitrator. In accordance with the AAA Commercial Rules (a copy of which is available through AAA's website, www.adr.org), the arbitrator's award will consist of a written statement as to the disposition of each claim and the relief, if any, awarded on each claim. The Parties understand that the right to appeal or to seek modification of any ruling or award by the arbitrator is limited under state and federal law. Any award rendered by the arbitrator will be final and binding, and judgment may be entered on it in any court of competent jurisdiction. Nothing contained

herein will restrict either party from seeking temporary injunctive relief in a court of law. In the unlikely event the AAA refuses to accept jurisdiction over a dispute, the Parties agree to submit to Judicial-Arbitration-Mediation Services ("JAMS") mediation and arbitration applying the JAMS equivalent of the AAA Commercial Rules. If AAA and JAMS refuse to accept jurisdiction, the Parties may litigate in a court of competent jurisdiction.

## 14 DEFINITIONS

14.1  "Commencement Date" means the date on which the Customer Hardware is scheduled to commence mining operations and as set forth in the Service Order.

14.2  "Confidential Information" refers to confidential or proprietary information of a party including, without limitation, business plans, strategies, forecasts and projections and information about business structures, operations, systems, finances, assets, investments, investment strategies, software and other technology systems, and personnel, customers and suppliers. Confidential Information does not include if it (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently developed by the receiving party.

14.3  "Customer Hardware" refers to the cryptocurrency mining hardware belonging to the Customer and specified in the Order Summary Page.

14.4  "Force Majeure Event" means a failure by the other party to perform any of its obligations under this Agreement, if such failure is caused by events or circumstances beyond its reasonable control, including, without limitation, acts of God, war, labor strike, terrorist act, fire, flood, earthquake, landslide, hurricane, typhoon, tsunami, volcanic eruption, inclement weather, health epidemic or any law, order, regulation, seizure or other action of any governing authority or agency. Notwithstanding the foregoing, in the event of such an occurrence, each party agrees to make a good faith effort to perform its obligations hereunder

14.5  "Hosting Facility" or "Hosting Partner" means a data center owned, leased, operated or reserved by Compass or Compass partners through the Site.

14.6  "Hosting Service" has the meaning ascribed to it in Section 1.1.

14.7  "Losses" means all damages, judgments, liabilities, losses and expenses, including without limitation, attorney's fees.

14.8  "Mining Rewards" means the digital asset, cryptocurrency, virtual currency, digital currency, or digital commodity (e.g., Bitcoin and Ethereum) produced by the proof-of-work cryptographic protocol of a computer network and generated by Customer's use of Customer Hardware.

14.9  "Projected Hosting Service Fee" means the total projected monthly fees for the upcoming month for use of the Service.

14.10  "Service Level" has the meaning ascribed to it in Section 1.2.

**15 GENERAL PROVISIONS**

15.1 <u>Captions and Section Headings</u> .  Captions and section headings are for convenience only, are not a part of this Agreement and may not be used in construing it.

15.2 <u>Entire Agreement</u> .  This Agreement, including any Service Order(s), certificate, schedule, exhibit or other document delivered pursuant to its terms, constitutes the entire agreement between the parties and supersedes any other agreement, whether oral or written, with respect to the subject matter hereof. There are no verbal agreements, representations, warranties, undertakings or agreements between the parties, and this Agreement may not be amended or modified in any respect, except by a written instrument signed by the parties to this Agreement. ANY WARRANTIES, TERMS, AND/OR CONDITIONS IN ANY PURCHASE AGREEMENTS, INVOICES, CREDIT APPLICATIONS, PURCHASE ORDERS, AND THE LIKE, OR ANY OTHER DOCUMENTS BETWEEN COMPASS AND CUSTOMER THAT CONFLICT WITH THE TERMS AND CONDITIONS SET FORTH HEREIN ARE GOVERNED BY THE TERMS HEREIN. Compass may at any time revise the terms of this Agreement by updating these terms and by providing notice to Customer of that change.

15.3 <u>Force Majeure</u> .  Neither party will be responsible nor in any way liable for any delays or failures in performance, except for payment of the Hosting Service Fee under this Agreement, arising out of or relating to a Force Majeure Event.

15.4 <u>Governing Law</u> .  This Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware. The jurisdiction is exclusively to the courts within the State of Delaware.

15.5 <u>Injunctive Relief</u> .  The parties acknowledge that the Confidentiality provision of this Agreement is reasonable in scope and duration and are not unduly restrictive. Customer further acknowledge that a breach of any of confidentiality obligation of this Agreement will render irreparable harm to Compass, and that a remedy at law for breach of the Agreement is inadequate, and that Compass shall therefore be entitled to seek any and all equitable relief, including, but not limited to, temporary and permanent injunctive relief, without the necessity of posting a bond, and to any other remedy that may be available under any applicable law or agreement between the parties. Customer acknowledges and agrees that an award of damages to Compass does not preclude a court from ordering injunctive relief. Both damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies.

15.6 <u>No Assignment</u> .  Customer will not assign or otherwise transfer this Agreement or any of the Customer's rights and obligations under this Agreement, without the prior written consent of Compass, which may be

unreasonably withheld. Any assignment or transfer in violation of this Section will be void. Compass may assign this Agreement without the Customer's consent (i) in connection with a merger, acquisition or sale of all or substantially all of our assets, or (ii) to any affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee is deemed substituted for Compass as a party to this Agreement and Compass is fully released from all of its obligations and duties to perform under this Agreement. Subject to the foregoing, this Agreement will be binding upon, and inure to the benefit of the parties and their respective permitted successors and assigns. The Customer may not merge this Agreement with any other agreements with Compass it may be party to.

15.7 <u>Notice</u> .  Notice is effective when received.All notices, requests, demands and other communications under this Agreement must be in writing and will be deemed duly given, unless otherwise expressly indicated to the contrary in this Agreement, (i) when personally delivered, (ii) upon receipt of a telephonic facsimile transmission with a confirmed telephonic transmission answer back, (iii) three (3) days after having been deposited in the United States mail, certified or registered, return receipt requested, postage prepaid, (iv) one (1) business day after having been dispatched by a nationally recognized overnight courier service, or (v) on the date transmitted if by email, addressed to the parties or their permitted assigns at such address or number as is given in writing by either party to the other.

15.8 <u>Relationship of the Parties</u> .  Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the parties. Neither party has the power or authority as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever without the other's prior written consent.

15.9 <u>Survival</u> .  Any provision of this Agreement, which, by its nature, would survive termination or expiration of this Agreement, will survive any such termination or expiration, including, without limitation, those provisions concerning confidentiality, indemnification, and limitation of liability. In the event of Compass's insolvency, cessation of operations, or filing for bankruptcy, Compass shall make good faith efforts, as directed by Customer, to either secure transition of Customer's Hosting Service to the Hosting Facility or return the Customer Hardware to the Customer at Customer's sole expense.

15.2 <u>Notice</u> .  Except where expressly provided in this Agreement, all notices, consents, or approvals required by this Agreement will only be in writing and sent by overnight courier, certified or registered mail, overnight delivery requiring a signature upon receipt, email, or delivery by hand to the parties at the respective addresses set forth on the first page of this Agreement. Notice is effective when received.

15.3 <u>Entire Agreement</u> .  This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement, and supersedes and replaces all prior or contemporaneous discussions, negotiations, proposals, understandings, and agreements, written or oral, as well as any industry custom. Each party acknowledges that, in entering into this Agreement, it has not relied on, and shall have no right or remedy in respect of, any statement, representation,

assurance or warranty other than as expressly set out in this Agreement. Compass may at any time revise the terms of this Agreement by updating these terms and by providing notice to Customer of that change.

15.4 <u>Survival</u> .  Any provision of this Agreement, which, by its nature, would survive termination or expiration of this Agreement, will survive any such termination or expiration, including, without limitation, those provisions concerning confidentiality, indemnification, and limitation of liability. In the event of Compass's insolvency, cessation of operations, or filing for bankruptcy, Compass shall make good faith efforts, as directed by Customer, to either secure transition of Customer's Hosting Service to the Hosting Facility or return the Customer Hardware to the Customer at Customer's sole expense.

15.5 <u>Subcontracting and Assignment</u> .  Neither party may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder without prior written consent of the other party. Any assignment or transfer in violation of this Agreement is void. Notwithstanding the foregoing, Compass may assign or transfer its rights and obligations hereunder to any contractual service provider or data center who is in the business of cryptocurrency mining hosting services and capable of provision of the Hosting Service hereunder. Further, either party may assign or transfer its rights or obligations hereunder if such transfer occurs by operation of law under a bona fide merger, divestiture, consolidation, or reorganization, or to any purchaser of all or substantially all of the assets of the business of the assigning party, provided the assignee is bound by this Agreement, is financially able to complete its obligations, and is not a direct competitor of the non-assigning party. This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.

15.6 <u>Injunctive Relief</u> .  The parties acknowledge that the Confidentiality provision of this Agreement is reasonable in scope and duration and are not unduly restrictive. Customer further acknowledge that a breach of any of confidentiality obligation of this Agreement will render irreparable harm to Compass, and that a remedy at law for breach of the Agreement is inadequate, and that Compass shall therefore be entitled to seek any and all equitable relief, including, but not limited to, temporary and permanent injunctive relief, without the necessity of posting a bond, and to any other remedy that may be available under any applicable law or agreement between the parties. Customer acknowledges and agrees that an award of damages to Compass does not preclude a court from ordering injunctive relief. Both damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies.

15.7 <u>Relationship of the Parties</u> .  The parties are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the parties. Neither party has the power or authority as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever without the other's prior written consent.

15.8 <u>Force Majeure</u> .  Neither party will be responsible nor in any way liable for any delays or failures in performance, except for payment of the Hosting Service Fee under this Agreement, arising out of or relating to a Force Majeure Event.

15.9 <u>Governing Law</u> .  This Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State

of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware. The jurisdiction is exclusively to the courts within the State of Delaware.

15.10 <u>General</u> .  The rights and remedies provided for herein are cumulative and not exclusive of any rights or remedies that a party would otherwise have. There are no third-party beneficiaries to this Agreement. No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving party.

**Compass Hardware Purchase Agreement**

Last Updated: August 2, 2021

This Compass Hardware Purchase Agreement (this "Agreement") contains the terms and conditions that govern your purchase of Mining Hardware (as defined below) through Compassmining.io (the "Site") and is an agreement between Compass Mining Inc. ("Compass," "we," "us," or "our") and you or the entity you represent ("Customer," "you," or "your"). This Agreement takes effect when you click an "I Accept" button or checkbox presented with these terms or otherwise sign this Agreement (the "Effective Date"). Customer represents to Compass that Customer is lawfully able to enter into contracts (e.g., Customer is not a minor). If Customer is entering into this Agreement for an entity, Customer represents to Compass that Customer has legal authority to bind that entity. Please see Section 9 for definitions of certain capitalized terms used in this Agreement.

## 1  SALE OF HARDWARE

1.1 <u>Order of Hardware</u> .  The Customer shall place Order through Site or through other methods accepted by Compass, and such Order shall constitute an irrevocable offer to purchase specific Hardware from either Compass or a Third-Party Seller as such Hardware and seller is specified in the Purchase Order. Each Purchase Order shall be subject to the terms of this Agreement, which will be incorporated therein by reference. In the event of any conflict between the express terms of a Purchase Order and the terms of this Agreement, the express terms of the Purchase Order shall prevail with respect to that Purchase Order only.

1.2 <u>Payment and Delivery</u> .   The Customer shall make payment in accordance with the terms specified in Section 2. Compass shall also provide for the delivery to the Delivery Point.

## 2 PAYMENT TERMS AND TAXES

2.1 <u>Purchase Price</u> .   Customer will pay Compass the Purchase Price. The Customer must pay the entire balance of the Purchase Price prior to the Hardware transferring title to the Customer. If the manufacturer of the Hardware issues any coupons for the Hardware, Compass will pass coupons directly onto the Customer by applying any discount from the coupon to Purchase Price. Customer shall be responsible for all state sales and use tax.

2.2 <u>Payment</u> .   Customer shall pay the Purchase Price in USD or USDT during the checkout process or according to the Purchase

Order. In the event that the Customer fails to satisfy full payment in the amount of the Purchase Price within four (4) Business Days of checkout or date of the Purchase order, Compass is under no obligation to reserve the Hardware for the Customer and will be able to freely sell the Hardware to another party. If Compass is unable to deliver the Hardware for any reason, Compass will return the entire Purchase Price to Customer. Under no circumstance will any billing error affect the Customer's obligation to pay the Purchase Price to Compass. Customer expressly authorizes to place and, upon payment in full of the Purchase Price, pay for such order. EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, CUSTOMER ACKNOWLEDGES THAT COMPASS IS NOT REQUIRED TO PROVIDE A REFUND FOR ANY REASON.

2.3 <u>Operation and Start Date</u>    Compass shall make commercially reasonable efforts to commence operation of Customer Hardware on the scheduled Hosting Service commencement date reflected in the Order Summary Page if purchased online, or contained in the Service Order below; provided however, that Compass shall not be responsible for any delay in operation of Customer Hardware for any reason, including delay in receipt of Customer Hardware, Force Majeure Events, lack of available rackspace, or electrical or network connectivity problems.

## 3  DELIVERY

3.1 <u>Shipment</u> .    Shipment shall be DDP (Delivered duties paid). Customer agrees that the Delivery Date is an estimate only and may be changed. Compass will use commercially reasonable efforts to cause the Hardware to be shipped in accordance with the Delivery Dates. However, Compass shall not be liable for failure to ship the Hardware as estimated. Notwithstanding the foregoing, if the Hardware is not delivered within 60 days of the last Scheduled Delivery Date, Compass will work to obtain compensation on behalf of the Customer. Compass shall not be responsible for any delivery delay caused by the Customer, Manufacturer, or any third party, including but not limited to the carrier, the customs, and the import brokers, nor shall it be liable for damages, whether direct, indirect, incidental, consequential, or otherwise, for any failure, delay or error in delivery of the Hardware for any reason whatsoever.

3.2 <u>Delivery Point</u> .  If Customer fails to provide Compass with the delivery place or the delivery place provided by Customer is a false address or does not exist, or the Purchaser reject to accept the Hardware, any related costs incurred (including storage costs, warehousing charge and labor costs) shall be borne by the Customer. Compass may issue the Customer a notice of self-pick-up and ask the Customer to pick up the Hardware itself. Compass shall be deemed to have completed the delivery obligation under this Agreement after two (2) business days following the issue of the self-pick- up notice. After 30 days of the self-pick-up notice, Compass shall be entitled to deal with the Hardware in any manner as it deems appropriate.

3.3 <u>Cancellation or Modification</u> .  Customer may not modify, terminate, cancel or otherwise alter orders, or defer shipment, after acceptance of the order from Compass without the written consent of Compass, which may be withheld or conditioned in Compass's sole discretion.

**4 TERM AND TERMINATION**

4.1 <u>Term</u> .  This Agreement will be effective upon the Customer's initiation of payment during the checkout process.

4.2 <u>Termination</u> .  This Agreement shall remain effective up to and until the delivery of the last Hardware.

**5 REPRESENTATIONS AND WARRANTIES**

5.1 <u>Authority and Capacity</u> .  Each party represents, warrants, and covenants that (i) it has full legal capacity, right, power and authority to execute and perform its obligations under this Agreement; and (ii) its performance of obligations hereunder will not violate any applicable laws or require the consent of any third party.

5.2 <u>Title to Customer Hardware and Receipt of Mining Rewards</u> . Customer represent, warrant and covenant that (i) Customer has clear title, free and clear of all security interests or liens, to Customer Hardware, including the legal right to use, operate and locate the Customer Hardware; and (ii) its receipt of Mining Rewards will not violate any applicable laws or require the consent of any third party.

5.3 <u>Accuracy of Customer Information</u> .  Customer represents and warrants that: (i) the information Customer has provided for the purpose of establishing an account with Compass is true, accurate, current and complete; and (ii) Customer will maintain and promptly amend all information and material to keep it true, accurate, current and complete.

5.4 <u>Export Regulations</u> .  Each Party acknowledges that certain Hardware purchased by Compass on behalf of Customer hereunder and any related documentation and other technology of the Manufacturer of the Hardware may be subject to application export control and sanction laws, regulations, and orders. Each Party certifies, represents, and warrants that it is in compliance and shall take all necessary acts to remain in compliance with all applicable export and re-export control laws and regulations, including, without limitation, the Export Administration Regulations maintained by the U.S. Department of Commerce, trade and economic sanctions and regulations maintained by OFAC (defined below), and the International Traffic in Arms Regulations maintained by the U.S. Department of State. Each Party hereby agrees to defend, indemnify and hold the other Party harmless from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification.

5.5 <u>FCPA; Anti-Bribery</u> .  In carrying out its responsibilities hereunder, each Party represents that it shall comply with all applicable anti-bribery laws including, but not limited to, the U.S. Foreign Corrupt

Practices Act, as revised **("FCPA")** , and the Organization for Economic Cooperation and Development Anti-Bribery Convention, as implemented in the territory. Each Party represents that it understands that the FCPA generally prohibits the promise, payment or giving of anything of value either directly or indirectly to any government official for the purpose of obtaining or retaining business or any improper advantage. For purposes of this section, "government official" means any official, officer, representative, or employee of any non-U.S. government department, agency or instrumentality (including any government-owned or controlled commercial enterprise), or any official of a public international organization or political party or candidate for political office. Each Party represents and warrants unto itself that, in the performance of this Agreement, (i) neither it nor any of its representatives are governmental employees or officials or candidates for political office and it will advise the other Party of any change in such representation; (ii) it and its representatives have not and will not make, offer, or agree to offer anything of value to any government official, political party, or candidate for office; (iii) it will comply with all provisions of the FCPA and the regulations thereunder as amended from time to time; and (iv) it agrees to indemnify, defend, and hold the other Party harmless for damages and expenses resulting from a violation of the foregoing by itself or its representatives.

5.5 <u>OFAC</u> .  Pursuant to United States Presidential Executive Order 13224 ("Executive Order"), each Party may be required to ensure that it does not transact business with persons or entities determined to have committed, or to pose a risk of committing or supporting, terrorist acts and those identified on the list of Specially Designated Nationals and Blocked Persons ("List") generated by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury. The names or aliases of these persons or entities ("Blocked Persons") are updated from time to time. Each Party certifies, represents and warrants that: (a) it is not acting, directly or indirectly, for or on behalf of any person, group, entity or nation named by any Executive Order of the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person" or any other banned or blocked person, entity, nation or transaction pursuant to any Law that is enforced or administered by the OFAC; and (b) it is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation. Each Party hereby agrees to defend, indemnify and hold the other Party harmless from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification.

## 6 LIMITATIONS OF LIABILITY

6.1 <u>Force Majeure</u> .  Compass shall not be liable (beyond return of the entire Purchase Price) for any loss, damage, delays, changes in

shipment schedules or failure to deliver caused by any event beyond its control, including, without limitation, accident, fire, actual or threatened strike or riot, explosion, mechanical breakdown (including technological or information systems), plant shutdown, unavailability of or interference with necessary transportation, any raw material or power shortage, acts of God or public enemy, or any other cause or contingency beyond Compass's direct control. The time for performance shall be extended for a period equivalent to the delay. If, by reason of any of the foregoing events, Compass's supply of the Hardware shall be insufficient to meet all requirements, including its own, Compass shall have the right, at its option, and without liability, to allocate its available supply of Hardware among its present and future customers in such a manner as Compass deems equitable so long as Customer receives a return of a portion of the Purchase Price for any Hardware not delivered. If by reason of any of the foregoing events, the cost of the Hardware exceeds the Purchase Price, Compass shall have the right, at its option, to terminate such transaction without liability to Compass; provided that upon termination, Compass shall refund the entire Purchase Price to Customer.

6.2 <u>WARRANTY DISCLAIMER</u> .  Compass represents and warrants that (i) the Hardware shall be in good working order when the same is delivered to the Customer and (ii) Compass and/or the seller of the Hardware is able to deliver good and marketable title to the Hardware to the Customer and (iii) the seller of the Hardware is reputable and has not used the Hardware for any illegal, dishonest or nefarious purpose. Except as provided above, Customer hereby acknowledges and agrees that Compass makes no additional representation or warranty with respect to the condition of the Hardware. COMPASS EXPRESSLY DISCLAIMS ALL AND MAKES NO WARRANTIES WITH RESPECT TO ANY HARDWARE AND/OR SERVICES PROVIDED HEREUNDER, EXCEPT AS PROVIDED HEREIN, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED OR OTHER WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT..

6.3 <u>Limitation of Actions</u> .  EXCEPT IN THE EVENT OF FRAUD, NEGLIGENCE, WILLFUL MISCONDUCT OR THE BREACH OF A REPRESENTATION OR WARRANTY IN THIS AGREEMENT, NEITHER PARTY WILL HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL, MULTIPLIED, PUNITIVE, SPECIAL, OR EXEMPLARY DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO AGREEMENT, EVEN IF A PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES ACKNOWLEDGE THAT THESE EXCLUSIONS OF POTENTIAL DAMAGES WERE AN

ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THIS AGREEMENT.

6.4 <u>Inspection and Returns</u> .  The Hardware is covered under warranty by the Manufacturer. The Customer shall return or undergo the warranty process with the Manufacturer at Customer's sole expense, and follow such Manufacturer's return/replacement policy with respect to any such defective Hardware. Customer acknowledges and agrees that, in the event Customer seeks any type of refund, replacement, and/or the like, Customer shall seek such refund, replacement, and/or the like directly from the Manufacturer. Compass shall not be under any obligation to replace/return the defective Hardware or deal with Manufacturer with respect to any such defective Hardware except to the extent Compass has not delivered the Hardware in compliance with Section 5.3 above.

6.5 <u>Idemnification</u> .  Both parties covenant and agree to indemnify and hold harmless the other and its members, officers, employees and agents from any and all costs, expenses, losses, damages and liabilities incurred or suffered, directly or indirectly, by any of them (including, without limitation, reasonable legal fees and costs) resulting from or attributable to (a) the breach of, or misstatement in, any one or more of the representations, warranties, obligations or covenants of Customer made in or pursuant to this Agreement; (b) the failure by Customer to pay any and all shipping costs, applicable taxes, customs, duties, tariffs, and the like arising from the transactions set forth in this the Agreement, (c) any act or omission of the indemnifying party, or (d) ownership or operation of the Hardware by Customer.

## 7 CONFIDENTIALITY

7.1 <u>General</u> .  Each party acknowledges that it and its employees or agents may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is Confidential Information of the other party. Neither party may use nor copy any Confidential Information except to the limited extent necessary to perform its obligations under this Agreement and will not disclose any Confidential Information to any person or entity other than to its employees who have a need to know the Confidential Information or as otherwise expressly permitted by this Agreement. Each party shall use the same measures that it uses to protect its own most confidential and proprietary information to protect the Confidential Information, but in no event less than commercially reasonable measures.

7.2 <u>Return of Confidential Information</u> .  Upon termination or expiration of this Agreement, or at any other time at the request of the other party, each party shall return to the other party, or destroy and delete, as applicable, all Confidential Information and any copies thereof in its possession or control.

7.3 <u>Privacy</u> .  Compass warrants and represents that, Compass shall comply with all applicable privacy laws throughout the Term, and will

take all reasonable steps within Compass's power to ensure that Compass's employees, contractors and other customers comply with all applicable privacy laws.

7.4 <u>Compass Proprietary Information</u> .  Except for the rights expressly granted herein, all rights, titles, and interests to any and all customer relationships, proprietary rights and intellectual property rights in Compass's data will remain with and be the exclusive property of Compass.

7.5 <u>Government Inquiries and Investigations</u> .  Compass may cooperate with any government or legal investigation regarding any aspect of the Hosting Service, which may include producing identifying information of Customer.

**8 DISPUTES**

To the fullest extent permitted by law, the parties hereto (the "Parties") agree to waive their rights to seek remedies in court, including but not limited to rights to a trial by jury. The Parties agree that any dispute between or among them or their subsidiaries, affiliates or related entities arising out of, relating to or in connection with this Agreement, will be resolved in accordance with a confidential two-step dispute resolution procedure involving: (1) non-binding mediation, and (2) binding arbitration under the Federal Arbitration Act, 9 U.S.C. 1, et. seq., or state law, whichever is applicable. Any such mediation or arbitration hereunder will be under the auspices of the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules and Mediation Procedures (the "AAA Commercial Rules"). No arbitration will be initiated or take place with respect to a given dispute if the Parties have successfully achieved a mutually agreed to resolution of the dispute as a result of the step-one mediation. The arbitration (if the dispute is not resolved by mediation) will be conducted by a single AAA arbitrator, mutually selected by the Parties, as provided for by the AAA Commercial Rules. The Parties agree that the arbitrator will apply the substantive law of the State of Delaware to all state law claims and federal law to any federal law claims, that discovery will be conducted in accordance with the AAA Commercial Rules or as otherwise permitted by law as determined by the arbitrator. In accordance with the AAA Commercial Rules (a copy of which is available through AAA's website, www.adr.org), the arbitrator's award will consist of a written statement as to the disposition of each claim and the relief, if any, awarded on each claim. The Parties understand that the right to appeal or to seek modification of any ruling or award by the arbitrator is limited under state and federal law. Any award rendered by the arbitrator will be final and binding, and judgment may be entered on it in any court of competent jurisdiction. Nothing contained herein will restrict either party from seeking temporary injunctive relief in a court of law. In the unlikely event the AAA refuses to accept jurisdiction over a dispute, the Parties agree to submit to Judicial-Arbitration-Mediation Services ("JAMS") mediation and arbitration applying the JAMS equivalent of the AAA

Commercial Rules. If AAA and JAMS refuse to accept jurisdiction, the Parties may litigate in a court of competent jurisdiction.

## 9 DEFINITIONS

9.1  "Confidential Information" refers to confidential or proprietary information of a party including, without limitation, business plans, strategies, forecasts and projections and information about business structures, operations, systems, finances, assets, investments, investment strategies, software and other technology systems, and personnel, customers and suppliers. Confidential Information does not include if it (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently developed by the receiving party.

9.2  "Delivery Date" refers to the date at which the Hardware is scheduled to be delivered to the Customer or the hosting location that the Customer instructs Compass to arrange the Hardware to be shipped.

9.3  "Force Majeure Event" means a failure by the other party to perform any of its obligations under this Agreement, if such failure is caused by events or circumstances beyond its reasonable control, including, without limitation, acts of God, war, labor strike, terrorist act, fire, flood, earthquake, landslide, hurricane, typhoon, tsunami, volcanic eruption, inclement weather, health epidemic or any law, order, regulation, seizure or other action of any governing authority or agency. Notwithstanding the foregoing, in the event of such an occurrence, each party agrees to make a good faith effort to perform its obligations hereunder

9.4  "Hardware" refers to the cryptocurrency mining hardware belonging to the Customer and specified in the Order Summary Page.

9.5  "Hosting Facility" or "Hosting Partner" means a data center owned, leased, operated or reserved by Compass or Compass partners through the Site.

9.6  "Losses" means all damages, judgments, liabilities, losses and expenses, including without limitation, attorney's fees.

9.7  "Manufacturer" means the party that created the Equipment as reflected in the Purchase Order.

9.8  "Purchase Order" means a written purchase order issued by Compass to the Customer for the Customer Hardware.

9.9  "Purchase Price" means the total Hardware purchase price, import duties, tariffs, duties and insurance) for the Hardware as reflected in the Purchase Order.

## 10 GENERAL PROVISIONS

10.1 <u>Captions and Section Headings</u> .  Captions and section headings are for convenience only, are not a part of this Agreement and may not be used in construing it.

10.2 <u>Entire Agreement</u> .  This Agreement, including any Purchase Order(s) certificate, schedule, exhibit or other document delivered pursuant to its terms, constitutes the entire agreement between the parties and supersedes any other agreement, whether oral or written, with respect to the subject matter hereof. There are no verbal agreements, representations, warranties, undertakings or agreements between the parties, and this Agreement may not be amended or modified in any respect, except by a written instrument signed by the parties to this Agreement. ANY WARRANTIES, TERMS, AND/OR CONDITIONS IN ANY PURCHASE AGREEMENTS, INVOICES, CREDIT APPLICATIONS, PURCHASE ORDERS, AND THE LIKE, OR ANY OTHER DOCUMENTS BETWEEN COMPASS AND CUSTOMER THAT CONFLICT WITH THE TERMS AND CONDITIONS SET FORTH HEREIN ARE GOVERNED BY THE TERMS HEREIN. Compass may at any time revise the terms of this Agreement by updating these terms and by providing notice to Customer of that change.

10.3 <u>Force Majeure</u> .  Neither party will be responsible nor in any way liable for any delays or failures in performance, except for payment of the Purchase Price.

10.4 <u>Governing Law</u> .  This Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware. The jurisdiction is exclusively to the courts within the State of Delaware.

10.5 <u>Injunctive Relief</u> .  The parties acknowledge that the Confidentiality provision of this Agreement is reasonable in scope and duration and are not unduly restrictive. Customer further acknowledge that a breach of any of confidentiality obligation of this Agreement will render irreparable harm to Compass, and that a remedy at law for breach of the Agreement is inadequate, and that Compass shall therefore be entitled to seek any and all equitable relief, including, but not limited to, temporary and permanent injunctive relief, without the necessity of posting a bond, and to any other remedy that may be available under any applicable law or agreement between the parties. Customer acknowledges and agrees that an award of damages to Compass does not preclude a court from ordering injunctive relief. Both damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies.

10.6 <u>No Assignment</u> .  Customer will not assign or otherwise transfer this Agreement or any of the Customer's rights and obligations under this Agreement, without the prior written consent of Compass, which may be unreasonably withheld. Any assignment or transfer in violation

of this Section will be void. Compass may assign this Agreement without the Customer's consent (i) in connection with a merger, acquisition or sale of all or substantially all of our assets, or (ii) to any affiliate or as part of a corporate reorganization; and effective upon such assignment, the assignee is deemed substituted for Compass as a party to this Agreement and Compass is fully released from all of its obligations and duties to perform under this Agreement. Subject to the foregoing, this Agreement will be binding upon, and inure to the benefit of the parties and their respective permitted successors and assigns. The Customer may not merge this Agreement with any other agreements with Compass it may be party to.

10.7 <u>Notice</u> .  All notices, requests, demands and other communications under this Agreement must be in writing and will be deemed duly given, unless otherwise expressly indicated to the contrary in this Agreement, (i) when personally delivered, (ii) upon receipt of a telephonic facsimile transmission with a confirmed telephonic transmission answer back, (iii) three (3) days after having been deposited in the United States mail, certified or registered, return receipt requested, postage prepaid, (iv) one (1) business day after having been dispatched by a nationally recognized overnight courier service, or (v) on the date transmitted if by email, addressed to the parties or their permitted assigns at such address or number as is given in writing by either party to the other.

10.8 <u>Relationship of the Parties</u> .  Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the parties.  Neither party has the power or authority as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever without the other's prior written consent.

10.9 <u>Survival</u> .  Any provision of this Agreement, which, by its nature, would survive termination or expiration of this Agreement, will survive any such termination or expiration, including, without limitation, those provisions concerning confidentiality, indemnification, and limitation of liability.

10.10 <u>Waivers</u> .  Any failure by any of the parties to comply with any of the obligations, agreements or conditions set forth in this Agreement may be waived by the other party or parties, but any such waiver will not be deemed a waiver of any other obligation, agreement or condition contained herein.

10.11 <u>Liquidated Damages Not Penalty</u> .  t is expressly agreed that any liquidated damages payable under this Agreement do not constitute a penalty and that the Parties, having negotiated in good faith for such specific liquidated damages and having agreed that the amount of such liquidated damages is reasonable in light of the anticipated harm caused by the breach related thereto and the difficulties of proof of loss and inconvenience or non-feasibility of

obtaining any adequate remedy, are estopped from contesting the validity or enforceability of such liquidated damages.

10.12 <u>No Restrictions Against Compass</u> .  Customer hereby acknowledges and agrees that Compass may sell any inventory, equipment, machinery, or other products, not specified in Purchase Order hereto to any party pursuant to any terms and conditions agreed to by Compass and nothing in this Agreement shall restrict Customer from the same.

**ANNEX A**
**VIP BUNDLE - EQUIPMENT PURCHASE AGREEMENT**
**SUPPLEMENT FOR BITMAIN S19J ORDERS**

THE EQUIPMENT PURCHASE AGREEMENT SUPPLEMENT FOR BITMAIN S19J Orders (this " ***Supplement*** ") applies solely with respect to any Hardware Purchase Agreements for the purchase of S19J 90 TH, 3100 W mining machines manufactured by and procured from Bitmain Technologies Limited (" ***Manufacturer*** ") as part of Compass Mining's "VIP Bundle" offering.  The terms not otherwise defined herein shall have the meaning ascribed to them in the Hardware Purchase Agreement between Parties.

1. <u>Product Type</u> .

| Type | VIP Bundle Detail |
|---|---|
| Manufacturer | Bitmain Technologies Limited |
| | Super Computing Server, S19j Pro |
| Rated Hashrate / Unit | ~90TH/s |
| Rated Power / Unit | ~3100W |

| | |
|---|---|
| J/T@25 ℃ environment temperature | ~34.4 |

| | |
|---|---|
| Description | 1. Error range of "J/T@25 ℃ environment temperature" does not exceed 10%. |
| | 2. "Rated Hashrate / Unit" and "Rated Power / Unit" are for reference only and may differ from each batch or unit. Manufacturer and Compass make no representation on "Rated Hashrate / Unit" and "Rated Power / Unit." |
| | 3. Purchaser shall not reject the Products on the grounds that the actual parameters of the delivered Products are not inconsistent with the reference indicators. |

2. <u>Payment Conditions</u> .  Purchaser shall pay 30% of the Total Purchase Price as a non-refundable deposit to Compass and the remaining being settled by monthly payments of 1/12 due thereafter (" ***Monthly Installment Payment*** ").  In the event that Purchaser shall fail to satisfy any Monthly Installment Payment, Purchaser shall be deemed to have waived all rights to future deliveries for the Purchased Mining Hardware and any deposits paid to the Company.

3. <u>Quantity Adjustment Due to Hashrate Efficiency Increase</u> .  In the event of the improved efficiency Products during the course of its production cycle, Manufacturer, reserves the right to adjust and reduce the total quantity of Products delivered to Compass provided that the total hashrate of the Products shall not be less than that ordered pursuant to the Agreement and this Supplement.  Customer waives any and all claims in the event of any such reduction of delivered Hardware, provided that the total hashrate of Products delivered are not lower than that of the hashrate specified in the Customer's order.

4. <u>Quantity and Product Adjustment Due to J/T Value Efficiency Increase</u> . In the event that Manufacturer publishes any new type of products with less J/T value and suspends the production of the type of the Product ordered by Purchaser under this Agreement, Compass shall be released itself from any future obligation to deliver any subsequent Products by and instead deliver new types of Products, the total rated hashrate of which shall be no less than

such subsequent Products canceled under this Agreement and Supplement, and the price of which shall be adjusted in accordance with the J/T value. In the event that the Purchaser refuses in writing to accept new types of Products, Purchaser is entitled to request cancel the remaining delivery of Products, provided that such cancellation is in writing and within ten (10) business days of notice by Compass of such adjustment by Manufacturer.