Alan E. Engle (SBN 224779)
alan.engle@meenlegal.com
MEADOR & ENGLE
1115 Seal Way
Seal Beach, CA 90740
Telephone: (310) 428-6985
Facsimile: (714) 386-5368

Attorneys for Plaintiff VERIBI, LLC,

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs<br><br>COMPASS MINING INC., a Delaware corporation,<br><br>Defendant. | Case No.: 2:22-cv-4537-PVC<br><br>Hon. Pedro V. Castillo<br><br>**VERIBI'S OPPOSITION TO COMPASS MINING'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing: September 13, 2022<br>Time: 10:00 a.m.<br>Courtroom 590 |

# TABLE OF CONTENTS

**I. INTRODUCTION** ...................................................................................................2

**II. FACTS AND RELEVANT BACKGROUND** .................................................3

**III. LEGAL ARGUMENT** ......................................................................................5

    **A. No Contract to Arbitrate was Formed Between the Parties** ..................5

    **B. Paying Compass' Invoices Did Not Create an Agreement to Arbitrate** ...............................................................................................................7

    **C. Compass' Website Terms and Conditions** ................................................10

**III. CONCLUSION** ................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                                           **Page**

*AT&T Technologies, Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ................................................................................. 6

*Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849 (9th Cir. 2022) .......... 5

*C9 Ventures v. SVC-W., L.P.*, 202 Cal.App.4th 1483 (2012) ...................... 10

*Card v. Wells Fargo Bank, N.A., 2020 WL 1244859*
    (D. Or. Mar. 16, 2020) .............................................................................. 6

*Comer v. Micor, Inc.,* 436 F.3d 1098 (9th Cir. 2006) .................................... 5

*Long v. Provide Com., Inc.*, 245 Cal.App.4th 855 (2016) ............................. 9

*Newton v. Am. Debt Servs., Inc.*, 854 F.Supp.2d 712 (N.D. Cal. 2012) ......... 6

*Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ...5, 9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .................... 5

*Sellers v. JustAnswer, LLC,* 73 Cal.App.5th 444 (2021) ............................ 2, 6

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
    999 F.3d 828 (2d Cir. 2021) .................................................................. 10

*Wilson v. Huuuge, Inc.,* 944 F.3d 1212 (9th Cir. 2019) ................................. 9

**STATUTES**

9 U.S.C. § 1 ....................................................................................................... 5
9 U.S.C. § 4 ....................................................................................................... 3

**OTHER AUTHORITIES**

Rutter Group, Cal. Prac. Guide Alt. Disp. Res. Ch. 5-G, 5:325 ...................... 8
Witkin, Summary of California Law 11th, Contracts § 121 (2022) ............... 9
Witkin, Summary of California Law 11th, Contracts § 833 (2022) ............... 5

# MEMORANDUM IN OPPOSTION TO MOTION
# TO COMPEL ARBITRATION

## I.    INTRODUCTION

As detailed at length in the Declaration of John Vanhara, the owner of Veribi, LLC, Veribi has never entered into an agreement to arbitrate with Compass Mining. This conclusion holds despite Compass' claim that somewhere at a time potentially relevant to some of the claims of this case, Compass drafted and potentially hosted a version of a "Master Hosting Service Agreement" with an arbitration provision. To the extent Compass drafted and presented any such Agreement prior to May 2022, which is itself doubtful (see Decl. of John Vanahara at ¶¶ 15-20), Veribi was not aware of and did not accept or adopt any such Agreement. No agreements were entered into between Veribi and Compass other than those formed by what the parties actually proposed, negotiated over, agreed to, and performed.

Compass alleges that the facts are such that an enforceable browsewrap, clickwrap, and/or scrollwrap agreement was created between the parties and, for at least some relevant transactions, such an "agreement" included an agreement to arbitrate disputes. *See Sellers v. JustAnswer, LLC*, 73 Cal.App.5th 444, 463 (2021) (discussing different types of online contracts). However, the facts detailed in the Declaration of John Vanhara establish that none of the potential types of online "wrap" agreements was ever formed between the parties. To the extent the facts discussed by Compass could potentially create such an agreement, they are not facts concerning Compass' transactions with Mr. Vanahara, who never ordered bitcoin miners hosted in Russia, the subject of this dispute, via Compass' website.

As Mr. Vanhara's Declaration and the actual correspondence between the parties' indicates, their contracts were created and ratified the old-fashioned

way, through offer, negotiation, acceptance, and performance, not through allusion to unknown agreements sequestered in an undisclosed location. While a case concerning ASIC bitcoin mining servers hosted in Siberia and the legal consequences arising from sanctions related to the ongoing war in Ukraine is about as current as one gets, society has not yet seen fit to case off hundreds of years of contract law. A contractual agreement to arbitrate is still required to grant a motion to compel arbitration, and no such agreement has ever existed between the parties in this case.

To the extent this conclusion is not compelled by the Declaration of Mr. Vanhara and exhibits thereto and the law and argument in this Opposition, Veribi requests an evidentiary hearing to present facts and arguments pursuant to 9 U.S.C. § 4.

## II. FACTS AND RELEVANT BACKGROUND

As detailed in the Complaint and the Declaration of Jahn Vanhara, Mr. Vanhara is the owner of Veribi, LLC a company focused on bitcoin mining. In March 2021, Mr. Vanhara began doing business with Compass Mining, a company that sells bitcoin mining servers and hosting plans and manages the operation of its customers' mining servers at various sites around the world, including in the U.S., Canada, and Russia.

In March 2021, Veribi (then named Ofiplex NV, LLC) made its first purchase of bitcoin miners and hosting services from Compass for $66.086.12 for a group of miners to be hosted in Nebraska. The Declaration of Thomas Heller alleges that the "COMPASS CLICK-WRAP MASTER SERVICES AGREEMENT" was in effect at this time. This agreement does not contain an Arbitration clause, and, in any event, the transaction did not concern miners hosted in Russia, which are the subject of this action. This transaction is only relevant because it is one of a few transactions, none of which involved hosting

in Russia, that could have potentially included the click-through or scroll-through method of purchase Compass allegedly employed on its website beginning in July 2021. (Heller Decl. at ¶ 34). In this transaction, Mr. Vanhara was not presented with any contract or agreement, and to the best of his recollection he did not "click a box" during checkout or accept any pre-drafted agreement during the purchase.

This initial transaction is perhaps notable only because it led to Mr. Vanhara being put in communication with Compass' sales representatives, with whom approximately 97% of his nearly $4 million in purchases with Compass were made, typically via messaging over Telegram, phone, or email. Thus, despite the focus of Mr. Heller's Declaration on Compass' current website checkout process, Mr. Vanhara did not purchase miners and hosting services from Compass via that process.

Instead, the standard method by which the parties entered into contractual agreements is detailed in paragraphs 5 to 12 of Mr. Vanhara's Declaration. He would typically be contacted with an offer and related details by a Compass sales representative or "Mining Concierge" and would review the terms. He would then either accept the offer, decline it, or negotiate over the terms. If he accepted the offer, the representative would arrange for an invoice to be sent, which Mr. Vanhara paid via wire transfer. The issue for this motion, then, is whether this actual purchase process, as opposed to the hypothetical process detailed in Compass' Motion, was sufficient to create a binding arbitration agreement between the parties. It was not.

While the contracting process between Veribi and Compass was not exhaustive, comprehensive contractual agreements are not required by the law. As Witkin notes, "Express contractual terms give rise to implied duties, violations of which may themselves constitute breaches of contract.

Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done." Witkin, Summary of California Law 11th, Contracts § 833 (2022).

## III. LEGAL ARGUMENT

### A. No Contract to Arbitrate was Formed Between the Parties

Much litigation has been conducted over whether parties have entered into a valid arbitration agreement, including in the context of online transactions, and the law is well-established. "The FAA [Federal Arbitration Act], 9 U.S.C. § 1 *et seq.*, requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. *Id.* § 3. The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Because the claims at issue in this case would be encompassed by a valid and enforceable arbitration agreement between Compass and Veribi, the issue here, as in *Nguyen*, is whether a valid arbitration agreement exists. *See generally Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854-856 (9th Cir. 2022).

"The party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). "To determine whether such an agreement exists, 'federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Id., quoting Nguyen.* In determining whether a valid agreement to arbitrate exists, "the liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question whether a particular party agreed to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Rather, the validity of an arbitration agreement remains "a matter of contract and a party cannot be

required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

> With regard to procedure:
>> In deciding whether an agreement to arbitrate existed, a court should apply a summary-judgment-style standard. "Only when there is no genuine issue of fact concerning the formation of the agreement" should the court decide as a matter of law that an agreement to arbitrate existed. The district court should give the party opposing a motion to compel arbitration "the benefit of all reasonable doubts and inferences that may arise."

*Card v. Wells Fargo Bank, N.A.*, 2020 WL 1244859 at *2 (D. Or. Mar. 16, 2020) (citations omitted).

If there are genuine issues of material fact raised by a motion to compel arbitration and "one party disputes 'the making of the arbitration agreement,' the [FAA] requires that 'the court proceed summarily to the trial thereof' before compelling arbitration under the agreement." *Newton v. Am. Debt Servs., Inc.*, 854 F.Supp.2d 712, 720–21 (N.D. Cal. 2012).

Particularly relevant in the context of this case, a California appellate court recently noted that, "[u]nder traditional contract principles, where there is no dispute as to the material facts, 'the existence of a contract is a question of law for the court to decide.'" *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 462 (2022) (internal citation omitted).

Based on these authorities, it is for the Court to determine whether a genuine issue of material fact exists as to whether the parties entered into an agreement to arbitrate disputes regarding Veribi's miners hosted in Russia. In light of the facts and information in the Declarations of John Vanhara and Thomas Heller, Veribi submits that there can be no dispute based on competent evidence that the parties did not enter into an agreement to arbitrate, and thus

1  Compass' Motion should be denied without further hearing.

2  Mr. Heller, a co-founder and "Chief Mining Officer" at Compass, is the declarant supporting Compass' Motion to Compel Arbitration. Mr. Heller did not work with Mr. Vanhara, discuss or enter into Agreements on behalf of Compass with him, and the "Agreements" attached to his Declaration are not authenticated in terms of the date of their creation, their terms, or whether they were communicated to Mr. Vanhara or other Compass customers. They are simply various alleged "agreements" with different dates that, if they existed at the time Mr. Vanhara made purchases with Compass, were not called to his attention or viewed by him.

Further, as detailed in the declaration of Mr. Vanhara, the various drafts of these agreements are themselves suspicious. Vanhara Decl. at ¶¶15-21. Among other things, they suspiciously include references to Office of Foreign Asset Control (OFAC) and Executive Order 13224 (issued September 23, 2001) in August 2021, nine months prior to Compass' Russian hosting partner BitRiver being sanctioned in April 2022 under the Executive Order in connection with Russia's invasion of Ukraine. Compass is unable to meet its burden by a preponderance of competent evidence that there exists a binding agreement to arbitrate between the parties.

**B. Paying Compass' Invoices Did Not Create an Agreement to Arbitrate**

As detailed at length in his Declaration, Mr. Vanhara did not purchase the miners at issue in this dispute via Compass' website. Vanhara Decl. at ¶¶ 4-12. Thus, the Court need not enter into a detailed examination whether Compass' alleged "browserwrap", "clickwrap" or "scrollwrap" theories apply in this case.

Given the Mr. Vanhara never purchased any miners for hosting in Russia via Compass' website, perhaps Compass' most plausible argument is that its

invoices sent to Veribi after July 6, 2021, when Compass allegedly added an arbitration clause to its "Compass Customer Agreement," somehow ratified an agreement to arbitrate.

    First, it must be noted that any such agreement could only be invoked to support arbitration for miners purchased after July 6, 2021, as the first example of an alleged agreement containing an arbitration clause attached to Mr. Heller's Declaration bears that date. Such an agreement would not pertain to the $274,352.40 of miners Mr. Vanhara purchased for hosting in Russia on May 18, 2021 or the $101.176.20 of miners Mr. Vanhara purchased for hosting in Russia on June 9, 2021. (These invoices are attached as page 1 and 2 of Exhibit A to Mr. Heller's Declaration.) Thus, compelling arbitration would at most bifurcate the claims in this action between those based on purchases before the alleged July 6, 2021 agreement and those after. In view of such possibility, Veribi requests that any order compelling arbitration be stayed pending resolution of the non-arbitrable claims. ("The court has discretion to delay arbitration where pending litigation between the parties involves overlapping nonarbitrable issues that may render the arbitration unnecessary (e.g., statute of limitations, unrelated cross-claims). The court can order the arbitration delayed until those other issues are determined (or some earlier time if it chooses.") Rutter Group, Cal. Prac. Guide Alt. Disp. Res. Ch. 5-G, 5:325.

    Second, and more importantly, a party cannot create a valid agreement to arbitrate merely by slipping in a reference to an unseen agreement that happens to contain an arbitration clause. In reference to the August 5, 2021 invoice (page 5 and 6 of Exhibit A to Mr. Heller's Declaration), the agreement to arbitrate is allegedly conjured by the language of Note 4, which states, "By paying for this invoice and paying the security deposit, you are agreeing to the Compass Mining Hosting Terms and Conditions. The Terms and Conditions are available on

2:22-cv-4537-PVC          8

OPPOSITION TO COMPASS MINING'S
MOTION TO COMPEL ARBITRATION

request." The inconspicuous reference, which Mr. Vanhara did not notice (Vanhara Decl. at ¶10), fail to provide any information about the content of these alleged "Terms and Conditions," much less that they include an agreement to arbitrate.

If Compass thought the matter important, it could have sent these Terms and Conditions with the invoice, or printed them on the invoice, or hyperlinked them, or mentioned that payment of the invoice constituted an agreement to arbitrate. The law requires at least that and more: "California law is clear—'an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.' [citations.]" *Long v. Provide Com., Inc.*, 245 Cal.App.4th 855, 862 (2016); *see also* Witkin, Summary of California Law, 11th Contracts § 121 (2022) ("If the writing does not reasonably appear to be a contract, and its contractual terms are not called to the attention of the person who receives it, that person is not bound.") (Citing cases).

An invoice is not a contract, it is request for payment. The over 40 contracts Veribi entered into with Compass were created by Compass' offers, the parties' mutual agreement on terms, and the mutual promises of payment and performance. These contracts each gave rise to an obligation on the part of Veribi to pay the invoices received and an obligation on the part of Compass to furnish the contracted goods and manage them responsibly. If Veribi did not pay the invoice it would have been in breach of that contract, and by merely performing its duty under the contract by tendering payment Veribi was not somehow entering into a new contract with Compass consisting of terms of which it was not aware. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1285 (9th Cir. 2017); *see also Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) ("Instead of requiring a user to affirmatively assent,

Huuuge chose to gamble on whether its users would have notice of its Terms. The odds are not in its favor. Wilson did not have constructive notice of the Terms, and thus is not bound by Huuuge's arbitration clause in the Terms. We affirm the district court's denial of Huuuge's motion to compel arbitration."); *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) ("[T]he ultimate question concerning inquiry notice on a motion to compel arbitration remains the same—namely, whether 'the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'") (Citation omitted, applying California law.)

     A party cannot create a valid agreement to arbitrate via an oblique reference on an invoice. *C9 Ventures v. SVC-W.*, L.P., 202 Cal.App.4th 1483, 1501 (2012) ("Unsigned invoices, however, cannot on their own create a contract or add terms to a contract. 'The prevailing rule is that an invoice, standing alone, is not a contract [citations]; and a buyer is ordinarily not bound by statements thereon which are not a part of the original agreement.' 'After the orders were placed the seller transmitted certain invoices on which it attempted to place certain additional covenants into the contract. Such additions were mere self-serving declarations on the part of the seller and were not binding on the purchasers." (Internal citations omitted.) Veribi's payment of Compass' invoices did not serve to ratify some unknown "Master Hosting Services Agreement" and did not constitute an agreement to arbitrate.

**C. Compass' Website Terms and Conditions**

     While Veribi by no means concedes that the "Terms of Service" on Compass' website constitute a valid contract between Veribi and Compass, particularly with regard to this action, it is noteworthy that Compass' website's Terms of Service do not contain an arbitration clause. This is relevant here because the Terms and Service on Compass' website state that, "These Terms of

Service supersede any prior or contemporaneous agreements, communications and proposals, whether oral or written, between you and us (including, but not limited to, any prior versions of the Terms of Service)." Vanhara Decl. at 10.

To the extent Compass' website's Terms of Service are valid and binding, these Terms of Service would seem to supersede and abrogate any contractual agreement to arbitrate between the parties, or at least any such agreement entered into before November 1, 2021. Thus, even if the January 6 invoice attached as part of Exhibit A to the Decl. of Mr. Heller created a valid arbitration agreement between the parties, it would only constitute an agreement to arbitrate subset of the parties' contracts for miners and hosting services located in Russia, and any order to compel arbitration should be stayed pursuant to the Court's discretion pending resolution of this case.

## III. CONCLUSION

For all of the above reasons, Veribi respectfully requests that the Court enter an order determining, as a matter of law, that there is no valid and existing agreement to arbitrate between Veribi and Compass with respect to the miners Veribi purchased from and contracted with Compass to host in Russia. Compass has failed to meet its burden to establish by competent evidence that any such agreement exists. In the alternative, Veribi requests the Court hold an evidentiary hearing regarding the existence and enforceability of any alleged agreement to arbitrate between the parties.

Dated: August 23, 2022                    MEADOR & ENGLE

                                                                  */s/ Alan E. Engle*
                                                                  Alan E. Engle
                                                                  Attorneys for Plaintiff
                                                                  Veribi, LLC