1 Alan E. Engle (SBN 224779)
2 alan.engle@meenlegal.com
MEADOR & ENGLE
3 1115 Seal Way
Seal Beach, CA 90740
4 Telephone: (310) 428-6985
5 Facsimile: (714) 386-5368

6 Attorneys for Plaintiff VERIBI, LLC,
7

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs<br><br>COMPASS MINING INC., a Delaware corporation,<br><br>Defendant. | Case No.: 2:22-cv-04537 MEMF(JPRx)<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**VERIBI'S OPPOSITION TO COMPASS MINING'S MOTION TO DISMISS**<br><br>Hearing: TBD<br>Time: TBD<br>United States Courthouse, 350 West First Street, Los Angeles, CA, 90012<br>Courtroom 8B, 8th Floor |

# TABLE OF CONTENTS

**I. INTRODUCTION** ..................................................................................................2

**II. RELEVANT LEGAL STANDARD** ................................................................3

**III. LEGAL ARGUMENT** ......................................................................................4

    **A. California Law Applies to This Action** ......................................................4

    **B.  Compass' Alleged "Hosting Services Agreement" Does Not Apply to This Action and Cannot Be Considered on a Motion to Dismiss** ......................................................................................................5

    **C**. **It is Not Proper to Argue The Defense of Force Majeure in a Motion to Dismiss** ...............................................................................................6

    **D**. **Executive Order 14024 Does Not Shield Compass' Failures** .................8

    **E**. **Potential Limitation of Liability is Not Relevant** ....................................9

    **F**. **The Economic Loss Rule Does Not Prevent Veribi's Claims** ..................10

    **G**. **The Complaint States a Claim for Conversion** ........................................10

    **H**. **Veribi's Fraud claim is Adequately Plead** ................................................13

    **I.  Even if the Court Finds Any of Veribi's Claims Subject to Dismissal, Veribi Should Be Permitted to Amend Its Claims** ........................................................................................................14

**III. CONCLUSION** ................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)...........................................................3, 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)............................3

*Butler v. Los Angeles Cnty.*, 617 F.Supp.2d 994 (C.D. Cal. 2008) ................5

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys.*, *Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...............................................................13

*Conservation Force v. Salazar,* 646 F.3d 1240 (9th Cir. 2011) .....................3

*Edwards v. FCA US LLC*, 2022 WL 1814144 at *7
    (N.D. Cal. June 2, 2022).........................................................................11

*Erlich v. Menezes*, 21 Cal.4th 543 (1999).......................................................10

*Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078 (9th Cir.2008)....................4

*In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,*
    102 F.3d 1524 (9th Cir. 1996)............................................................4

*In re GlenFed Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ................................13

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ............4

*Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ......................4

*Messerall v. Fulwider*, 199 Cal.App.3d 1324 (1988)....................................12

*Pareto v. FDIC,* 139 F.3d 696 (9th Cir. 1998) ................................................3

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979 (2004) ...................10

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)..................3

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973) ..............................13

*Wilson v. Huuuge, Inc.,* 944 F.3d 1212 (9th Cir. 2019).................................9

**STATUTUES, RULES, and REGULATIONS**

Cal. Civ. Code § 1646..................................................................................4

31 C.F.R. § 589.214 ................................................................................................8

Executive Order 14024 ...................................................................................passim

Fed. R. Civ. P. 9(b) ...............................................................................................13

Fed. R. Civ. P. 12(b)(6)................................................................................passim

Fed. R. Civ. P. 15(a)..........................................................................................4, 15

## OTHER AUTHORITIES

Rutter Group, Fed. Civ. Pro. Before Trial Ch. 9:211 .....................................5

# MEMORANDUM IN OPPOSTION TO
# MOTION TO DIMISS

## I.    INTRODUCTION

Compass Mining's Motion to Dismiss is not so much as a motion to dismiss for failure to state a claim as a motion seeking to prevail on various potential defenses, whether force majeure, impracticability, excuse from performance due to intervening law, or because a different contract drafted by Compass after Veribi's claims arose allegedly applies to Veribi's claims. It is not inconceivable that Compass could prevail on one or more of these defenses, but a motion to dismiss is not the vehicle through which to raise and argue them.

To the extent any of these issues may be determined at this preliminary stage, it would be in the context of Compass' co-pending Motion to Compel Arbitration. ECF No. 16. In any event, the general contours of this case are clear and detailed at length in the Complaint. Compass accepted, for payment, an agency relationship to act on behalf of its customers with regard to the hosting of their bitcoin miners in Russia. As part of that agency relationship, it contracted with BitRiver to host them at BitRiver's facility, like goods in a warehouse, where BitRiver provided power, security, and internet access. BitRiver was sanctioned by Executive Order on April 19, 2022, and Compass has abandoned its customers' miners with BitRiver, failed to cooperate in their removal or transfer, and attempted to disclaim any responsibility.

If a warehouse is sanctioned that does not mean an agent can simply abandon its customer's goods, brush off hands, and deny any responsibility. The agent must reclaim the goods or at least make extraordinary efforts to wrest them from the bailee. Imposition of sanctions on BitRiver did not terminate Compass' obligations to Veribi or its other customers, it launched them into another gear, such that Compass should have used, and should be using, any and all efforts to

meet its obligations to its clients, even if that means suing BitRiver in the US or Switzerland or filing a declaratory judgment action against the Office of Foreign Asset Control (OFAC) to determine how best to proceed for its customers.

## II. RELEVANT LEGAL STANDARD

The Court is familiar with the relevant standards for a Motion to Dismiss. A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Ultimately, "[d]etermining whether a complaint states a

plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

      Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

      As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a).

## III. LEGAL ARGUMENT

### A. California Law Applies to This Action

      Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations." *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir.2008). Under California law, "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. The contracts at issue here were made either in California or Nevada, depending on where Mr. Vanhara was on a given date during Veribi's approximately five separate orders for miners hosted in Russia (out of more than 40 total orders with Compass). The contracts were performed via payment by Veribi in California or Nevada. The Complaint is based on California law, and the extent

to which Nevada law could apply to some of the transactions, a Motion to Dismiss is not the proper vehicle to argue the matter. Delaware law is simply not relevant here because the parties' contracts do not implicate or select Delaware law.

### B. Compass' Alleged "Hosting Services Agreement" Does Not Apply to This Action and Cannot Be Considered on a Motion to Dismiss

Compass contends that, "All of Veribi's purchases were governed by the Compass Hosting Service Agreement," and most of its arguments for dismissal follow from this proposition. Motion to Dismiss at p. 3, ECF No. 13. Veribi strongly contests this claim for reasons detailed in its Complaint and its co-pending Opposition to Veribi's Motion to Compel Arbitration and the Declaration of John Vanhara attached thereto. ECF Nos. 24, and 24-1. Regardless, in the context of the present Motion, the only contracts that may be considered are those alleged and detailed in Veribi's Complaint.

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must limit its review to the four corners of the operative complaint, and may not consider facts presented in briefs or extrinsic evidence." *Butler v. Los Angeles Cnty.*, 617 F.Supp.2d 994, 999 (C.D. Cal. 2008); Rutter Group, Fed. Civ. Pro. Before Trial Ch. 9:211 ("Generally, unless the court converts the Rule 12(b)(6) motion into a summary judgment motion, it cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials.")

As detailed in the Complaint, the relevant contracts arose from the offers, acceptances, exchanges of consideration, and performance between the parties over the course of various transaction for bitcoin miners to be hosted in Russia. Complaint ¶¶ 16, 17, 33-42, et seq. Compass' argument that "the Court may properly reference this Agreement on a Rule 12(b)(6) motion to dismiss because

it is incorporated by reference into Veribi's Complaint" borders on the fantastic. Motion to Dismiss at 5. First, nowhere does the Complaint include, attach, or discuss this alleged "Agreement," so it is not proper for consideration in the context of a motion to dismiss. Second, as detailed in the co-pending Opposition to Compass' Motion to Compel Arbitration (ECF No. 24), Veribi strongly contests the relevance of any of the various versions of this "Agreement" to this case. As detailed in the Complaint, Veribi's claim for breach of contract is founded on the contracts the parties created based on their actual communications, agreements, exchanges of consideration, and related performance, not by some clandestine ex post "Agreement" drafted by Compass as an escape hatch.

Compass' attempt to shoehorn its "Hosting Services Agreement" into its Motion to Dismiss on the basis of a gratuitous statement it made on an "Equipment Ownership Confirmation Certificate," attached as Ex. C to the Complaint, which was delivered to Veribi after the claims in this action had arisen, is telling. As discussed in Veribi's co-pending Opposition to Compass' Motion to Compel Arbitration, the first version of this so-called "Agreement" available online from the Wayback Machine is dated "5.5.22". The date of the "Equipment Ownership Confirmation Certificate" on which Compass seeks to rely is also May 5, 2022. After BitRiver was sanctioned, Compass REALLY wanted to bootstrap its customers into a 15,000 word contract of adhesion that would forestall any and all claims. However, law is based on substance, not the desperate arrangement of empty formalities.

**C. It is Not Proper to Argue The Defense of Force Majeure in a Motion to Dismiss**

After devoting significant discussion to the implications of an "Agreement" irrelevant to this proceeding, Compass next argues that Veribi's contract claim

should be dismissed because, "The Agreement contains strong force majeure provisions." Motion to Dismiss at 8. Whether sanctions on Compass' partner BitRiver constitute a force majeure, and just what that entails with regard to Compass' continuing obligations to Veribi, will likely be a significant issue in this case. However, the Court should decline Compass' invitation to determine that the underlying facts give rise to a force majeure defense so strong as to compel dismissal of Veribi's breach of contract claims.

Indeed, in nearly five pages of argument after the heading, "The OFAC Sanctions Were a Force Majeure Event," Compass fails to cite a single case. Rather, it simply quotes and purports to apply a provision of its after-drafted "Agreement" to a self-serving and contested recitation of allegedly relevant facts. Motion to Dismiss at 8-12. Here, however, the only facts properly before the Court are those detailed at length in Veribi's Complaint.

Compass does finally cite a few cases to support the proposition that, "acts of war and government sanctions are force majeure events excusing contractual performance." *Id*. While Veribi concedes that if a force majeure clause were read into the parties' contracts it could potentially excuse some portion of Compass' required performance, whether a force majeure clause can or should be read into the contracts, and the specific implications of doing so, is an issue intertwined with the underlying facts. For example, a force majeure, if any, would likely only serve to cancel the parties' ongoing hosting arrangement but not bear on whether Compass is obligated to return either the miners themselves or their purchase price.

The same concerns hold regarding whether, and to what extent, the doctrine of impossibility excuses performance based on intervening official acts, and whether the excused performance concerns merely the ongoing the hosting arrangement or also encompasses the initial purchase of the machines as well,

2:22-cv-4537-PVC 7

1    much less whether the "official acts" actually intervene.

2            **D. Executive Order 14024 Does Not Shield Compass' Failures**

3            It should be clear that the parties have a very different understanding of Executive Order 14024 and its implications. Veribi agrees with Compass' statement that, "The federal sanctions broadly prohibit contracting with, providing services to, or receiving services from a sanctioned entity." Motion to Dismiss at p. 4. And Veribi agrees that Compass could not continue paying BitRiver to host its customers' miners on an ongoing basis. However, an implication of this proposition is that Compass should not simply leave the miners with BitRiver to use as it sees fit, likely for its own benefit, thereby directly undermining the purpose of Executive Order 14024. In fact, if any action by Compass could be regarded as violating Executive Order 14024, it would be allowing the miners to remain under BitRiver's control, which arguably constituters "the making of any contribution or <u>provision</u> of funds, <u>goods</u>, or services by, to, or <u>for the benefit of</u> any person [or entity] whose property and interests in property are blocked pursuant to this order." Executive Order 14024 § 2(a) (emphasis added).

        Compass relies on the contention that the sanctions on BitRiver, "ma[de] it a federal crime for Compass to continue its contract with BitRiver, or to otherwise deal with BitRiver in any way." Motion to Dismiss at p. 1. Again, however, this statement elides the distinction between continuing a contractual relationship with BitRiver and terminating an existing relationship, as though the two were identical. Parties are permitted to demand return of their lawful property and terminate existing relations with a sanctioned entity. See 31 C.F.R. § 589.214 ("The prohibitions contained in this part do not apply to any postal, telegraphic, telephonic, or other personal communication that does not involve the transfer of anything of value.") This is implied by the basic purpose of the

sanctions and a violation of due process would likely arise were it not. Yet, Compass cites no case or opinion supporting the proposition that one cannot demand the return of property in the possession of a sanctioned entity.

In fact, according to the communications attached to the Complaint, Compass has apparently not even told BitRiver that the miners are the property of its customers, such that customers like Veribi could at least demand return directly from BitRiver. Complaint at Ex. I and J.

Moreover, the Complaint alleges Compass is an agent and fiduciary of Veribi with respect to the oversight and operation of Veribi's miners. Complaint at ¶¶ 35, 44 ("Compass is Veribi's agent with respect to the operation and management of Veribi's bitcoin mining systems." "Generally, an agent is a fiduciary, whose obligation of diligent and faithful service is the same as that of a trustee.") The issue in this case is not whether sanctions on BitRiver made Compass' performance more difficult, or potentially even excused part of that performance, but whether and to what extent Compass worked on behalf of its clients in the face of challenges after the sunflowers ceased blooming due to Russia's invasion. Veribi contends, as detailed in the Complaint, Compass' obligations as Veribi's agent were to use its best efforts to attend to the interests of its principal, and not to employ partial disclosures, false promises, post hoc contracts of adhesion, and unfaithful services to shield its own conduct as it walked away from a burning building with gasoline on its hands and a lit cigarette in its mouth. If Compass is correct that E.O. 14024 legally excuses some of its conduct it may prevail on some of its defenses, but it is premature to adjudicate such defenses in the context of a Motion to Dismiss.

### E. Potential Limitation of Liability is Not Relevant

Compass' next argument is that the limitation of liability provision of the "Agreement" bars the relief Veribi seeks. As discussed above, the "Agreement"

2:22-cv-4537-PVC 9

OPPOSITION TO COMPASS MINING'S
MOTION TO DISMISS

is not relevant to the parties actual contractual relationship. In any event, a motion to dismiss for failure to state a claim is not a vehicle for the Court to address and apply particular contractual defense. To the extent Compass' argument based on limitation of liability is relevant, it is only to indicate how Compass seeks to employ its post hoc contract of adhesion to escape its obligations to its clients.

### F. The Economic Loss Rule Does Not Prevent Veribi's Claims

Compass' next argument is that "Veribi's Tort Claims Are Barred by the Economic Loss Rule." Motion to Dismiss at 14. Veribi alleges three tort claims, negligence, conversion, and fraud. Veribi's Conversion and fraud claims are clearly predicated on duties independent of the duties imposed by the parties' contracts and are not covered by the economic loss rule.

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004). A plaintiff may recover in tort for purely economic loss in tort when "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999). Thus, "[t]ort damages have been permitted in contract cases where a ... contract was fraudulently induced." *Id*. A "a tortious breach of contract ... may be found when ... the breach is accompanied by a traditional common law tort, <u>such as fraud or conversion</u>." *Id*. at 553 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 105 (1995) (Mosk, J) (emphasis added).

In this case, Veribi alleges that Compass' intentional and knowing conduct deprived Veribi of the goods it purchased from Compass that remain in

2:22-cv-4537-PVC                            10

the possession or control of Compass and/or Compass' contractual partner, BitRiver. *Edwards v. FCA US LLC*, 2022 WL 1814144 at *7 (N.D. Cal. June 2, 2022) ("In sum, regardless of whether [plaintiff's] claim is characterized as fraud in the inducement or fraudulent concealment, I find that the economic loss rule is not a barrier.") Again, Compass may have some defense to this allegation, but a motion to dismiss is not the context in which to determine the question.

With regard to negligence, this case clearly involves a dispute over the nature of the contractual arrangement between the parties. If the Court properly disregards Compass' "Master Hosting Services Agreement" Veribi expects Compass to assert defenses that the contracts created by the parties' negotiation, agreement, consideration, and performance are vague, uncertain, impossible, barred by force majeure, etc. In anticipation of these defenses, Veribi has pled negligence as an alternative claim. This is permissible. "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FRCP 8(d)(2). To the extent Veribi prevails on its breach of contract claims, it may be barred from recovery based on negligence. Any such concern can be addressed at the appropriate time, but it would be premature to determine that issue in the present context.

Additionally, Veribi's claim for negligence do not arise only from the requirement of reasonable performance implied in every contract, but the more exacting duties of loyalty, faithfulness, and full disclosure required of an agent. An agent can be negligent in breaching duties owed to its principal even if its efforts that would otherwise be sufficient under an arms-length agreement.

### G. The Complaint States a Claim for Conversion

Compass next argues that Veribi fails to state a claim for conversion. Based

on Delaware law, Compass argues that, "[C]onversion cannot lie in the absence of the physical possession of the actual good or chattel owned by the plaintiff." Motion to Dismiss at 15. Of course, actual physical possession cannot be required for conversion, as parties can often store converted property in the possession of others, as with warehouses, storage unties, or safe deposit boxes, while still maintaining legal control over the property.

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Messerall v. Fulwider*, 199 Cal.App.3d 1324, 1329 (1988). The *Messerall* court elaborates:

> 'It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.'

*Id*. (citations omitted). Veribi alleges in its Complaint that Compass has the right and obligation to demand that BitRiver release Veribi's property and take any further steps required to secure its release, and that Compass has willfully failed to exercise this right, either wantonly or for the benefit of itself and/or BitRiver, and Veribi has thereby been damaged through denial of its property.

Compass claims, on the other hand, that its failure to adhere to exercise dominion over the property is excused by its interpretation of Executive Order 14024. However, the Complaint specifically alleges that, "It is false that the removal or transfer of Veribi's servers entrusted to Compass and currently in possession of BitRiver would constitute a 'business dealing' in violation of Executive Order 14024." Complaint at 28. While Compass disagrees, it has cited no case nor provided any reasoned legal opinion to support this counter-intuitive proposition. Thus, for the reasons discussed above, particularly in the context of a motion to dismiss, the Court must credit Veribi's allegation that Compass' failure to act is an unjustified pretense asserted for its own benefit or

convenience, and therefore that its failure to secure possession or facilitate the transfer of the miners constitutes conversion.

### H. Veribi's Fraud claim is Adequately Plead

Veribi's fraud claim is adequately plead and places Compass on notice of the nature and details of the claims against it. Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).

Three pages of Veribi's Complaint are devoted to its fraud claim, which is based on both Compass' misrepresentations and concealment. The claim speaks for itself and is based on specific acts undertaken by identified individuals, such as Witt Gibbs, Compass' former CEO, at identified times. The Complaint alleges fraud based on Compass' statements and conduct regarding:

> (1) its alleged secure and competent management of its Customers' miners in conformity with governing laws and regulations; (2) the safety, security, and reliability of its operations in Russia; (3) the actual nature of its relationship with BitRiver AG and its affiliated companies; (4) its alleged inability to facilitate the removal of customer miners from BitRiver's facilities due to U.S. Sanctions; (5) its lack of significant efforts to sell, transfer, or repatriate customers' miners; (6)

>its unwillingness or inability to facilitate or permit the sale of customer miners in Russia to non-U.S. third-parties; (7) and its compliance with relevant regulations concerning the ownership, import, and/or tax status of customer miners under its management and control, with the failure of such compliance being in part responsible for Compass' inability to transfer or repatriate Russian miners sold to its customers, including Veribi.

Complaint at ¶57. As discussed at length in the Complaint, the gravamen of a number of Veribi's specific fraud allegations is that Compass' claimed inability to facilitate the removal of its customers' miners from BitRiver due to Executive Order 14024 is merely a pretext, and that Compass could not actually remove the miners because the actual nature of Compass' relationship with BitRiver was other than an arms-length agreement to host the miners of Compass' customers. Rather, whether to evade Russian taxes or import regulations, or for some other reason, Compass failed to structure its relationship with BitRiver in a manner consistent with its promises and obligations to its customers.

Moreover, it is not only Compass' affirmative actions and statements that give rise to Veribi's fraud claim. Rather, Compass was acting as Veribi's agent and "[a]n agent is required to disclose to the principal all information relevant to the subject matter of the agency." Complaint at ¶ 44. Veribi is claiming that Compass fraudulently concealed relevant information about its operations in Russia to Veribi's detriment. Veribi has yet to see and review the specific details of Compass' discussions and contracts with BitRiver, which it plans to demand during discovery, but its fraud allegations are certainly specific enough to give Compass fair notice of the substance of Veribi's claims.

### I. Even if the Court Finds Any of Veribi's Claims Subject to Dismissal, Veribi Should Be Permitted to Amend Its Claims

While Veribi disputes that any of its claims are properly subject to dismissal for failure to state a claim, to the extent the Court determines

otherwise, Veribi requests leave to amend consistent with FRCP 15(a)(2).

## III. CONCLUSION

For all of the above reasons, Veribi respectfully requests that the Court deny Compass' Motion to Dismiss. In the alternative, Veribi requests leave to amend.

Dated: August 25, 2022

MEADOR & ENGLE

*/s/ Alan E. Engle*
Alan E. Engle
Attorneys for Plaintiff
Veribi, LLC