GUNDZIK GUNDZIK HEEGER LLP
Aaron C. Gundzik (State Bar No. 132137)
Aaron.gundzik@gghllp.com
14011 Ventura Blvd, Suite 206E
Sherman Oaks, CA 91423
Telephone:  818.290.7461
Facsimile:   818.918.2316

ARMSTRONG TEASDALE LLP
Alec P. Harris (*pro hac vice*)
Kathleen Guilfoyle (*pro hac vice*)
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:  720.200.0676
Facsimile:   720.200.0679
aharris@atllp.com
kguilfoyle@atllp.com

Attorneys for Defendant Compass Mining, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMPASS MINING, INC., a Delaware corporation,<br><br>　　　　Defendant. | Case No.: 2:22-CV-04537-MEMF-JPR<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT COMPASS MINING, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: November 17, 2022<br>Time: 10:00 a.m.<br>Place: United States Courthouse, 350 West First Street, Los Angeles, CA, 90012, Courtroom 8B, 8th Floor |

## I. INTRODUCTION

The Opposition to Compass Mining Inc.'s ("Compass") Motion to Dismiss ("Opposition") [ECF No. 27] cannot save the Complaint from dismissal. Faced with clear language in the parties' Hosting Services Agreement ("Agreement") barring its claims, Plaintiff, Veribi, LLC ("Veribi"), asserts that that the Agreement does not apply and accuses Compass of fabricating the document as a "post hoc contract of adhesion." (Opp. at 10.) Veribi then argues that defenses from the Agreement are somehow "not proper" for a motion to dismiss, that the United States sanctions do not preclude an agreement to return Veribi's miners despite "broadly prohibit[ing] contracting with, providing services to, or receiving services from a sanctioned entity," (*id.* at 8), and that Veribi's tort claims should survive despite their duplication of the contract claim and failure to plead all elements with specificity.

Veribi is mistaken, for many reasons. First, documents attached to Veribi's own Complaint demonstrate that the Agreement governs, and its accusations of fabrication are unfounded, irresponsible, and contrary to evidence submitted by Veribi itself in opposition to Compass's Motion to Compel. Veribi should not be permitted to deliberately omit references to the Agreement in its Complaint in an attempt to survive motion to dismiss. Second, the law is clear that the defenses of force majeure, impossibility, and contractual limitations of liability are all proper bases for a motion to dismiss where, as here, they are supported by the allegations in the Complaint itself or matters subject to judicial notice, such as federal sanctions. And under both the Agreement and common law, the sanctions underlying this dispute mandate dismissal. Third, the economic loss rule bars Veribi's tort claims because Veribi has not pleaded independent duties arising in tort. Finally, Veribi fails to state a claim for conversion because it has not alleged Compass has control of Veribi's miners and has not identified specific fraudulent statements necessary to allege fraud. The Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. The Hosting Agreement Governs the Parties' Relationship.

Contrary to Veribi's assertion (Opp. at 5–6), the Agreement is central to Veribi's claims and should be considered on motion to dismiss. Despite Veribi's attempts to avoid its mention, the Agreement pervades the Complaint. Fundamentally, Veribi relies on contracts between itself and Compass in bringing its breach of contract and related claims. *See* Compl. [ECF No. 1] ¶¶ 33–42. The Hosting Agreement supplies the key terms of those contracts and is thus incorporated by reference. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (applying the "incorporation by reference" doctrine where plaintiff's claim depended on the contents of a document, even though the plaintiff did not explicitly allege the contents of that document in the complaint).

Moreover, multiple documents attached to the Complaint expressly reference the Hosting Agreement. For example, Exhibit H, Compass's April 21, 2022 "Notification of Termination of Hosting Agreement" to Veribi, states:

> Pursuant to the terms of the Compass Hosting Service Agreement (the "Hosting Agreement") you entered into, Compass is hereby notifying you that your Hosting Agreement has been terminated as a result of the BitRiver SDN designation and resulting termination of Compass' contractual relationship with BitRiver.

Compl. Ex. H [ECF No. 1-1 at 26]. This is the very communication that Veribi (mistakenly) alleges to be at the core of Compass's purported breach of contract. *See, e.g.*, Compl. ¶ 37 (alleging breach of contract based on purported "abandon[ment of] Veribi's bitcoin mining systems"). It clearly demonstrates that the parties' relationship was governed by the Hosting Agreement and brings that Agreement within the scope of the Complaint for purposes of motion to dismiss.

Similarly, Veribi's ownership certificate attached to the Complaint also expressly references the Agreement. *See* Compl, Ex. C [ECF No. 1-1 at 8] ("This ownership confirmation certificate identifies the ownership of specific

cryptocurrency mining equipment … that is owned by you in connection with your Hosting Services Agreement entered into with Compass"). Finally, the Complaint discusses Compass invoices to Veribi for BitRiver Miners and attaches a "representative invoice." *See* Compl. ¶ 17 & Ex. D. The invoice Veribi chose does not include reference to the Hosting Agreement, but as explained in Compass's Motion to Compel Arbitration, the invoices for the BitRiver Miners issued to Veribi on June 9, 2021, August 5, 2021, January 14, 2022, and January 26, 2022 each state: "By paying for this invoice and paying the security deposit, you are agreeing to the Compass Mining Hosting Terms and Conditions." *See* Mem. [ECF No. 15 at 2] & Ex. A [ECF No. 15-2 at 4, 6, 8, 10].[1]

Veribi should not be permitted to deliberately omit references to the Agreement in its Complaint in hopes of surviving a motion to dismiss. The Ninth Circuit has "deliberately enlarged the scope of documents that a court [can] analyze when deciding a motion to dismiss to include those documents that a complaint is based upon," *Maloney v. Verizon Internet Serv., Inc.*, No. ED CV 08–1885–SGL(AGRx), 2009 WL 8129871, at *2 (C.D. Cal. Oct. 4, 2009), for the express purpose of "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based," *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Courts routinely do so. For example, in *Maloney*, this Court considered the plaintiff's selective characterization of the parties' agreement and concluded that plaintiff could not "curb the court's analysis of the [agreement] in order to survive the motion to dismiss, knowing that two of her causes of action would instantly fall to the wayside were the [terms of service] taken into account." 2009 WL 8129871, at *3. The Court then dismissed the complaint based on the language of the contract. *Id.* at *3–4, *6. Here, as in *Maloney*,

---

[1] All the above examples flatly disprove Veribi's assertion that "nowhere does the Complaint include, attach, or discuss this alleged 'Agreement.'" (Opp. at 6.)

the Agreement governs the parties' relationship and is fatal to Veribi's claims.[2] Veribi should not be allowed to hide the terms of that agreement to avoid dismissal.

The standard applicable to a Rule 12(b)(6) motion does not dictate otherwise. Even on motion to dismiss, the Court need not take legally and factually implausible allegations at face value. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is highly implausible that Compass, a large business, would contract with customers based solely on a short product advertisement page, or a few scattered telegram messages. *See* Opp. at 5. It is also highly implausible that Compass would fabricate the existence of the Agreement in some sort of "desperate arrangement" to put in place a "post hoc contract of adhesion" the day after the sanctions issued, as Veribi claims. *See* Opp. at 6, 9, 10. Veribi's own exhibits (and Mr. Vanhara's sworn statement provided in response to Compass's Motion to Compel Arbitration) contradict these irresponsible and implausible accusations. *See* Compl., Exs. C & H; *see also* Vanhara Decl. [ECF No. 24-1] ¶¶ 4, 8–9 (admitting receipt of invoice referencing Agreement as early as June 10, 2021); *see generally* Heller Supp. Decl. in Supp. of Mot. to Dismiss. ¶¶ 5–10 & Exs. A–F (attaching relevant versions of Agreement).[3] The Court can and should consider the Agreement on this Motion to Dismiss.[4]

---

[2] The "contracts" supposedly described in paragraphs 16 and 17 of the Complaint do not detail Compass's duties identified by Veribi in its breach of contract claim. *See* Compl. ¶¶ 16, 17, 33–42; Opp. at 5–6 (arguing ¶¶ 16, 17, 33–42 of the Complaint sufficiently describe the contracts between the Parties). The contract claim instead depends on the duties owed Veribi under the Agreement.

[3] For several versions of the Hosting Agreement, there was a lag between the internal implementation dates provided in Mr. Heller's August 10, 2022 declaration and the external rollout date on which the agreement became visible on the Compass website. Mr. Heller has provided a supplemental declaration clarifying this issue. *See* Heller Supp. Decl. ¶¶ 5–6.

[4] Veribi does not contest that under the Agreement, the Delaware choice of law provision would govern all disputes. Veribi's arguments about the applicability of the Agreement fail. Thus, under the Agreement, Delaware law applies.

### B. Under Both the Agreement and Common Law, Compass is Not Liable for Failure to Perform Resulting from Sanctions.

#### 1. Force Majeure, Impossibility, and Limitations of Liability Are All Valid Bases for Dismissal.

Contrary to Veribi's assertion (Opp. at 7), force majeure, impossibility, and contractual limitations of liability are all valid bases for dismissal under Rule 12(b)(6). "[A] motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense 'is apparent on the face of the complaint,'" or where "the allegations in a complaint are contradicted by matters properly subject to judicial notice." *Dinh v. Citibank, N.A.*, SA CV 12-1502-DOC (RNBx), 2013 WL 12137715, at *2 (C.D. Cal. Oct. 15, 2013). Courts routinely grant motions to dismiss for failure to state a claim under these circumstances. *See, e.g.*, *1600 Walnut Corp. v. Cole Haan Co. Store*, 530 F. Supp. 3d 555, 558 (E.D. Penn. 2021) (dismissing counterclaims based on contractual force majeure provision); *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 123–24 (2d Cir. 2022) (affirming dismissal based on force majeure triggered by COVID-19 pandemic and resulting orders from governor); *Sports Cap. Holdings (St. Louis), LLC v. Schindler Elevator Corp. & Kone, Inc.*, No. 4:12CV1108 SNLJ, 2014 WL 1400159, at *5 (E.D. Mo. Apr. 10, 2014) (granting dismissal based on contractual limitations on damages); *Hansmeier v. Seaver*, 622 B.R. 720, 726 (D. Minn. 2020) (affirming dismissal of contract claim based on impossibility). Here, the Complaint itself, the United States' sanctions, which are subject to judicial notice, and the Agreement incorporated into the Complaint make plain that this case should be dismissed.[5]

#### 2. Veribi Misinterprets the Sanctions.

Veribi concedes the federal sanctions at the heart of this dispute "broadly

---

[5] The Opposition offers no argument on the merits against the limitations of liability contained in the Agreement, instead asserting that the provisions "are not relevant to the parties['] actual contractual relationship" and that this "contractual defense"

prohibit contracting with, providing services to, or receiving services from a sanctioned entity," but nonetheless argues that Compass must "demand" return of Veribi's miners. (Opp. at 8.) Veribi is not correct.

The lone authority cited by Veribi in support of its assertion that a demand to return miners would not violate federal law in fact shows the opposite. Veribi cites 31 C.F.R. § 589.214(a) for the proposition that: "The prohibitions contained in this part do not apply to any postal, telegraphic, telephonic, or other personal communication *that does not involve the transfer of anything of value*." But the miners are clearly "something of value" that Compass may not receive from BitRiver, *see* 86 Fed. Reg. 20249, 20250–51, § 2(b) ("The prohibitions in section 1 of this order include ... (b) the receipt of any contribution or provision of funds, goods, or services from any such person."). Moreover, the sanctions also prohibit Compass's facilitation of any transaction between BitRiver and Veribi. *See* 31 C.F.R. § 587.311 (defining "property and property interest" to included "services of any nature whatsoever" and "contracts of any nature whatsoever"); *see also Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 231 (N.D. Tex. 2019) (interpreting Executive Order 13661, which contains identical language as Executive Order 14024, and concluding the language "[t]he prohibitions in section 1 of this order include ... the ... receipt of any ... provision of ... services from any such person" "unambiguously indicates that Section 1 prohibits the receipt of services from a blocked person"). Like Veribi, Compass would very much like to find a positive resolution of this difficult situation for its customers. But the sanctions simply prohibit the resolution Veribi demands through this litigation.

### 3. The Sanctions Bar Veribi's Claims.

The Agreement's force majeure provisions clearly demand dismissal based on

---

is not proper on motion to dismiss. (Opp. at 9–10.) Since that is not the case, Veribi has conceded this issue on the merits.

the undisputed facts alleged in the Complaint. The parties explicitly agreed that force majeure events, including, *inter alia*, war, national, local or regional emergency, any law, order, regulation, seizure or other action of any governing authority or agency, would preclude liability for non-performance. *See* Heller Decl. [ECF No. 13-7], Ex. F §§ 14.5, 15.3. The sanctions at issue—a force majeure event resulting from war and consisting of a law, order, and/or regulation of the United States government—prevent Compass from accessing its customers miners in Russia and thus preclude Veribi's breach of contract claim. *See Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 820 n.35 (D. Del. 1990) (noting that the Libyan Sanctions Regulations would indicate to a company that it "must abandon its international contractual obligations for the good of our country").

But the Court need not even consider the Agreement to dismiss Veribi's claims, because the common law supports the same outcome. The sanctions in this case render Veribi's demands impossible and illegal, and thus subject to dismissal. *See, e.g.*, *AluminumSource, LLC v. LLFlex, LLC*, C.A. No.: N18C-07-231 EMD CCLD, 2021 WL 211142, at *9 (Del. Super. Ct. Jan. 21, 2021) (holding that change in law excused performance because it rendered performance illegal); *Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 53 (D. Del. 2021) (holding that COVID 19 triggered impossibility doctrine); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 551, 559 (Cal. Ct. App. 2004) (concluding that Iran Sanctions made contractual performance illegal and rejecting claims for breach of contract).[6]

---

[6] Contrary to Veribi's assertion (Opp. at 3, 9), Compass does not owe Veribi a fiduciary duty and it has no obligation to sue BitRiver or OFAC on Veribi's behalf. The Hosting Agreement clearly states: "Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the parties...." Heller Decl., Ex. F. § 15.8. Veribi is the undisputed owner of the BitRiver Miners, *see* Compl. Ex. C, and it is free to do so on its own accord.

### C. The Economic Loss Rule Bars Veribi's Tort Claims.

The Opposition fails to identify any independent duties arising in tort, so Veribi's tort claims should be dismissed. As Veribi concedes (Opp. at 10), its claims for negligence, conversion, and fraud are barred by the economic loss doctrine unless they allege that some duty independent of contract exists. *See J.W. Walker & Sons, Inc. v. Constr. Mgmt. Serv., Inc.*, 2008 WL 1891385, at *1, (Del. Super. Ct. Feb. 28, 2008) (negligence); *Khushaim v. Tullow Inc.*, C.A. No. N15C-11-212-PRW, 2016 WL 3594752, at *8 (Del. Super. Ct. June 27, 2016) (conversion); *Furnari v. Wallpang, Inc.*, C.A. No. 13C-04-287 JRJ CCLD, 2014 WL 1678419, at *7–8 (Del. Super. Ct. Apr. 16, 2014) (fraud). Here, the Opposition provides just a single sentence addressing the purportedly independent duties at issue in its tort claims: "Compass' intentional and knowing conduct deprived Veribi of the goods it purchased from Compass that remain in the possession or control of Compass and/or Compass' contractual partner, BitRiver." (Opp. at 10–11.) But this sentence summarizes purported duties *already alleged* in Veribi's contract claim. *See* Compl. ¶ 37 (alleging Compass "abandoned" miners to BitRiver), ¶ 38 (alleging that Compass acted contrary to its "representations"); ¶ 40 (alleging Compass "concealed" the nature of its relationship with BitRiver). Veribi has identified no well-pleaded duties beyond those alleged in contract, so its tort claims should be dismissed.[7] *See, e.g.*, *CB Lewes, LLC v. Brightfields, Inc.*, C.A. No. S20C-06-001 RFS, 2020 WL 6364521, at *4 (Del. Super. Ct. Oct. 29, 2020) (dismissing duplicative negligence claim); *Potter v. Chevron Prods. Co.*, Case No. 17-cv-06689-

---

[7] The Opposition's reliance on caselaw concerning an "exception" to the economic loss rule for fraudulent inducement (Opp. at 10) misses the mark. Veribi has not alleged fraudulent inducement. *See* Compl. And even if Veribi had, that exception is available only where the claim "relates to the inducement of the contractual relationship, and not performance under the contract." *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012).

PJH, 2018 WL 4053448, at *8–9 (N.D. Cal. Aug. 24, 2018) (same).

### D. Veribi Fails To State A Claim For Conversion.

Ignoring the applicability of Delaware law to its claims, Veribi next argues its conversion claim need not plead physical possession, and must only show "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Opp. at 12 (quoting *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329 (Cal. Ct. App. 1988)). But even under the California standard, Veribi's claim fails because Compass's dominion and/or control over the miners is not alleged. *See* Compl. ¶ 51 (alleging that Compass "abandoned" miners with BitRiver). Taking the facts alleged in the Complaint as true, it is plain that Compass has no ability to control or exert dominion over miners currently located with a sanctioned entity. Indeed, it is not legally possible for Compass to do so in light of the sanctions. The conversion claim fails.

### E. Veribi Fails To State A Claim For Fraud.

Finally, the Opposition fails to resuscitate its fraud claims, which are not well pled under Rule 9(b). The Opposition identifies only three statements alleged in the Complaint with the "who, what, when, and where"; none are actionable. *First*, the Complaint's references to Whit Gibbs' March 4, 2022 statements, *see* Compl. ¶¶ 21, 58, fail to sufficiently allege that Gibbs' statements were "false," that he knew they were false at the time, or Veribi's reliance on the statements, all required elements for fraud. *See GreenStar IH Rep, LLC v. Tutor Perini Corp.*, C.A. No. 12885–VCS, 2017 WL 5035567, at *10 (Del. Ch. Oct. 31, 2017). *Second*, the Complaint's references to Compass's 2020 press release, *see* Compl. ¶ 61, fail to allege that the statements regarding BitRiver's then reputation were at that time "false" or Compass's knowledge that they were false. *See GreenStar,* 2017 WL 5035567, at *10. *Third*, the Complaint's references to Compass's statements concerning the impact of Executive Order 14024, *see* Compl. ¶ 59, cannot support a fraud claim for many reasons, including that (1) the statements are not false, (2) Veribi does not

credibly allege that Compass made the statements with intent to induce Veribi to act (or not act), and (3) Veribi does not credibly allege that it did act (or refrained from action) in reliance on Compass's statement. *See GreenStar,* 2017 WL 5035567, at *10. Likely realizing its shortcomings, Veribi does not even attempt to round out these insufficient bases for its fraud claim in its Opposition.

Instead, the Opposition points to the Complaint's vague laundry list of purported misrepresentations by Compass. *See* Opp. at 13–14. But this list cannot support a fraud claim because the Complaint does not allege the "who," "when," and "where" as required by Rule 9(b). *See Pineda v. Nissan North Am., Inc.*, Case No. CV 22-239-DMG (JCx), 2022 WL 2920416, at *2 (C.D. Cal. July 25, 2022). Veribi should not be allowed to rely on vague and salacious allegations of purported nefarious conduct, fabrication of documents, and collusion with a sanctioned foreign entity without any evidence or specifics. Preventing these kinds of reckless allegations is precisely the point of Rule 9(b). Leveling serious allegations of fraud requires a heightened burden. Veribi's unfounded and conspiratorial allegations fall woefully short of this burden, and its fraud claim must be dismissed.

### F. All Veribi's Claims Should Be Dismissed With Prejudice.

Veribi misreads the operative Hosting Agreement and misunderstands the dispositive sanctions. These are legal defects that cannot be cured. Accordingly, Veribi's Complaint should be dismissed with prejudice. *See Clark v. California Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 812, 814 (N.D. Cal. 2016) (dismissing claims with prejudice because the defects were "legally incurable").

### III. CONCLUSION

For all the above reasons, the Complaint should be dismissed with prejudice.

Dated: September 1, 2022         GUNDZIK GUNDZIK HEEGER LLP

By: /s/ *Aaron C. Gundzik*

Attorneys for Defendant Compass Mining, Inc.