GUNDZIK GUNDZIK HEEGER LLP
Aaron C. Gundzik (State Bar No. 132137)
Aaron.gundzik@gghllp.com
14011 Ventura Blvd, Suite 206E
Sherman Oaks, CA 91423
Telephone:   818.290.7461
Facsimile:    818.918.2316

ARMSTRONG TEASDALE LLP
Alec P. Harris (*pro hac vice*)
Michael A. Xavier (*pro hac vice pending*)
Kathleen Guilfoyle (*pro hac vice*)
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:   720.200.0676
Facsimile:    720.200.0679
aharris@atllp.com
kguilfoyle@atllp.com

Attorneys for Defendant Compass Mining, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMPASS MINING, INC., a Delaware corporation,<br><br>　　　　Defendant. | Case No.: 2:22-CV-04537-MEMF-JPR<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT COMPASS MINING, INC.'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |

# ANSWER

Defendant Compass Mining Inc. ("Compass"), by and through undersigned counsel, hereby provides its Answer, Affirmative Defenses, and Counterclaims to the Complaint [ECF No. 1] filed by Plaintiff Veribi LLC ("Veribi" or "Plaintiff").

# GENERAL DENIAL

Compass denies each and every matter set forth in Plaintiff's Complaint unless hereinafter specifically admitted or qualified.

# JURISDICTION AND VENUE

1. Admitted this is a civil action asserted by Plaintiff involving claims purportedly implicating an amount in controversy exceeding $75,000, excluding interest and costs and that Plaintiff and Defendant are citizens of different states. Admitted that the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

2. Admitted Compass has transacted business in this District. Admitted that Compass has at times conducted business with Plaintiff in the District. Compass lacks knowledge and information sufficient to form a belief as to whether the specific transactions at issue in this litigation were conducted while Plaintiff was in the District. Admitted that the Court has personal jurisdiction over Compass and that venue is proper in the District.

# THE PARTIES

3. Compass lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 3 and on that basis denies them.

4. Admitted Compass is a Delaware corporation. Denied Compass's principal place of business is Delaware.

# BACKGROUND OF THE ACTION

5. Admitted Bitcoin mining is the process of applying computing power to solving complex cryptographic problems to produce or "mint" new bitcoins, which are assigned to the solver. Compass lacks knowledge and information

sufficient to form a belief as to the remainder of the allegations in Paragraph 5 and on that basis denies them.

6.  Admitted that computer systems for bitcoin mining are often purpose-built to efficiently solve cryptographic problems, and that these machines are sometimes referred to as ASIC miners. Admitted that Paragraph 6 displays a photograph of a bitcoin mining system at one point offered by Compass. The remaining allegations in Paragraph 6 are denied.

7.  Admitted that Compass is a corporation and that sells cryptocurrency mining equipment and hosting services. Admitted that Compass's hosting services often involve the installation and oversight of customer hardware. Admitted that Compass contracts with third-party hosting facilities around the world to provide hosting services to its customers. Admitted that Paragraph 7 accurately quotes the Compass website. All other allegations in Paragraph 7 are denied.

8.  Admit bitcoin mining is energy intensive and whether bitcoin mining is profitable may depend on many factors, including but not limited to costs, including the price of energy. Compass lacks knowledge and information sufficient to form a belief as to the remainder of the allegations in Paragraph 8 and on that basis denies them.

9.  Admit that a significant portion of Compass's business involves hosting services, which in turn involves overseeing and / or managing the operation of customers' cryptocurrency mining equipment. Denied that Compass is always the physical "custodian" of customers' miners. Admitted that at times, Compass bundles the sale of cryptocurrency mining equipment with hosting plans, which include provision of hosting services in exchange for hosting fees. Denied that Compass always does so.  Admitted that Compass's hosting plans typically charge a monthly hosting fee in exchange for energy, management, and installation. Denied that all hosting plans are the same. Admitted that hosting plans

can provide Compass's customers with some amount of certainty, in the form of fixed monthly hosting charges. Denied that Compass's hosting plans can possibly account for all "economic variables pertinent to bitcoin mining" or other risks and uncertainties.

10. Admitted that Compass offered the hosting plan referenced in Paragraph 10 in December 2021. Denied that the hosting rate in this plan was fixed. Compass lacks knowledge or information concerning whether mining would be profitable for a given customer and on that basis, denies such allegations.

11. Admitted Compass sometimes contracts with third-party hosting facilities to physically host Compass's customers' miners. Compass denies the remaining allegations in Paragraph 11.

12. Admitted.

13. Denied.

14. Admitted that for some of its customers, Compass procures miners, installs them at a data center, and oversees their management and operation on behalf of the customer, who derives revenue from their operation. Compass denies the remaining allegations in Paragraph 14.

## FACTUAL ALLEGATIONS

15. Admitted.

16. Admitted that between May 2021 and January 2022, Veribi purchased 140 miners from Compass for approximately $1.5 million dollars, and contracted with Compass to host those miners at BitRiver's facilities in Russia. Denied that Compass made any statements, promises, or representations to Veribi contrary to the terms set forth in is Hosting Services Agreement. Compass lacks knowledge and information sufficient to form a belief as to the remainder of the allegations in Paragraph 16 and on that basis denies them.

17. Denied that Compass made any statements, promises, or representations to Veribi contrary to the terms set forth in is Hosting Service Agreement. Denied that the invoice attached at Exhibit D is "representative." Compass lacks knowledge and information sufficient to form a belief as to the allegations in Paragraph 17 and on that basis denies them.

18. Admitted that Russia ultimately invaded Ukraine in February 2022. Compass lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 18, and on that basis, denies them.

19. Admitted that Compass sent the communication attached as Exhibit E to the Complaint to some of its customers. Denied that the Complaint quotes all relevant text from that email.

20. Admitted that on or around February 26, 2022, new sanctions on Russian concerning Russia's central bank were announced by the US government. Compass denies the remaining allegations in Paragraph 20.

21. Admitted that Compass issued the statement authored by Mr. Gibbs attached as Exhibit F to the Complaint. Denied that the Complaint quotes all relevant portions of that statement.

22. Admitted.

23. Admitted that Executive Order 14024 prohibits dealings with sanctioned entities, including the transfer of sanctioned property. Compass denies the remaining allegations in Paragraph 23.

24. Admitted that Compass sent the communication attached as Exhibit H to the Complaint. Admitted that Compass terminated its contractual relationship and business dealings with BitRiver as required by OFAC sanctions on or about April 21, 2022.

25. Exhibit H speaks for itself. Admitted that Compass has not retrieved, sold, transferred, or otherwise liquidated any customers' miners from the BitRiver

1  facility since BitRiver was sanctioned. Admitted that Compass did not offer to
2  "return or repatriate" Veribi's miners located at the BitRiver facility after
3  imposition of the OFAC sanctions. Denied that Compass made any offer to Veribi
4  or other customers "under duress." Compass denies the remaining allegations in
5  Paragraph 25.

6      26.    Denied the Compass is the owner of its customers' miners or that
7  Compass is the only person that can take action on its customers' behalf. Compass
8  lacks knowledge and information sufficient to form a belief as to the allegations in
9  Paragraph 26 and on that basis denies them.

10     27.    Exhibit J speaks for itself. Admitted the Complaint accurately quotes
11 from Exhibit J. Compass lacks knowledge and information sufficient to form a
12 belief as the remaining allegations in Paragraph 27 and on that basis, denies them.

13     28.    Denied.
14     29.    Denied.
15     30.    Denied.
16     31.    Denied.

17     32.    Denied that Veribi is entitled to any relief. Compass lacks knowledge
18 and information sufficient to form a belief as the remaining allegations in
19 Paragraph 32, and on that basis denies them.

## FIRST CAUSE OF ACTION

**(Breach of Contract)**

22     33.    Compass incorporates by reference its responses to each of the
23 foregoing paragraphs.

24     34.    Admitted Veribi paid Compass approximately $1.5 million for
25 Russian miners and hosting services. Admitted that hosting services included
26 installation and management of the miners. Denied that there exists a binding

1  contractual obligation for Compass to provide ongoing services to Veribi in light
2  of the OFAC sanctions.

3    35.  Denied.
4    36.  Denied.
5    37.  Admitted that Compass terminated its contractual and business
6  relationship with BitRiver as a result of the sanctions, and that as such, Veribi's
7  miners remained with BitRiver, at least of the date of this termination. Compass
8  denies the remaining allegations in Paragraph 37.
9    38.  Admitted that Compass has not effected the sale, transfer, or
10 repatriation of retrieved Veribi's miners from the BitRiver facility since BitRiver
11 was sanctioned. Admitted that Veribi has requested that Compass do so. Compass
12 denies the remaining allegations in Paragraph 38.
13   39.  Denied.
14   40.  Denied.
15   41.  Denied.
16   42.  Denied.

## SECOND CAUSE OF ACTION

### (Negligence)

19   43.  Compass incorporates by reference its responses to each of the
20 foregoing paragraphs.
21   44.  Denied.
22   45.  Denied.
23   46.  Denied.
24   47.  Denied.

## THIRD CAUSE OF ACTION

### (Conversion)

48. Compass incorporates by reference its responses to each of the foregoing paragraphs.

49. Admitted.

50. Admitted.

51. Admitted that on or about April 21, 2022, Compass terminated its contract and relationship with BitRiver and ceased its oversight of the operation of Veribi's miners at BitRiver facilities. Admitted that these miners remained in Russia as of the date of termination. Compass denies the remaining allegations in Paragraph 51.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

## FOURTH CAUSE OF ACTION

### (Fraud)

56. Compass incorporates by reference its responses to each of the foregoing paragraphs.

57. This claim has been dismissed. To the extent an answer is required, denied.

58. This claim has been dismissed. To the extent an answer is required, denied.

59. This claim has been dismissed. To the extent an answer is required, denied.

60. This claim has been dismissed. To the extent an answer is required, denied.

61. This claim has been dismissed. To the extent an answer is required, denied.

62. This claim has been dismissed. To the extent an answer is required, denied.

63. This claim has been dismissed. To the extent an answer is required, denied.

64. This claim has been dismissed. To the extent an answer is required, denied.

65. This claim has been dismissed. To the extent an answer is required, denied.

## **VERIBI'S PRAYER FOR RELIEF**

Compass denies all factual allegations in Veribi's Prayer for Relief and denies that Veribi is entitled to any relief it seeks in sub-paragraphs (a)–(g).

## AFFIRMATIVE DEFENSES

Without admitting any of the allegations in the Complaint and without admitting or suggesting that Compass bears the burden of proof on any of the following issues or defenses, and subject to its right to assert additional defenses, Compass asserts the following defenses to the claims asserted in the Complaint. Nothing in this Answer is intended to waive, or should be construed as waiving, any defense that can be raised by Compass to any of Plaintiff's claims in the future. Compass hereby gives notice that it intends to rely upon, and thereby reserves its right to assert, other defenses when and if appropriate based on further discovery and other developments in the litigation.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim or cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part by the economic loss rule.

### THIRD AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part by its own assumption of risk, including but not limited to the risk of war, government action, or other geopolitical events could affect its Miners.

### FOURTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part due to illegality. The sanctions at issue preclude the relief Veribi seeks and Compass's purported contractual duties to Veribi are excused due to the doctrine of illegality.

### FIFTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part because Compass's purported contractual duties to Veribi are excused due to the doctrine of impossibility.

## SIXTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part because Compass's purported contractual duties to Veribi are excused due to a force majeure event.

## SEVENTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part because the terms and conditions governing the parties' relationship preclude the remedies Veribi seeks.

## EIGHTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part because of undue hardship and burden.

## NINTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part because Veribi failed to mitigate its damages including, by way of example, filing for its own license to retrieve its Miners or filing a declaratory judgment action against the Office of Foreign Asset Control ("OFAC").

## TENTH AFFIRMATIVE DEFENSE

Veribi's claims are barred in whole or in part because Veribi's contract(s) with Compass for hosting of miners at BitRiver facilities, as alleged by Veribi, is unenforceable under the statute of frauds.

# COUNTERCLAIMS

Counterclaim Plaintiff Compass Mining Inc. ("Compass") brings the following counterclaims against Counterclaim Defendant Veribi LLC ("Veribi").

## INTRODUCTION

1. Veribi chose to host some of its cryptocurrency miners purchased from Compass in Russia, and kept them there even as tensions mounted between Russia and Ukraine. To the surprise of everyone, in April 2022, the United States Treasury's Office of Foreign Asset Control ("OFAC") listed the third-party owner of the Compass hosting facility Veribi had chosen, BitRiver AG ("BitRiver") on the Specially Designated Nationals ("SDN") list, a government action that rendered the receipt of any goods, services, or anything of value from BitRiver a federal crime. In order to comply with these stringent sanctions, Compass immediately terminated its relationship with BitRiver. Compass brings these Counterclaims to establish definitively that its conduct was necessary and proper under the OFAC sanctions, and that any contractual obligation it had to continue hosting or seek the return of Veribi's miners with BitRiver has been rendered illegal, impossible, and void by the actions of the United States government.

## PARTIES

2. Compass is a Delaware corporation with its principal place of business in Colorado.

3. Upon information and belief, Veribi is a Nevada limited liability company with its principal place of business in Nevada.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. This Court also has subject matter

1. jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201–02 because Compass seeks declaratory relief related to a federal question.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the events giving rise to Compass's claims occurred in this District.

6. This Court has personal jurisdiction over Veribi because Veribi regularly conducts business in this District.

## FACTUAL ALLEGATIONS

**Compass's Business**

7. Compass provides its customers with the necessary means to mine cryptocurrency. This includes selling hardware that mines cryptocurrency ("miners") and providing hosting services for those miners, where Compass hosts customers' miners at facilities and provides power and other support for the miners.

8. While Compass provides equipment and hosting services, its customers manage their own mining activities and collect all proceeds from such activities.

9. Many customers purchase Compass's goods and services directly through its website, https://compassmining.io/.

10. Some customers, particularly those placing a larger volume of orders, are invoiced directly.

11. In all cases, Compass applies terms and conditions set forth in its Hosting Service Agreement, and seeks its customers' agreement to those terms.

**Parties' Course of Dealing**

12. Veribi is a relatively large customer of Compass and has purchased many miners from Compass in the last several years.

13. Veribi made these purchases through its agent, John Vanhara.

14. Veribi has made purchases from Compass through the Compass website and at times, directly through Compass sales representatives.

15. Veribi made at least two purchases of miners from Compass online through the Compass website.

16. First, on or about March 31, 2021, Veribi purchased 10 miners through the Compass website.

17. Second, on or about July 30, 2021, Veribi purchased 5 miners through the Compass website.

18. Through its online purchases from the Compass website, Veribi (acting through Mr. Vanhara) expressly agreed to the terms set forth in Compass's Hosting Service Agreement.

19. Specifically, in order to complete its online purchases from Compass, Veribi (acting through Mr. Vanhara) was required to scroll through the Master Hosting Service Agreement, click: "ok, I agree," and then check a box affirming: "I have read and agree to the Compass Hosting Service Agreement."

20. Thus, through its Compass website transactions, Veribi had actual knowledge of the existence of the Hosting Service Agreement as early as March 31, 2021.

21. A true and correct copy of the version of the Hosting Agreement in place as of March 31, 2021 is attached as **Exhibit A.**

22. Similarly, through its Compass website transactions, Veribi had actual knowledge of the terms of the Compass Hosting Service Agreement as of July 30, 2021.

23. A true and correct copy of the version of the Hosting Agreement in place as of July 30, 2021 is attached as **Exhibit B.**

**The BitRiver Miners**

24. Veribi has chosen to host its miners at Compass hosting facilities throughout the world.

25. Veribi chose to host some of its miners at Compass hosting facilities in Russia operated by BitRiver (the "BitRiver Miners").

26. Veribi purchased approximately 140 BitRiver Miners from Compass between May 2021 and January 2022. The invoice numbers and dates of these purchases are summarized below:

| Invoice Number | Invoice Date |
|---|---|
| INV-165 | May 18, 2021 |
| INV-231 | June 9, 2021 |
| INV-424 | Aug. 5, 2021 |
| INV-1994 | Jan. 14, 2022 |
| INV-2204 | Jan. 26, 2022 |

27. Veribi paid each of the five invoices listed above.

28. The invoices for the BitRiver Miners issued to Veribi on June 9, 2021, August 5, 2021, January 14, 2022, and January 26, 2022 each state: "By paying for this invoice and paying the security deposit, you are agreeing to the Compass Mining Hosting Terms and Conditions. The Terms and Conditions are available on request."

29. The Hosting Terms and Conditions referenced in the above invoices are contained in Compass's Hosting Service Agreement.

30. Compass has uniformly applied the terms of its Hosting Service Agreement to Veribi's transactions.

31. The Compass Hosting Service Agreement has at all relevant times contained a force majeure provision.

32. The Compass Hosting Service Agreement has at all relevant times disclaimed any agency relationship between the Parties.

33. The Compass Hosting Service Agreement has at all relevant times disclaimed any fiduciary relationship between the Parties.

34. In the alternative, and to the extent the Court finds that the Compass Hosting Service Agreement did not apply to BitRiver Miners, Compass disclaimed liability for force majeure events.

35. In the alternative, and to the extent the Court finds that the Compass Hosting Service Agreement did not apply to BitRiver Miners, Compass disclaimed any agency relationship with Veribi.

36. In the alternative, and to the extent the Court finds that the Compass Hosting Service Agreement did not apply to BitRiver Miners, Compass disclaimed any fiduciary relationship with Veribi.

**The OFAC Sanctions**

37. Veribi placed multiple orders for Miners and Hosting Services to be placed at the BitRiver facilities in June 2021, August 2021, and January 2022.

38. During this time, the Russia-Ukraine conflict escalated.

39. In February 2022, Russia invaded Ukraine.

40. On April 20, 2022, BitRiver was designated a Specially Designated National ("SDN) under Executive Order 14024. *See* OFAC Press Release, *U.S. Treasury Designates Facilitators of Russian Sanctions Evasion*, April 20, 2022, https://home.treasury.gov/news/press-releases/jy0731 (attached as **Exhibit C**).

41. This designation was unexpected for both Parties.

42. Executive Order 14024 broadly prohibits "(a) the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order; and (b) the receipt of any contribution or provision of funds, goods, or

-15-

services from any such person." 86 Fed. Reg. at 20250–51; 31 C.F.R. Pt. 587, App. A § 2 (attached as **Exhibit D**).

43. Compass immediately terminated its contract with BitRiver and ceased dealing with BitRiver in order to comply with the OFAC sanctions.

44. In an attempt to assist its affected customers without violating the OFAC sanctions, Compass refunded the hosting deposits paid by all affected customers, including Veribi.

45. Compass has not retrieved any customers' miners from BitRiver since BitRiver was placed on OFAC's Specially Designated Nationals list because such action would violate federal sanctions law.

46. Compass has not demanded the return of any customers' miners from BitRiver since BitRiver was placed on OFAC's Specially Designated Nationals list because such action would violate federal sanctions law.

47. Veribi has now demanded the Compass take these actions.

48. Veribi has also filed suit seeking damages and to force Compass to take these actions.

49. Veribi has also at times demanded that Compass take legal action against BitRiver and/or the U.S. Government to retrieve Veribi's miners.

## First Claim for Relief:
## Declaratory Judgment

50. Compass realleges and incorporates all prior paragraphs of its Counterclaims as if alleged herein.

51. Compass seeks a declaration, pursuant to the Declaratory Judgment Act, that its actions with respect to Veribi's BitRiver Miners were necessary and proper in light of the OFAC sanctions imposed on BitRiver, and that Compass is not obligated to perform the actions Veribi demands nor liable for refusing to do so.

52. There is a substantial controversy between parties, with adverse legal interests, of such immediacy and existence so to warrant a declaratory judgment.

53. Specifically, the Parties disagree regarding, among other things, the meaning of the OFAC sanctions imposed on BitRiver, the legality of the actions Veribi demands that Compass take, Compass's obligation (if any) to comply with Veribi's demands (whether in contract or in tort), and Compass's liability (if any) for refusing to accede to Veribi's demands.

54. The Court should issue a declaration pursuant to 28 U.S.C. § 2201 that:

    a. The OFAC sanctions imposed on BitRiver preclude Compass from retrieving Veribi's BitRiver Miners from BitRiver or demanding the same from BitRiver;

    b. Compass's actions vis-à-vis the BitRiver Miners were reasonable under the circumstances;

    c. Compass has no obligation to comply with Veribi's demands; and

    d. and Compass is not liable for refusing to accede to Veribi's demands.

## PRAYER FOR RELIEF

WHEREFORE, Compass demands judgment be entered in its favor and that this Court:

    A. Declare that the OFAC sanctions imposed on BitRiver preclude Compass from retrieving Veribi's BitRiver Miners from BitRiver or demanding the same from BitRiver;

    B. Declare that Compass's actions vis-à-vis the BitRiver Miners were reasonable under the circumstances;

    C. Declare that Compass has no obligation to comply with Veribi's demands for Compass to retrieve the BitRiver Miners, demand the return of the BitRiver Miners, or take legal action to do the same.

D. Award costs and attorney's fees as the Court may deem equitable and just; and

E. Award Compass any other relief the Court deems just and equitable under the circumstances.

**JURY TRIAL DEMAND**

Compass demands a trial by jury on all claims so triable.

Dated:  May 4, 2023                               ARMSTRONG TEASDALE LLP

                                          By:   /s/ *Alec P. Harris*
                                                Attorneys for Defendant Compass Mining, Inc.