# EXHIBIT A

<u>COMPASS CLICK-WRAP MASTER SERVICES AGREEMENT</u>

**PLEASE CAREFULLY READ THE FOLLOWING MASTER SERVICE AGREEMENT. IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU. BY CLICKING ON THE "ACCEPT" BUTTON, YOU ARE CONSENTING TO BE BOUND BY AND ARE BECOMING A PARTY TO THIS AGREEMENT. IF YOU DO NOT AGREE TO ALL OF THE TERMS OF THIS AGREEMENT, CLICK THE "DO NOT ACCEPT" BUTTON OR LEAVE THE WEBSITE.**

**THE LATEST VERSION OF THIS AGREEMENT WILL BE POSTED ON THIS WEBSITE, AND YOU SHOULD REVIEW THESE TERMS PRIOR TO PURCHASING ANY SERVICES THAT ARE AVAILABLE THROUGH THIS WEBSITE. YOUR CONTINUED USE OF THIS WEBSITE AND THE SERVICES AFTER A POSTED CHANGE IN THESE TERMS WILL CONSTITUTE YOUR ACCEPTANCE OF AND AGREEMENT TO SUCH CHANGES.**

**"You" or "Your" means the person or company who is using the Services provided hereunder. "We", "Our" and "Us" means HASHR8, Inc. d/b/a Compass.**

**WHEREAS**, We operate an online platform (" **Platform**") to provide computer and server colocation and cryptocurrency mining hosting services ("**Services** ").

**WHEREAS**, You desire to utilize Our Services; and

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. **SERVICES**
    1. This Agreement provides general terms applicable to Our provision of certain Services in a data center owned, leased, operated or reserved by Us or Our partners (" **Hosting Facility**") through the Platform.
    2. You have, or shall promptly upon the Effective Date, deliver its mining equipment ("**Client Equipment**") to Our designated address. We have the full discretion to accept or reject any Client Equipment. Upon receipt of Client Equipment, We shall have functioning Client Equipment installed in the Hosting Facility and make commercially reasonable efforts to begin providing Services on the scheduled service commencement date; provided however, that We shall not be responsible for any delay in the date Services begin for any reason, including delay in receipt of Client Equipment, Force Majeure Events (defined below), lack of available rackspace, or electrical or network connectivity problems.
    3. We and operators of the Hosting Facility shall be entitled to perform maintenance actions as We deem necessary or desirable with respect to the Hosting Facility and maintain network (" **Maintenance**"). You acknowledge and agree that performance of Maintenance may cause the network to be temporarily inaccessible and the Services may temporarily become unavailable. We will use commercially reasonable efforts to conduct such

Maintenance in a manner so as to avoid or minimize the unavailability of the Services. If a scheduled Maintenance is expected to interrupt the availability of Services, We may give You notice by e-mail prior to conducting such Maintenance, identifying the time and anticipated duration.

4. We will use commercially reasonable efforts to make the Services available to You ninety five percent (95%) of the time each month, except in the event of Maintenance, Client Equipment failure, or Force Majeure Events.

5. You shall be solely responsible for costs and expenses regarding the installation and removal of Client Equipment and all tariffs, taxes, shipping costs or other expenses associated with shipping, importing, exporting, transporting and returning Client Equipment from and to You. Upon any expiration or termination of the Service, We will provide You with a written notice, which may be by email, of the date when Client Equipment is ready to be removed from the Hosting Facility.

6. You shall provide all end-user equipment, software and all other telecommunications, Internet access and related equipment that You deem necessary or desirable for Your receipt of Digital Assets (defined below). You shall be solely responsible for installation, maintenance, configuration, connection, inter-connection, and all other support in connection with all equipment and personal property to be used by You to access the Platform and receive and store Digital Assets. You shall keep Your Digital Assets, including Your private key, secure. We do not provide, and You shall hold Us harmless from, user or access security with respect to any of Client Equipment or the Hosting Facility, and shall be solely responsible for user access security and network access to Client Equipment. We do not provide any service to detect or identify any security breach of Client Equipment or the Hosting Facility. We do not provide any tests employing tools and techniques intended to gain unauthorized access to Client Equipment or Your personal property.

7. You may be required to purchase from Us other equipment, accessories, software, or hardware, such as power cords, to ensure compliance with the technical and fire safety norms at the Hosting Facility.

8. You shall at all times comply with the laws, regulations and rules of any applicable governmental or regulatory authority, including without limitation, Money Service Business regulations under the Financial Crimes Enforcement Network (" **FinCEN**"); state money transmission laws; laws, regulations and rules of relevant tax authorities; applicable regulations and guidance set forth by FinCEN; the Bank Secrecy Act of 1970; the USA PATRIOT Act of 2001; Anti-Money Laundry and Counter-Terrorism Financing Act 2006 ("**AML/CTF** ") provisions as mandated by the U.S. federal laws and any other rules and regulations regarding AML/CTF; issuance from the Office of Foreign Assets Control; the National Futures Association; the Financial Industry Regulatory Authority; and the Commodity Exchange Act.

9. You shall at all times use and maintain the Client Equipment and Hosting Facility in a safe manner and according to Our then applicable Terms of Use.

10. You shall be responsible of obtaining any licenses, permits, consents, or approvals from any federal, state or local government, which may be necessary to install, possess, own, or operates the Client Equipment.

2. **PAYMENT TERMS AND TAXES**

1. In consideration of the Services provided hereunder, We will be entitled to monthly fees calculated based on the actual power consumption of Client Equipment and the location of the Hosting Facility that You elect ("**Service Fee**"). You shall pay the total projected monthly fees for the upcoming month ("**Projected Service Fees**") in advance and in no case later than the 24th date of the then current month. If Your actual power consumption for the upcoming month is higher than the Projected Service Fees, an invoice will be issued and You agree and undertake to promptly pay the differences within five (5) business days of receiving such invoice. If the actual power consumption is lower than the Projected Service Fees, the balance shall be credited to the Projected Service Fee for the next month. Fees not disputed within forty-five (45) days of payment or due date are conclusively deemed accurate.

2. Acceptable forms of payment include credit card, debit card, and cryptocurrency as We designate from time to time. For credit card and debit card payments, We will keep Your account information on file and set up recurring billings for Service Fees, unless You expressly opt out of the recurring billings. Payments of Projected Service Fees for the upcoming month will be automatically deducted from Your account on or before the 24th of each month. If You elect to pay with cryptocurrency, We will invoice You for the Projected Service Fees no later than the 15th date of each month for the upcoming month. You shall deliver the designated cryptocurrency in the amount equals to the invoice due amount into the Our digital wallet by 5:00 p.m. (Central Standard Time) on the 24th date of the same month. The exchange rate shall be the last traded price for such cryptocurrency to USD exchange transaction at the time of payment.

3. Upon the Effective Date, You shall deliver to Us, or We will deduct from your account if you do not opt out of the automatic bill payment, a deposit in the amount equals to two (2) months of the Projected Service Fees ("**Deposit**"). If You fail to pay any Service Fees, We may use, apply or retain all or any portion of the Deposit for the payment of any amount due or to reimburse or compensate Us for any liability, expenses, loss or damages which We may suffer or incur by reason thereof. If We use or apply all or any portion of the Deposit, You shall within ten (10) days after written request therefor deposit money with Us sufficient to restore the Deposit to the full amount required by this Agreement. Within thirty (30) days after the expiration or termination of this Agreement, unless We elect to apply Deposit to unpaid Service Fees, We will return the portion of the Deposit not used or applied. No part of the Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any Service Fees to be paid by You under this Agreement.

4. Time is of the essence in the payment of each and every invoice. For any overdue invoices, We may (i) terminate the Service, (ii) seize and dispose of or sell the Client Equipment and use the proceeds to satisfy any amounts due; or (iii) turn off Client Equipment, and/or disable Your access to accounts until all fees due to Us are paid in full. Without limiting the foregoing, We reserve the right to charge a daily penalty at one percent (1%) of the overdue amount until the payment is settled and take possession of the Client Equipment and redirect mining proceeds to Our wallet.

    5. We reserve the right to modify Our rates upon a material increase in any of Our operating costs, including without limitation, power rates, leasing rates, tax rates or increased regulatory compliance costs.

3. **TERM, TERMINATION, MODIFICATION AND SUSPENSION**

    1. Unless terminated sooner as provided in this Agreement, the initial term of this Agreement shall begin on the Effective Date and expire one (1) year thereafter (the " **Initial Term**"). Upon expiration of the Initial term, this Agreement will renew automatically for an additional year (the "**Renewal Term**", together with the Initial Term, "**Term**") unless either party provides written notice to the other party of its desire to avoid the Renewal Term at least sixty (60) days in advance of the conclusion of the Initial Term.

    2. Either party may terminate the Agreement for convenience by providing the other party with 60-day written notice.

    3. We may terminate this Agreement for cause immediately following written notice if You: (i) fail to make any payments due pursuant to this Agreement; (ii) violate, or fail to perform or fulfill any covenant or provision of this Agreement, and such breach is not cured within thirty (30) days after notification from Us; or (iii) enter into bankruptcy, financial failure or insolvency, sales or merger with another person, corporation or entity, unless approval in advance by Us.

    4. Without limiting the foregoing, either party may terminate or suspend all or a portion of the Agreement if necessary to be in compliance with applicable law, rules, regulations, administrative or judicial orders or decree. The terminating party will use commercially reasonable efforts to notify the other party, which may be via email or telephone, of such suspension. The parties agree that they will have no liability whatsoever to the other for any damage, loss, expense or cost as a result of such termination or suspension.

    5. Upon termination or expiration of this Agreement, in the event of Your default, You agree to immediately pay to Us all amounts then owed. If You fail to make such payments, We shall have the right to (i) sell or retain possession of; (ii) reconfigure for Our use, or (iii) remove and store at Your expense, all or any portion of Client Equipment without any costs, obligation or liability by Us.

    6. Upon Your request upon the expiration or termination of this Agreement, We will return any and all Client Equipment, unless You are in default of payment. Fees, handling costs and risk of loss during shipping shall be borne by You. If You do not provide return directions within fifteen (15) days of termination or expiration of this Agreement, We shall be entitled to dispose of Client Equipment. We will not be responsible for any damage or operation deficiency of Client Equipment and We will not repair or reimburse You in any form. Upon the termination of the Agreement for any reason, We will permanently delete Your personal information from any and all storage devices.

4. **SECURITY INTEREST**

YOU HEREBY GRANT US A SECURITY INTEREST IN ALL CLIENT EQUIPMENT IN OUR POSSESSION, NOW OR AT ANY TIME HEREAFTER, IN ORDER TO SECURE THE TIMELY PERFORMANCE OF THIS AGREEMENT BY YOU AND SECURE THE PAYMENT OF ALL INVOICES, CHARGES AND COSTS. FURTHERMORE, YOU GRANT US A

SECURITY INTEREST IN ALL CLIENT EQUIPMENT FOR THE PAYMENT OF ENGINEERING WORK, LABOR OR OTHER CHARGES THAT ARE DUE AND UNPAID BY YOU.

1. **WARRANTIES, LIMITATION OF LIABILITY, INDEMNITY**
   1. Each party represents, warrants, and covenants that (i) it has full legal capacity, right, power and authority to execute and perform its obligations under this Agreement; and (ii) its performance of obligations hereunder will not violate any applicable laws or require the consent of any third party. Without limiting the foregoing, You further represent, warrant and covenant that (i) You have clear title, free and clear of all security interests or liens, to Client Equipment, including the legal right to use, operate and locate the Client Equipment; and (ii) its receipt of Digital Assets (defined below) will not violate any applicable laws or require the consent of any third party.
   2. You represent and warrant that: (i) the information You have provided for the purpose of establishing an account with Us is accurate; (ii) You will not use the Service for the development, design, manufacture, production, stockpiling, or use of nuclear, chemical or biological weapons, weapons of mass destruction, or missiles, in a country listed in Country Groups D: 4 and D:3, as set forth in Supplement No. 1 to Part 740 of the United States Export Administration Regulations, (iii) You shall not provide administrative access to the Service to any person (including any natural person or government or private entity) that is located in or is a national of any embargoed or highly restricted country under United States export regulations, which include, as of December 2007, Cuba, Iran, and Sudan, (iv) You are not on the United States Department of Treasury, Office of Foreign Asset Controls list of Specially Designated Nationals and Blocked Persons;
   3. You represent, warrant and covenant that: (i) any information and material, whether submitted during the registration process or thereafter throughout the use of Platform, is true, accurate, current and complete, and (ii) You will maintain and promptly amend all information and material to keep it true, accurate, current and complete. We reserve the right to, but shall not be required to actively monitor or exercise any editorial control whatsoever over the content of any message or material or information created, obtained or accessible through the Platform. We do not endorse, verify or otherwise certify the contents of any comments or other material or information created, submitted, posted, displayed or otherwise made by You or other users. You are solely responsible for the contents You post on the Platform and may be held legally liable or accountable for the content of its comments or other material or information posted on the Platform. We may monitor any and all communications through or with the Platform. You agree that We are not considered a "secure communications medium" for the purpose of the Electronic Communications Privacy Act of 1986, and that no expectation of privacy is thereby created.
   4. The security of Your account and any Digital Assets is solely Your responsibility. You shall notify Us if You suspect Your account or Digital Assets have been hacked, stolen, accessed without authorization, or otherwise compromised. If We suspect any security violations have occurred

related to Your account or Digital Assets, We may suspend access to Your
account and hardware pending resolution. We may cooperate with any
government or legal investigation regarding any aspect of the Services.
"**Digital Asset**" means any digital asset, cryptocurrency, virtual currency,
digital currency, or digital commodity, including, without limitation, Bitcoin and
Ethereum, which is based on the cryptographic protocol of a computer
network that may be (i) centralized or decentralized; (ii) closed or open-
source; and (iii) used as a medium of exchange and/or store of value.

5. We do not guarantee that Our Services will not be interrupted by outages or
   shortages of power which are planned or unplanned and outside of Our
   control, and We will not be liable for the foregoing. You are aware that We
   cannot guarantee the supply of electricity during the winter and peak hours of
   the day and that there is a possibility of voluntary or involuntary downtime,
   curtailment by Us or the energy provider, or outages or shortages of power of
   no more than 600 hours in a calendar year.

6. We do not own or control any Digital Assets and does not own or control the
   underlying software protocols of Digital Asset networks which govern the
   operation of any Digital Assets. We are not responsible for the operation of
   the underlying protocols, and make no guarantees regarding their security,
   functionality, or availability. In no event shall We be liable to You or anyone
   else for any loss or injury resulting directly or indirectly from any services
   provided by Us, including without limitation, any loss caused in whole or in
   part by any inaccuracies or incompleteness, delays, interruptions, errors or
   omissions, including without limitation, those arising from Our negligence
   beyond Our control in procuring, compiling, interpreting, computing, reporting
   or delivering the Services thereon or the information therein. In no vent shall
   We be liable for any decision made or action taken by You in reliance on, or
   in connection with the Services. This limitation of liability includes, without
   limitation, any damage or interruptions caused by any computer viruses,
   spyware, scamware, Trojan horses, worms, or malware that may affect Your
   computer or other equipment, or any phishing, spoofing, domain squatting, or
   other attacks, failure of mechanical or electronic equipment or communication
   lines, telephone or other interconnect problems, unauthorized access, theft,
   operator errors, strikes or other labor problems, or any Force Majeure Event.
   If this limitation of liability is deemed to conflict with any other section
   hereunder, this limitation supersedes the other section.

7. You understand and agree that the use of telecommunications and data
   communications networks and the Internet may not be secure and that
   connection to and transmission of data and information over the Internet and
   such facilities provide the opportunity for unauthorized access to wallets,
   computer systems, networks and all data stored herein. Information and data
   transmitted through the Internet or stored on any equipment through which
   Internet information is transmitted may not remain confidential and We do not
   make any representation or warranty regarding privacy, security, authenticity,
   and non-corruption or destruction of any such information. We do not warrant
   that the Services or Your use will be uninterrupted, error-free, or secure. We
   shall not be responsible for any adverse consequence or loss whatsoever to
   Your use of the Services or the Internet. Use of any information transmitted or

obtained by You from Us is at Your own risk. We are not responsible for the accuracy or quality of information obtained through its network, including as a result of failure of performance, error, omission, interruption, corruption, deletion, detect, delay in operation or transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites. We do not control the transmission, computer virus, communication line failure, theft or destruction or unauthorized access to, alteration of, or use of information or facilities, or malfunctioning of websites. We do not control the transmission or flow of data to or from Our network and other portions of the Internet, including the Digital Asset networks. Such transmissions and/or flow depend in part on the performance of telecommunications and/or Internet services provided or controlled by third Parties. At times, actions or inactions of such third Parties can impair or disrupt Us or Your connections to the Services. We do not represent or warrant that such events will not occur and host disclaims any and all liability resulting from or related to such acts or omissions.

8. WE MAKE NO WARRANTIES OR GUARANTEES RELATED TO THE AVAILABLITY OF SERVICE OR THE OPERATING TEMPERATURE OF THE DATA CENTER. THE SERVICE AND THE DATA CENTER PROVIDED BY US IS PROVIDED "AS IS". WE DO NOT PROVIDE MECHANICAL COOLING OR BACKUP POWER AND THE DATA CENTER IS SUBJECT TO SWINGS IN LOCAL TEMPERATURE, WIND, HUMIDITY, ETC. WE MAKE NO WARRANTY WHATSOEVER, INCLUDIGN ANY (I) WARRANTY OF MECHATABILITY; (II) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (III) WARRANTY AGAINST INTERFERENCE; OR (IV) PRICE OR LIQUIDITY OF ANY DIGITAL ASSET. WE DO NOT WARRANT THAT (I) THE SERVICE SHALL BE AVAILABLE 24/7 OR FREE FROM MINOR INTERUPTIONS; (II) THE SERVICE SHALL MEET YOUR REQUIREMENTS OTHER THAN AS SET OUT IN WRITTEN AGREEMENT BETWEEN THE PARTIES; (C) THE SERIVCE SHALL PROVIDE ANY FUNCTION NOT DESIGNATED IN WRITTEN AGREEMENT BETWEEN THE PARTIES.

9. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR (I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES; (IV) LOSS, INTERRUPTION OR USE OF DATA OR LOSS OF USE OF CLIENT EQUIPMENT; (V) ANY CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) COST OF COVER, ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT TO THE EXTENT THAT ANY SUCH LOSS OR DAMAGES ARISES OUT OF SUCH PARTY'S GROSS NEGLIGENCE, BAD FAITH OR WILLFUL MISCONDUCT. THE LIMITATIONS SET FORTH HEREUNDER WILL APPLY TO ALL CLAIMS AND CAUSES OF ACTION, REGARDLESS OF WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHER THEORY.

10. You agree to indemnity, defend and hold harmless Us and Our officers, managers, partners, members, agents, employees, affiliates, attorneys, heirs,

successors and assigns from any and all claims, demands, actions, suits, proceedings and all damages, judgments, liabilities, losses and expenses, including without limitation, reasonable attorney's fees (collectively "**Losses**"), arising from or in connection with (i) any legal, regulatory or governmental action against or including You; (ii) the maintenance or operation of Client Equipment; (iii) any Loss by any of You, Your officers, managers, partners, members; and (iv) any breach or nonperformance by You of any provision or covenants hereunder.

2. **CONFIDENTIALITY AND PRIVACY**

   1. Each party acknowledges that it and its employees or agents may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is proprietary to or confidential to the other party, including, without limitation, business plans, strategies, forecasts and projections and information about business structures, operations, systems, finances, assets, investments, investment strategies, software and other technology systems, and personnel, customers and suppliers (collectively, "**Confidential Information**"). Neither party may use nor copy any Confidential Information except to the limited extent necessary to perform its obligations under this Agreement and will not disclose any Confidential Information to any person or entity other than to its employees who have a need to know the Confidential Information or as otherwise expressly permitted by this Agreement. Each party shall use the same measures that it uses to protect its own most confidential and proprietary information to protect the Confidential Information, but in no event less than commercially reasonable measures.

   2. The restrictions on use of Confidential Information do not apply to information if it (i) is known to the receiving party prior to receipt from the disclosing party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (ii) becomes known (independently of disclosure by the disclosing party) to the receiving party directly or indirectly from a source other than one having an obligation of confidentiality to the disclosing party; (iii) becomes publicly known or otherwise ceases to be confidential, except through a breach of this Agreement by the receiving party; or (iv) is independently developed by the receiving party.

   3. Upon termination or expiration of this Agreement, or at any other time at the request of the other party, each party shall return to the other party, or destroy and delete, as applicable, all Confidential Information and any copies thereof in its possession or control.

   4. Neither party may use the other party's trademarks, service marks, trade names, copyrights, other intellectual property rights or other designations in any promotion, publication or press release without the prior written consent of the other party in each case, which consent shall not be unreasonably withheld.

   5. Except for the rights expressly granted herein, all rights, titles, and interests to any and all customer relationships, proprietary rights and intellectual property rights in Our data will remain with and be the exclusive property of Us.

   6. We warrant and represent that, We are complying and will fully comply with, all applicable privacy laws throughout the Term, and will take all reasonable

steps within Our power to ensure that Our employees, contractors and other customers comply with all applicable privacy laws.

3. **INSURANCE**

The Parties agree that We are not an insurer and Client Equipment is not covered by any insurance policy held by Us. You will be solely responsible to insure their equipment and property against all forms of damage. If You do not insure the Client Equipment, You will do so at Your sole risk.

1. **MISCELLANEOUS**
    1. <u>Notice</u>. Except where expressly provided in this Agreement, all notices, consents, or approvals required by this Agreement will only be in writing and sent by overnight courier, certified or registered mail, overnight delivery requiring a signature upon receipt, email, or delivery by hand to the parties at the respective addresses set forth on the first page of this Agreement. Notice is effective when received.
    2. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement, and supersedes and replaces all prior or contemporaneous discussions, negotiations, proposals, understandings, and agreements, written or oral, as well as any industry custom. Each party acknowledges that, in entering into this Agreement, it has not relied on, and shall have no right or remedy in respect of, any statement, representation, assurance or warranty other than as expressly set out in this Agreement. We may at any time revise the terms of this Agreement by updating these terms and by providing notice to You of that change.
    3. <u>Survival</u>. Any provision of this Agreement, which, by its nature, would survive termination or expiration of this Agreement, will survive any such termination or expiration, including, without limitation, those provisions concerning confidentiality, indemnification, and limitation of liability.
    4. <u>Subcontracting and Assignment</u>. Neither party may assign, delegate, or transfer this Agreement or any of its rights and obligations hereunder prior written consent of the other party. Any assignment or transfer in violation of this Agreement is void. Notwithstanding the foregoing, We may assign or transfer Our rights and obligations hereunder to any contractual service provider or data center who is in the business of cryptocurrency mining hosting services and capable of provision of the Service hereunder. Further, either party may assign or transfer its rights or obligations hereunder if such transfer occurs by operation of law under a bona fide merger, divestiture, consolidation, or reorganization, or to any purchaser of all or substantially all of the assets of the business of the assigning party, provided the assignee is bound by this Agreement, is financially able to complete its obligations, and is not a direct competitor of the non-assigning party. This Agreement will be binding upon and inure to the benefit of all permitted successors and assigns.
    5. <u>Injunctive Relief</u>. The parties acknowledge that the Confidentiality provision of this Agreement is reasonable in scope and duration and are not unduly restrictive. You further acknowledge that a breach of any of confidentiality obligation of this Agreement will render irreparable harm to Us, and that a

remedy at law for breach of the Agreement is inadequate, and that We shall therefore be entitled to seek any and all equitable relief, including, but not limited to, temporary and permanent injunctive relief, without the necessity of posting a bond, and to any other remedy that may be available under any applicable law or agreement between the parties. You acknowledge that an award of damages to Us does not preclude a court from ordering injunctive relief. Both damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies.

6. Relationship of the Parties. The parties are independent contractors. Nothing in this Agreement shall be deemed to create an agency, employment, partnership, fiduciary or joint venture relationship between the parties. Neither party has the power or authority as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever without the other's prior written consent.

7. Force Majeure. Neither party will be responsible nor in any way liable for any delays or failures in performance, except for payment of Service Fees under this Agreement, arising out of or relating to a Force Majeure Event. A " **Force Majeure Event**" is a failure by the other party to perform any of its obligations under this Agreement if such failure is caused by events or circumstances beyond its reasonable control, including, without limitation, acts of God, war, labor strike, terrorist act, fire, flood, earthquake, landslide, hurricane, typhoon, tsunami, volcanic eruption, inclement weather, health epidemic or any law, order, regulation or other action of any governing authority or agency. Notwithstanding the foregoing, in the event of such an occurrence, each party agrees to make a good faith effort to perform its obligations hereunder.

8. Governing Law. This Agreement and all claims arising out of or related to this Agreement are governed by and construed in accordance with the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Delaware. The jurisdiction is exclusively to the courts within the State of Delaware.

9. General. The rights and remedies provided for herein are cumulative and not exclusive of any rights or remedies that a party would otherwise have. There are no third-party beneficiaries to this Agreement. No waiver of any breach of any provision of this Agreement will constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver will be effective unless made in writing and signed by an authorized representative of the waiving party.