GUNDZIK GUNDZIK HEEGER LLP
Aaron C. Gundzik (State Bar No. 132137)
Aaron.gundzik@gghllp.com
14011 Ventura Blvd, Suite 206E
Sherman Oaks, CA 91423
Telephone: 818.290.7461
Facsimile: 818.918.2316

ARMSTRONG TEASDALE LLP
Alec P. Harris (*pro hac vice*)
Kathleen Guilfoyle (*pro hac vice*)
aharris@atllp.com
kguilfoyle@atllp.com
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone:   720.200.0676
Facsimile:   720.200.0679

Attorneys for Defendant
COMPASS MINING, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIBI, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>COMPASS MINING, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 2:22-CV-04537-MEMF-JPR<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>Hon. Jean. P. Rosenbluth<br><br>**DISCOVERY MATTER: JOINT DISCOVERY DISPUTE STIPULATION RE PROTECTIVE ORDER**<br><br>Motion Hearing: 9/28/2023, 10:00 a.m.<br><br>Fact Discovery Cutoff: 3/13/2024<br>Expert Discovery Cutoff: 4/17/2024<br><br>Pretrial Conference: 8/28/2024<br><br>Trial: 9/16/2024 |

# TABLE OF CONTENTS

COMPASS MINING INC.'S CONTENTIONS, POINTS, AND AUTHORITIES ................... 1

    I.      INTRODUCTION ......................................................................... 1

    II.     BACKGROUND ........................................................................... 2

          A.     The Parties Are Competitors ................................................ 2

          B.     Veribi's Discovery Implicates Confidential Information. .................. 3

          C.     The Parties Have Conferred at Length. ................................ 5

    III.    ARGUMENT ................................................................................ 6

          A.     There Is Good Cause for a Protective Order to Shield
               Confidential Information in this Litigation ............................. 6

          B.     There Is Good Cause for an Attorneys' Eyes Only
               Provision to Protect the Parties' Highly Sensitive
               Commercial Information ................................................... 10

    IV.    CONCLUSION ........................................................................... 12

PLAINTIFF VERIBI LLC'S CONTENTIONS, POINTS, AND AUTHORITIES ................ 13

    I.      INTRODUCTORY STATEMENT ............................................. 13

    II.     BACKGROUND ......................................................................... 14

    III.    ARGUMENT .............................................................................. 16

          A.     There is No Good Cause Either for Specific or
               Generalized Protective Order in This Case ........................... 16

    IV.    CONCLUSION ........................................................................... 20

Pursuant to Local Rule 37-2, Plaintiff Veribi, LLC ("Veribi"), and Defendant, Compass Mining, Inc. ("Compass") submit this joint stipulation to present to the Court their discovery dispute concerning Compass's motion for a protective order to govern confidential information in the case, in the form attached hereto as **Exhibit A.** Below are the contentions and points and authorities for each party.

## COMPASS MINING INC.'S CONTENTIONS, POINTS, AND AUTHORITIES

## I.    INTRODUCTION

This business dispute implicates confidential information, including Compass's confidential commercial information—such as financial records, sensitive hosting location information, and confidential business contracts—as well as the confidential information of Compass's customers—such as customers' contact information, bank account numbers, and serial numbers and MAC addresses for their equipment (which can be used to hijack that equipment). Indeed, discovery already served by Veribi seeks the production of all of the above categories of information.

The unprotected production of this confidential information would cause Compass and its customers particularized harm. The potential harm threatened by such disclosure is heightened by the fact that the Parties are competitors in a highly competitive and quickly evolving industry and might gain an unfair business advantage by exposure to confidential commercial information in discovery. To ensure that this information is adequately protected and to allow the parties to nonetheless access and exchange information relevant to the claims and defenses in this case, Compass proposes a standard protective order in the form attached hereto as **Exhibit A**, which is modeled after Magistrate Judge Rosenbluth's form protective order. This proposed order represents a standard approach to confidentiality in

commercial disputes, and will ensure that that the parties exchange and handle confidential information in an appropriate manner.

## II.   BACKGROUND

### A.   The Parties Are Competitors.

Compass provides its customers with the tools to mine cryptocurrency. Through Compass, customers can purchase cryptocurrency mining equipment ("miners") and pay Compass a hosting fee to host the miners at hosting facilities that manage running the miners, while customers collect the mining proceeds. *See* **Exhibit B**, Heller Decl. ¶¶ 6-7. The cryptocurrency mining industry is extremely competitive. One aspect of fierce competition is the "hosting rate," in other words, the amount per kilowatt hour that a miner pays to run a given miner. This amount is crucial to the success of a mining operation because the costs of mining are driven heavily by the cost of electricity. *Id.* ¶ 8. Through Compass's business model, customers pay a predictable, standard monthly fee for hosting in return for Compass's management of the fluctuating costs and physical monitoring of the miners. *Id.* ¶ 9. Compass often contracts with third party entities for use of their hosting facilities. *Id.* ¶ 10.

In 2021, Veribi contracted with Compass to purchase and have Compass host certain miners at Russian facilities operated by BitRiver AG ("BitRiver"), a foreign corporation. In April 2022, Compass terminated its relationship with BitRiver, after BitRiver was added to the U.S. Department of Treasury Office of Foreign Asset Control's Specially Designated Nationals list, making further dealings with BitRiver a federal crime. In June 2022, Veribi brought suit, seeking to force Compass to retrieve Veribi's miners in violation of sanctions. *See* ECF No. 1.

Veribi is not just a former customer of Compass's, it is also a current, direct competitor. *See* Ex. B, Heller Decl. ¶ 12. According to its website, Veribi offers "data centers development, collocation & hosting"; works on "[p]ower purchase

agreements," and "[o]peration of data center with remote and onsite monitoring, maintenance & support"; and is "engaged in Bitcoin mining." *See id.* ¶ 15, Ex. 1, Screenshots from Veribi.com. Specifically, "We [Veribi] buy specialized ASIC miners, analyze and test hosting centers with the best electricity prices around the world." *Id.* ¶ 17, Ex. 2, Archives of Veribi.com. This competition is not theoretical. For example, recent public announcements by Veribi's owner makes clear that Veribi is on the cusp of opening a large cryptocurrency mining hosting facility in Texas. *See id.* ¶ 19 & Exs. 4-8 (discussing and attaching LinkedIn posts).

**B.    Veribi's Discovery Implicates Confidential Information.**

Discovery in the present litigation began on June 28, 2023. *See* Rule 26(f) Report [ECF No. 49]; *see generally* **Exhibit C**, Civil Trial Order [ECF No. 53] (setting forth case schedule). On July 19, Veribi served its First Set of Requests for Production on Compass. *See* **Exhibit D**, Veribi's First Set of Requests for Production ("Veribi RFPs"). Already, Veribi's discovery requests seek confidential information related to Compass's business and its customers, including the following:

- The specific addresses of Compass's hosting locations (*see* Veribi RFPs 1, 2, 3, 4, 5, 8, 12, 16);

- Compass customers' personally identifying information, including names and addresses (*see* Veribi RFPs 1, 8, 12);

- Serial numbers and MAC addresses of Compass customers' cryptocurrency miners (*see* Veribi RFPs 1, 2, 4, 5, 12, 16);

- Financial records and information, including bank account numbers for both Compass and its customers (*see* Veribi RFPs 1, 2, 12, 13);

- The specific terms of Compass's hosting agreements with hosting centers, including contractual hosting rates (*see* Veribi RFPs 1, 2, 3, 4, 5, 12, 13);

- Compass's private, strategic business discussions and negotiation tactics with hosting providers (*see* Veribi RFPs 1, 2, 3, 6, 10, 11, 12, 15); and

- Compass's confidential personnel records (*see* Veribi RFP 11).

The text of Veribi's requests for production implicated above are as follows:[1]

- **RFP 1**: All documents or communications concerning Compass' hosting bitcoin miners in Russia with BitRiver or any affiliated entity, including the initiation, terms, and termination of any hosting relationship.

- **RFP 2**: All documents constituting communications between you and BitRiver or any affiliated entities or employees concerning the hosting of bitcoin miners with BitRiver or any affiliated entities.

- **RFP 3**: All documents or communications concerning any formal and informal agreements or contracts between you and BitRiver or any related entity concerning the hosting of any bitcoin miners with BitRiver or any related entity.

- **RFP 4**: All documents or communications between you and the Office of Foreign Assets Control ("OFAC") relating to sanctions on BitRiver or any affiliated entity, including any application for an OFAC license or communications concerning or constituting a license application.

- **RFP 5**: All documents comprising or related to any request for a license from OFAC relating to BitRiver or any affiliated entity, including any legal analysis related to submission or procurement of an OFAC license.

- **RFP 6**: Any legal analysis or memorandum concerning the implications of OFAC sanctions on Compass' relationship with BitRiver or any affiliated entity.

- **RFP 8**: All documents concerning any bitcoin miners purchased by Veribi for hosting in Russia, including documents concerning the procurement, import, taxation, or ownership of any bitcoin miners purchased by Veribi for hosting in Russia.

- **RFP 9**: Any communications between Compass and Veribi concerning bitcoin miners hosted in Russia.

---

[1] Compass does not concede that all of the Requests for Production seek discoverable or relevant information, nor that all requests impose a burden that is proportional to the needs of the case.

- **RFP 10**: All documents and communications relating to Whit Gibbs' March 3, 2022 statement, attached as Exhibit F to the Complaint, including any plan or plans Compass had or has to "move all machines out of Russia" or transfer miners away from the control of BitRiver.

- **RFP 11**: All documents and communications relating to Compass' April 21, 2022 decision to "terminate[d] its contractual relationship and business dealings with BitRiver," including any discussion, debate, communications, or analysis related to this decision.

- **RFP 12**: All documents concerning the purchase, import, or ownership status of miners hosted by Compass with BitRiver under Russian law or any formal or informal agreement between Compass and BitRiver concerning the ownership of miners hosted by Compass with BitRiver.

- **RFP 13**: Documents sufficient to show all payments made by Compass to BitRiver or any affiliated entity related to Veribi's miners, including the purchase, hosting, and management of Veribi's miners.

- **RFP 14**: All documents relating to the termination of Whit Gibbs as CEO of Compass.

- **RFP 15**: All documents relating to any strategy Compass has or had considered to remove, transfer, or sell miners hosted with BitRiver or to mitigate the losses of Compass customers who miners are or were hosted with BitRiver.

- **RFP 16**: All documents or information relating to the current operation or location of miners Compass hosted with BitRiver, including any information relating to any accounts for which the miners are currently producing bitcoins.

## C. The Parties Have Conferred at Length.

On June 28, 2023, counsel for both parties conducted the Rule 26(f) conference. [ECF No. 47]. During the conference, Compass raised the possibility of a stipulated protective order including an attorney's eyes only ("AEO") provision to protect commercially sensitive information. On July 25, 2023, Compass's counsel emailed Veribi's counsel a proposed draft of a stipulated protective order. *See* **Exhibit E**, Conferral Emails. On August 4, 2023, Counsel for Veribi responded that

Veribi was opposed to any stipulated protective order and proposed that the parties address confidential information on an ad hoc basis, with an agreement to treat agreed-upon documents as confidential on a "preliminary basis." *Id.* On August 8, 2023, Compass expressed a concern that the parties need a formal framework to handle and exchange confidential materials, with Court backing and clear procedures, rather than dealing with confidentiality on an ad hoc and informal basis. *Id.*

On August 14, 2023, Compass provided an updated proposed stipulated protective order, and outlined the Company's legal arguments supporting the proposed order in a formal discovery dispute letter, as required by Local Rule 37. *See* **Exhibit F**, Compass Discovery Dispute Letter. Counsel for both parties conferred again via telephone on August 16, 2023 to discuss the issue. During the meet and confer and in subsequent correspondence, Veribi stated that it remained opposed to any protective order, and suggested that the parties address confidentiality by attempting to agree up on redactions for documents containing confidential information. Compass responded that it would work in good faith to redact documents containing confidential information prior to public filing, but expressed its concerns that this process would be too time consuming for all documents to be produced in the case. Compass again suggested that the parties agree to a protective order to facilitate the free exchange of confidential documents and information between the parties during discovery, and proposed that the parties work in good faith agree upon redactions for select documents to be filed publicly with the Court, as necessary. Veribi declined this proposal.

## III. ARGUMENT

### A. There Is Good Cause for a Protective Order to Shield Confidential Information in this Litigation.

Federal Rule of Civil Procedure 26(c) allows a party to file a motion for a protective order in the court where the action is pending. Under this rule, courts may

"for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex. rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). A protective order may require, *inter alia*, "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Courts routinely grant motions for protective orders governing the handling and exchange of confidential information during the course of litigation, especially where disclosure implicates sensitive business information or exposes the litigants or third parties to the risk of theft. For example, in *DeHate v. Lowe's Home Centers, LLC*, No. ED CV 19-2505-JGB (SPx), 2020 WL 7084551 (C.D. Cal. Oct. 8, 2020), the plaintiff sought Lowe's surveillance and training materials, but refused to agree to a "standard protective order," and instead suggested an informal agreement for the plaintiff not to disseminate the information. *Id.* at *1. The defendant moved for a protective order and the Court granted the motion, concluding that good cause existed for such an order because the information sought in discovery contained "sensitive information, which if disclosed to the public could harm defendant's competitive advantage and lead to theft or other undesirable acts." *Id.* at *4. Similar examples abound. *See, e.g.*, *Ritter v. Superior Performers, Inc.*, No. 5:15-CV-02607, 2016 WL 4925162, at *1 (C.D. Cal. Sept. 14, 2016) (entering stipulated protective order and finding good cause for same).

Here, as in *DeHate* and *Ritter,* there is ample good cause for entry of a protective order to protect confidential information. As demonstrated by requests for production already served by Veribi in this case, discovery in this case may implicate (1) Compass's hosting facility locations, *see* Veribi RFPs 1-5, 8, 12, 16; (2) Compass

customers' personally identifying information, including names and addresses, *see* Veribi RFPs 1, 8, 12; (3) serial numbers and MAC addresses of Compass customers' cryptocurrency miners, *see* Veribi RFPs 1, 2, 4, 5, 12, 16; (4) financial records and information, including bank account numbers for both Compass and its customers, *see* Veribi RFPs 1, 2, 12, 13; (5) confidential business contracts and related business terms, *see* Veribi RFPs 1, 2, 3, 4, 5, 12, 13; and (6) Compass's confidential personnel records, *see* Veribi RFP 11.[2] As explained in the sworn declaration by Compass's co-CEO Thomas Heller, *see* Ex. B, Heller Decl., public disclosure of each of these categories of confidential information would impose particularized harm on Compass.

 *First*, the physical locations of any hosting facility should not be disclosed to the public due to the risk of theft. It is standard for hosting companies to not disclose the exact location of hosting sites, or other information about facilities, even to customers, since hosting facilities contain valuable assets often in rural areas and/or warehouses with limited security resources. *See* Ex. B., Heller Decl. ¶¶ 25–26. Compass follows this approach. *Id.* ¶ 27. These concerns justify a protective order. *See, e.g., DeHate,* 2020 WL 7084551 at *4 (granting protective order to avoid risk of theft).

 *Second*, disclosure of the personally identifying information of Compass's customers who are not parties to this dispute—including but not limited customer names and contact information—would put them at risk and would jeopardize Compass's reputation as a trusted service provider. *See* Ex. B, Heller Decl., ¶¶ 28–30; *see also Snitko v. United States*, No. 2:21-cv-04405-RGK-MARx, 2022 WL 3127922, at *5 (C.D. Cal. Mar. 30, 2022) (granting motion for protective order to protect the personal identifying information of third parties); *Est. of Sanchez v. Cnty. of Stanislaus*, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1959579, at *4 (E.D. Cal.

---

[2] Compass has objected to some of these requests for lack of relevance and overbreadth.

1  May 2, 2019) (noting discovery rules must balance the potential for abuse, including

2  "damage to the reputation and privacy of litigants and third parties").

3      *Third*, disclosure of the serial numbers and/or MAC addresses of customer

4  miners creates a risk that these machines could be hijacked or otherwise converted

5  by nefarious third parties, and would also jeopardize Compass's reputation. *See* Ex.

6  B., Heller Decl. ¶¶ 32–35; *see also DeHate,* 2020 WL 7084551 at *4 (granting

7  protective order to avoid risk of theft).

8      *Fourth*, public disclosure of the financial records and account information for

9  Compass and its customers would impose clear harm on both. *See* Ex. B, Heller

10  Decl. ¶¶ 36–38. Such disclosure would expose Compass customers to a risk of

11  identity theft and actual theft. *Id.* ¶ 38. It would also harm Compass's reputation as

12  a trusted service provider in the industry. *Id.*; *see generally Mei Ma v. Convergent*

13  *Outsourcing, Inc.,* No. CV 16-4558-JAK (AGRx), 2017 WL 11634740, at *1 (C.D.

14  Cal. Apr. 21, 2017) (granting motion for protective order and explaining, "A

15  protective order is also appropriate when a discovery request seeks private financial

16  information.").

17      *Fifth,* public disclosure of Compass's confidential business contracts and

18  related business terms would risk breach of Compass's confidentiality obligations

19  under those agreements. Many of Compass's business contracts, including hosting

20  agreements such as the agreements at issue in this case, as well as power purchase

21  agreements, contain confidentiality provisions prohibiting public disclosure. *See* Ex.

22  B, Heller Decl., ¶¶ 43–45. These concerns establish good cause for a protective

23  order. *See, e.g., Am. Shooting Ctr., Inc. v. Secfor Int'l*, No. 13-CV-1847-BTM

24  (JMA), 2015 WL 11254686, at *1 (S.D. Cal. Jan. 12, 2015) (ordering contracts

25  subject to non-disclosure and confidentiality provisions to be produced subject to

26  protective order).

27      *Finally,* disclosure of Compass's confidential personnel records for its former

28  CEO, Whit Gibbs, would impair the privacy interests of the former CEO, harm

STIP. RE MOT. FOR PROTECTIVE ORDER
GOVERNING CONFIDENTIAL INFORMATION

Compass's interests in conducting its human resources affairs in private, and potentially expose Compass to liability from Mr. Gibbs. *See* Ex. B, Heller Decl., ¶¶ 39–40; *see also Waring v. Geodis Logistics LLC*, No. CV 19-4415-GW (KSX), 2020 WL 10052411, at *8 (C.D. Cal. Sept. 28, 2020) (observing "courts have recognized an important interest in preserving the confidentiality of information in employee personnel files," and collecting cases); *Chacon v. Express Fashion Operations LLC*, No. SA CV 19-00564-JLS (DFMx), 2022 WL 17078676, at *1 (C.D. Cal. Mar. 31, 2022) (ordering production of personnel files "under the highest protection offered by the parties' protective order").

The above risks clearly justify a protective order including a confidential designation preventing disclosure to third parties.

## B. There Is Good Cause for an Attorneys' Eyes Only Provision to Protect the Parties' Highly Sensitive Commercial Information.

Protective orders seeking AEO designations are also proper where, to avoid harm to the moving party, it is necessary to prevent disclosure to parties themselves. As this Court has explained, "Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (granting request for AEO treatment of sensitive documents). For example, in *Kaseberg v. Conaco, LLC*, No. 15-cv-01637-JLS (DHB), 2016 WL 3997600 (S.D. Cal. July 26, 2016), the plaintiff, a comedic writer, sued defendants affiliated with the Conan O'Brien show, alleging they stole certain jokes, and refused to agree to an attorneys' eyes only provision in a protective order. The Court granted the defendants' request for an AEO provision, noting that "whether the receiving party is involved in competitive decisionmaking" is an important factor in evaluating a proposed AEO provision, and reasoning that the non-public financial information that plaintiff sought—including licensing fees paid by defendants—would severely impact defendants' ability to negotiate future content licenses, creating good cause for the

1  provision. *Id.* at *12–13 (internal quotation omitted). Similar decisions abound. *See,*
2  *e.g.*, *Nutratech*, 242 F.R.D. at 555 (approving AEO protection to protect customer
3  and supplier lists in dispute between near competitors); *Beautiful Slides, Inc. v.*
4  *Allen*, No. 17-CV-01091-MMC (LB), 2017 WL 11664921, at *1 (N.D. Cal. Dec. 22,
5  2017) (approving AEO provision to protect confidential source code).

6      Here, as in *Kaseberg* and *Nutratech,* there is good cause for entry of a
7  protective order including an AEO provision to protect the Parties' commercially
8  sensitive information from disclosure to a direct competitor. Through its first set of
9  requests for production, Veribi has already sought documents implicating these
10  competitive interests, including (1) the identity of Compass's customers, *see* Veribi
11  RFPs 1, 8, 12;  (2) Compass's confidential hosting terms and business contracts, *see*
12  Veribi RFPs 1-5, 12, 13; and (3) Compass's private, strategic business discussions
13  and negotiation tactics with hosting providers, *see* Veribi RFPs 1- 3, 6, 10, 11, 12,
14  15. As explained in the sworn declaration by Compass's co-CEO Thomas Heller,
15  *see* Ex. B, Heller Decl., disclosure of each of these categories of confidential
16  information to Veribi, Compass's direct competitor, would impose particularized
17  harm on Compass.

18      *First,* disclosure of the identity of Compass's customers to Veribi would harm
19  Compass by creating a risk that Veribi, a direct competitor, could use this
20  information to solicit Compass's customers. Ex. B, Heller Decl., ¶ 31; *see also*
21  *Nutratech*, 242 F.R.D. at 555 (approving AEO protection for customer lists).

22      *Second,* disclosure of Compass's confidential hosting terms and business
23  contracts to Veribi creates a risk that Veribi could use that information to undercut
24  Compass in the market. The industry for collocation and hosting services for
25  cryptocurrency miners is highly competitive. Ex. B, Heller Decl. ¶ 42. Market
26  participants compete heavily over negotiated hosting rates with third-party hosting
27  facilities and/or power providers, and this information is closely guarded by
28  Compass. *Id.* This information should be restricted to Veribi's outside counsel and

-11-

STIP. RE MOT. FOR PROTECTIVE ORDER
GOVERNING CONFIDENTIAL INFORMATION

experts. *In re Nat'l Football Leagues*, No. 15-ML-02668 PSG (JEMx), 2022 WL 1782556, at *3 (C.D. Cal. Feb. 1, 2022) (concluding that production of highly sensitive network contracts on an attorney's eyes-only basis was the most appropriate and efficient way to proceed).

*Third,* disclosure of Compass's private, strategic business discussions and negotiation tactics with hosting providers could similarly undercut Compass's competitive advantage in the marketplace. *See* Ex. B, Heller Decl. ¶¶ 46–48; *see also Qualcomm Incorp. v. Broadcom Corp.*, No. 05CV1392-B (BLM), 2006 WL 8455373, at *3 (S.D. Cal. Apr. 7, 2006) (designating business plans and strategies as attorneys' eyes only, noting that such designation "strikes the most appropriate balance between the parties' legitimate concerns").

Thus, the protective order sought by Compass would protect Compass from undue burden by preventing the particularized harm that would arise from disclosure of the confidential information of Compass and its customers to the public and/or Veribi. *See* Fed. R. Civ. P. 26(c)(1).

## IV.    CONCLUSION

For all the reasons stated above, Compass respectfully requests this Court enter the Protective Order attached hereto as **Exhibit A**.

## <u>PLAINTIFF VERIBI LLC'S CONTENTIONS, POINTS, AND AUTHORITIES</u>

## I.    INTRODUCTORY STATEMENT

As Compass is currently withholding significant documents responsive to Veribi's Requests for Production, Veribi respectfully requests that the Court resolve this discovery dispute with all possible dispatch.

The general contours of the case are detailed in the Complaint and the Declaration of John Vanhara accompanying this Joint Stipulation. This matter involves Defendant Compass' abandonment of over $1.5 million of Veribi's bitcoin mining machines with a Russian entity, BitRiver AG, following the imposition of sanctions by the U.S. Treasury's Office of Foreign Asset Controls ("OFAC") in April 2022. This is a matter of significant public interest concerning the application of public policy embodied in an Executive Order, not a private dispute between "competitors" concerning trade secrets or other potentially sensitive information. See **Exhibit G**, Vanhara Decl. ¶¶ 5-8.

Presently before the Court is Compass' demand that a blanket "stipulated" protected order be entered in this case. While such "stipulated" protective orders are not uncommonly agreed to between parties, courts exhibit varying degrees of tolerance toward them. As Wright & Miller notes, "A number of courts have therefore held that entering a protective order based solely on the parties' consent is improper.[18] Even when the parties consent, the court may not enter an order unless Rule 26(c) is satisfied.[19]" *Federal Practice and Procedure*, vol. 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.). Federal districts often craft local rules to limit the effect of stipulated protective orders on actual court filings. *See, e.g.,* C.D. Cal. L.R. 79-5.2.2 Under-Seal Documents in Non-Sealed Civil Cases ("In a non-sealed civil case, no document may be filed under seal without prior approval by the Court.")

In this case, Veribi has not agreed to enter into a stipulated protective order out of concern, inter alia, for potential over-designation of allegedly "confidential"

-13-

information, which would place on Veribi the significant burden of challenging such designations or seeking permission to file such documents and related motions under seal. Additionally, Compass' proposed "two tier" protective order would completely prevent Veribi's sole owner from reviewing certain documents in the case. Instead, Veribi has suggested the parties follow the procedures set forth in the Federal Rules of Civil Procedure, with the significant concession that parties may preemptively redact information that implicates some legitimate privacy or other confidentiality interest. **Exhibit H**, August 15, 2023 Email Response to Compass Discovery Dispute Letter. In fact, Veribi believes it would be improper for the Court to order it to abide by a "stipulated" protective order to which it does not stipulate.

## II.    BACKGROUND

Before turning the relevant "good cause" standard for entry of protective orders and its application to this case, it may be illuminating to first address the current state of discovery and document production.

In response to Compass' First two sets of Requests for production, Veribi has produced over 8,000 pages of documents, including a number of contracts it has entered into with other Compass-like bitcoin miner hosting services, at least one internal financial balance sheet, voluminous communications via email and Telegram with Compass and third parties, including BitRiver, and documents related to its business offering individuals in the Czech Republic an interest in bitcoins generated by Veribi's miners. While Veribi has redacted identifying information about its Czech clients, it has not designated any of its produced documents as "confidential" and it has not withheld any documents on the basis of confidentiality.

On the other hand, in response to Veribi's Document Requests, Compass, the defendant in this case, has produced 734 pages of documents, substantially all of which appear to be emails and Telegram chats between Compass and Mr.

-14-

Vanhara, the owner of Veribi, which Veribi has already produced in this this case. Therefore, Compass has produced essentially zero documents that were not already in Veribi's possession. Apparently, every single document Veribi has requested is either "confidential," the subject of a privilege log which Veribi has yet to see, or Compass simply does not plan to produce them.

Veribi has offered to permit Compass to designate documents with its preferred confidentiality designation pending resolution of this protective order dispute and has agreed to honor any such designation under the terms of the Compass' preferred "Stipulated Protective Order." However, Compass has not accepted this offer and is simply withholding responsive documents pending resolution to its motion.

For an even fuller picture, the Court should consider Compass' Objections and Responses to Plaintiff's First Set of Requests for the Production of Documents, attached hereto as **Exhibit I**. Compass' Response to Requests 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 15, and 16 is that "Upon entry of a protective order, Compass will produce..." (Compass' Response to Requests No. 6 and 14, concerning any legal analysis of OFAC sanctions and documents related to termination of its CEO after sanctions were imposed, simply refuse to produce responsive documents or even, presumably, a privilege log.) This is not what Federal Rule 26(c) requires.

As indicated above, one reason Veribi did not agree to stipulate to Compass' proposed "stipulated protective order" is concern that Compass will designate materials as "confidential" even when such confidentiality designations are not justified under the law. This concern appears to be substantiated in light of Compass' expansive "confidentiality" objections in its Objections and Responses. If Compass believes its confidentiality objections are well-founded in law, it can move for a particularized protective order and demonstrate specific need with respect to each category of documents (or subset therefore) it seeks to withhold pursuant to Federal Rule 26(c).

STIP. RE MOT. FOR PROTECTIVE ORDER
GOVERNING CONFIDENTIAL INFORMATION

Additionally, Compass makes a number of other objections to Veribi's Document requests based on relevance, overbreadth, burdensomeness, or because documents involve "commercially sensitive information and/or information implicating Compass customers' privacy interests." In light of the facial impropriety of these objections, Veribi requests that the Court enter an Order under Federal Rule of Civil Procedure 37 for Compass to comply with its discovery obligations under Rule 34.

## III.  ARGUMENT

### A.  There is No Good Cause Either for Specific or Generalized Protective Order in This Case

The "good cause" standard of Federal Rule 26(c) is misleading in the current context. "Good cause" is required when the parties have agreed to a stipulated protective order. Rutter Group, Fed. Civ Pro. Before Trial, Protective Orders, Ch. 11(III)(C) sec. [11:1071] ("This 'good cause' requirement is generally held applicable even to stipulated protective orders." (citation omitted)). In the present context, the Court would need to find "good cause" sufficient not only to enter stipulated order, but "good cause" sufficient to require Veribi to adhere to a generalized 15-page protective order to which it objects even when the existing Federal Rules already occupy the relevant terrain.[3]

With respect to the "good cause" standard generally, the moving party must make a clear showing of a particular and specific need for the order. Rutter Group, Fed. Civ Pro. Before Trial, Protective Orders, Ch. 11(III)(C) sec. [11:1071] ("The moving party must make a clear showing of a *particular and specific need* for the order. [*Blankenship v. Hearst Corp*. (9th Cir. 1975) 519 F2d 418, 429; *Pearson v.*

---

[3] Thus, to the extent the "stipulated" protective order proposed by Compass is inconsistent with the Federal Rules of Civil Procedure, the Court would essentially have to issue an Order for Veribi to adhere to procedures inconsistent with the Federal Rules.

*Miller* (3rd Cir. 2000) 211 F.3d 57, 72—a properly asserted claim of *privilege* is good cause for protective order; *Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1130—'broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test' (internal quotes omitted)." (italics original).)

As this Court's own Form Stipulated Protective Order notes, "The Parties must provide a statement establishing good cause for the entry of this Order.  Cf. *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014). The Parties' statement must be specific to the facts and issues of this case, including the nature of the action, the type of anticipated discovery, and the potential harm should relevant materials be disclosed publicly. The Parties are advised not to rely on boilerplate assertions regarding good cause."

Compass makes an effort to meet the "good cause" standard by expressing various speculative harms it would allegedly suffer if it is required to produce documents without recourse to the "confidential" and "highly confidential" designations set forth in its proposed protective order. However, on examination, the harms articulated by Compass are much closer to boilerplate or even irrelevance than actual foreseeable harms.

First, as indicated, Veribi has offered to allow Compass to preemptively redact information it believes would satisfy the requirements of Rule 26(c) for a protective order. If such redactions appear excessive and unwarranted, the parties can meet and confer and address the matter. Veribi would merely request that upon request Compass provide counsel with sample of unredacted versions of such information so Veribi can determine whether to bring a motion to compel. Veribi would, of course, be willing to abide by similar requirements. More generally, Veribi is unable to recognize its document requests in the characterizations provided by Compass. Veribi has no interest in Compass' customer information, MAC addresses, serial numbers, or customer bank account numbers. Such

1  information is not relevant to this case and could be redacted without reservation.

2  In fact, Veribi does not believe its Document Requests call for documents that

3  would contain such information.

4      Second, Compass makes efforts to articulate harms that could befall it if its

5  "confidential" corporate strategies and business information falls into the hands of

6  Veribi, its "competitor." As should be clear from the Declaration of Jahn Vanhara,

7  Veribi is an owner-operated business whose bitcoin mining capacity is filled by

8  Veribi's own bitcoin mining machines. It does not, like Compass, house and

9  manage bitcoin mining machines for third parties throughout the world. There is

10  nothing Veribi could conceivably gain from learning Compass "corporate

11  strategies," except to the extent such strategies are relevant to this case.

12      Third, Compass' Motion appears to take an unusually expansive view of

13  Veribi's discovery requests, indicating that, for example, Requests 1, 2, 4, 5, 12,

14  and 16 all implicate "Serial numbers and MAC addresses of Compass customers'

15  cryptocurrency miners". While this sounds ominous, Veribi's requests speak for

16  themselves, are actually fairly specific, and do not request such documents. None

17  of Veribi's requests implicate the type of secret-sounding documents Compass

18  would like to convince the Court Veribi is seeking with its rather modest sixteen

19  requests for production.

20      Fourth, almost all Veribi's requests are limited in one way or another to

21  miners hosted in Russia with BitRiver, not Compass' global bitcoin mining

22  operations. According to Compass, it has ceased all contact with BitRiver and is no

23  longer hosting any miners in Russia. It is difficult to see what competitive harm

24  could arise from the production of no-longer-operative agreements and

25  communications with a now-sanctioned Russian cryptocurrency hosting firm. Is

26  Veribi going to learn what a good deal one could get on power rates in Siberia in

27  2021? Is revealing the physical location (which Veribi has not even requested) of

28  BitRiver's facilities in Russia going to render miners abandoned by Compass

somehow more vulnerable? Is Compass actually concerned with breaching putative confidentiality obligations toward BitRiver, a company under OFAC sanctions? In short, Compass makes arguments regarding harms that could arise if it were required to abide by the Federal Rules instead of its proposed protective order, but these harms have little, if anything, to do with Veribi's Document Requests or with this case in general.

With regard to allegedly "confidential" records related to Compass' former CEO Whit Gibbs, there is a particularized need for such information in this case. Mr. Gibbs made several statements that Veribi and others relied on with regard to how Compass' planned to handle customer concerns after OFAC sanctioned BitRiver. Shortly thereafter, Mr. Gibbs either left Compass or was terminated. Veribi needs to understand what transpired internally at Compass with respect to the OFAC sanctions and Mr. Gibbs around the time he ceased working at Compass. While Compass may move for a specific, particularized protective order regarding certain specific documents related to Mr. Gibbs, the present context where Compass seeks entry of a blanket protective order is not the place to address such concerns in detail.

Finally, Compass is seeking entry of a "two tier" protective order in this case, which would permit Compass to designate some documents as HIGHLY CONFIDENTIAL—AEO. As indicated, Veribi is essentially a sole proprietorship. It has no "in house" attorneys, and thus Veribi's principal would not be able to review any such documents and Veribi's attorneys could not share such information with Veribi to assist with its decisions. This would be a major imposition on Veribi, potentially implicate its substantive rights as a litigant, and, as indicated, there is no particular or cognizable harm that could arise if Veribi were permitted to review such documents, as Veribi is in no respect a competitor of Compass.

**IV.    CONCLUSION**

For the reasons above, Veribi respectfully requests this Court to deny entry of any protective order sought by Compass and issue an Order pursuant to Federal Rule 37(a) compelling Compass to produce documents and information responsive to Veribi's First Set of Requests for Production of Documents.

Dated: August 30, 2023

MEADOR & ENGLE                    ARMSTRONG TEASDALE LLP

By:  */s/ Alan Engle*              By:  */s/  Alec P. Harris*

Attorneys for Plaintiff Veribi,        Attorneys for Defendant
LLC                                    COMPASS MINING, INC.

STIP. RE MOT. FOR PROTECTIVE ORDER
GOVERNING CONFIDENTIAL INFORMATION